**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

| | |
|---|---|
| Shepler's Inc. d/b/a Shepler's Mackinac Island Ferry Service, and Mackinac Island Ferry Company d/b/a Arnold Transit Company, | Case No. 25-cv-00036 |
| Plaintiffs/Counter-Defendants, | Hon. Robert J. Jonker |
| v. | Mag. Maarten Vermaat |
| City of Mackinac Island, | |
| Defendant/Counter-Plaintiff. | |

**CITY OF MACKINAC ISLAND'S ANSWER AND**
**AFFIRMATIVE DEFNSES TO PLAINTIFFS' COMPLAINT**
**AND COUNTERCLAIM**

Defendant City of Mackinac Island (the "City"), by and through its attorneys Miller, Canfield, Paddock and Stone, P.L.C., states as follows for its Answer and Affirmative Defenses to Plaintiffs' Complaint:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction in admiralty pursuant to 28 U.S.C. § 1333(1) because this case involves a dispute over a maritime contract. Plaintiffs further hereby designate this case as being within the Court's admiralty jurisdiction pursuant to Fed. R. Civ. P. 9(h).

**ANSWER**: The City states that paragraph 1 contains a legal conclusion that is not an allegation against the City and, therefore, requires no further response from the City.

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant is a resident in this district as defined in the statute.

**ANSWER**: The City states that paragraph 2 contains a legal conclusion that is not an allegation against the City and, therefore, requires no further response from the City.

3.      This Court is authorized to grant declaratory relief as requested by Plaintiffs herein pursuant to 28 U.S.C. § 2201.

**ANSWER**: The City states that paragraph 3 contains a legal conclusion and, therefore, requires no further response from the City. The City denies that Plaintiffs are entitled to the relief they request in this Complaint.

**PARTIES**

4.      Plaintiff Shepler's Inc. d/b/a Shepler's Mackinac Island Ferry Service is a Michigan Domestic Profit Corporation with its principal place of business located at 556 E Central Ave, Mackinaw City, MI 49701.

**ANSWER**: Admit.

5.      Plaintiff Mackinac Island Ferry Company d/b/a Arnold Transit Company is a Michigan Domestic Profit Corporation with its principal place of business located at 587 N. State St., St. Ignace, MI 49781.

**ANSWER**: Admit.

6.      Defendant City of Mackinac Island is a Michigan municipality located in Mackinac County, Michigan.

**ANSWER**: The City admits that it is a Michigan municipal corporation located in Mackinac County, Michigan.

## STATEMENT OF FACTS

7.      The City of Mackinac Island (the "City") is located on Mackinac Island, an island located wholly within Lake Huron, a navigable waterway of the United States. The City encompasses the entire island.

**ANSWER**: The City states that the territorial boundaries of the City include all of Mackinac Island, although a large portion of the island is preserved as the Mackinac Island State Park, and Round Island. Further, the "jurisdiction of said city shall embrace and cover the navigable waters adjacent to said city for the distance of one mile from the shorelines of said islands." City Charter, Chapter I, Section 1. The City admits the remaining allegations in paragraph 7.

8.      Mackinac Island is a historically significant tourist destination with approximately 1.5 million people visiting the island each year from around the world. The 2020 census listed that 583 residents live in the City.

**ANSWER**:  The City lacks knowledge or information sufficient to form a belief as to the truth of the allegation that approximately 1.5 million people visit Mackinac Island each year, as Plaintiffs are in possession of that information based on the number of ferry passengers who use their ferry services and Plaintiffs have refused to provide the City with that information. The City admits the remaining allegations in paragraph 8.

9.      The City's nearest land-based cities are St. Ignace, located in Mackinac County, Michigan, in Michigan's Upper Peninsula, and Mackinaw City, located in both Cheboygan and Emit [sic, Emmet] Counties, Michigan, in Michigan's Lower Peninsula.

**ANSWER**: Admit.

10.     The Michigan Legislature founded the City of Mackinac Island in 1899. Under Chapter XVI, the City's founding charter provided that:

> The council of said city may regulate and license ferries from such city or any place of landing therein to the opposite shore, or from one part of the city to another; and may require the payment of such reasonable sum for such license as to the council shall deem proper and may impose such reasonable terms and restrictions in relation to the keeping and management of such ferries, and the time, manner, and rates of carriage and transportation of persons and property as may be proper, and provide for the revocation of any such licenses and for the punishment, by proper fines and penalties, of the violation of any ordinance prohibiting unlicensed ferries and regulating those established and licensed.

**ANSWER**: The City admits that the Michigan Legislature adopted the City's Charter in 1899, which incorporated the City of Mackinac Island. The City states that Chapter XVI of the City's Charter speaks for itself. The City further states that the Michigan Legislature has the exclusive power to franchise ferry boat services and that the Michigan Legislature delegated its exclusive authority solely to the City through the Legislature's adoption of Chapter XVI of the City's Charter. See *Arnold Transit Co v. City of Mackinac Island*, 99 Mich App. 266; 297 N.W.2d 904 (1980), affirmed, 415 Mich. 362; 329 N.W.2d 712 (1982), appeal dismissed for want of a substantial federal question, 464 U.S. 804 (1983).  The City denies the remaining allegations in paragraph 10 as untrue.

11.     The City operates its decision-making through a mayor and a city council (the "City Council"). The mayor presides over the City Council meetings, which consist of regular meetings and certain special meetings.

**ANSWER**: The City admits that it has a Mayor and six City Council members; that the Mayor and City Council typically meet every other Wednesday and when special meetings are called; that the Mayor typically presides over City Council meetings; and that the City Council

acts as the legislative branch of the city government and, among other things, makes decisions on local laws, policies, budgets. The City denies the remaining allegations in paragraph 11 as untrue.

12.    On June 20, 2012, the City Council approved Ordinance Number 465, which became effective July 10, 2012 (the "Ordinance"). The Ordinance regulates ferry boat operations to and from the City, and thus the entirety of Mackinac Island. In pertinent part, it states that "no person shall operate a ferry boat service nor shall any person provide a ferry boat service in the City without such person having first obtained a franchise from the city."

**ANSWER**: The City states that the Ordinance speaks for itself and that the quote in paragraph 12 is not an accurate quote of Sec. 66-491(a) of the City's Ordinance. The City admits that the Ordinance regulates, among other things, ferry service to and from the City, as stated in Sec. 66-462 of the Ordinance. The City states that paragraph 12 contains a legal conclusion and, therefore, requires no further response from the City. The City denies the remaining allegations in paragraph 12 as untrue.

13.    Under Section 9, related to ferry boat rates, the Ordinance provides that:

> No ferry boat company shall make any unjust or unreasonable discrimination in rates, charges, classifications, promotions, practices, regulations, facilities or services for or in connection with ferry boat services, nor subject any person to any prejudice or disadvantage in any respect whatsoever; however, this shall not be deemed to prohibit the establishment of a graded scale of charges and classification of rates to which any customer or passenger coming within such classification shall be entitled.

**ANSWER**: The City states that the Ordinance speaks for itself. The City admits that the quoted language is taken from Article XI, Division 1, Sec. 66-468(a) of the City's Ordinances. The City denies the remaining allegations in paragraph 13 as untrue.

14.    Under Section 14, related to fees charged by the City to franchisees, the Ordinance provides that:

> During the term of any franchise granted pursuant to this division for the
> operation of ferry boat service, the person granted such franchise shall pay
> to the City in consideration of the granting of such franchise[.]

**ANSWER**: The City states that the Ordinance speaks for itself and admits that the quoted text is taken from Article XI, Division 1, Sec. 66-495(a) of the City's Ordinances. The City denies the remaining allegations in paragraph 14 as untrue.

15.     Plaintiff Shepler's Inc. d/b/a Shepler's Mackinac Island Ferry Service ("Shepler's") is a family-based company that has been operating ferry services to and from Mackinac Island for approximately eighty years. In doing so, Shepler's has worked closely with the City Council to ensure that it meets the transportation needs for Mackinac Island, including the specific needs for residents, commuting workers, and tourists. Shepler's operates ferry services between Mackinac Island and St. Ignace, and between Mackinac Island and Mackinaw City.

**ANSWER**: The City denies that Shepler's (also referred to as Shepler's Ferry) is today a "family-based company" that operates the ferry services to and from Mackinac Island. Shepler's is owned by a large private equity firm (the Hoffmann Family of Companies which has identified itself to the City as "Hoffmann Marine"), which has admitted publicly that it controls Shepler's and manages its day-to-day operations. The City admits that Hoffmann Marine and Shepler's operate ferry services between the City and St. Ignace, and between the City and Mackinaw City. The City denies the remaining allegations in paragraph 15 as untrue.

16.     Shepler's also owns property in both St. Ignace and Mackinaw City. With this property, Shepler's has developed parking lots, which it uses to operate a business for parking services.

**ANSWER**: The City admits that Shepler's, and thus Hoffmann Marine, owns property in St. Ignace and Mackinaw City which are used by ferry passengers to park their vehicles while the

ferry passengers are on Mackinac Island. The City denies that Shepler's or Hoffmann Marine operate a business for "parking services" that is separate or independent from their ferry services.

17.    On or about June 27, 2012, Shepler's entered into a contract with the City for the purpose of establishing a "nonexclusive ferryboat franchise authorizing [Shepler's] to operate a public ferryboat service to and from the City of Mackinac Island[.]" ("Shepler's Contract"). (Attached hereto as Exhibit 1 is the Contract between the City and Shepler's.)

**ANSWER**: The City admits that, pursuant to the City's Charter and Ordinances, it entered into a franchise agreement on or about June 27, 2012, with Shepler's (the "Shepler's Franchise Agreement"), a copy of which is attached as Exhibit 1 to the City's Counterclaim. On or around November 13, 2023, the City, pursuant to its Charter and Ordinances, entered into an Amendment and Restatement of Franchise with Shepler's (the "Shepler's Amendment and Restatement of Franchise Agreement"), a copy of which is attached as Exhibit 2 to the City's Counterclaim. The City states that paragraph 17 contains legal conclusions and, therefore, requires no further response from the City. The City further states that the Shepler's Franchise Agreement speaks for itself.

18.    The Shepler's Contract has a twenty-five-year term, from July 1, 2012 to June 30, 2027.

**ANSWER**: The City admits that the Shepler's Franchise Agreement had a term of July 1, 2012 to June 30, 2027, which is fifteen, not twenty-five, years.

19.    In consideration of Shepler's right to operate its ferry boat services, Shepler's pays the City a seasonal monthly franchise fee.

**ANSWER**: Under the Shepler's Amendment and Restatement of Franchise Agreement, Shepler's has been granted a franchise "to operate a public ferryboat service to and from the City of Mackinac Island" provided that Shepler's complies with the Shepler's Amendment and

7

Restatement of Franchise Agreement and the City's Ordinances, as well as (among other things) pays the City the franchise fee pursuant to the payment schedule set forth in the Shepler's Amendment and Restatement of Franchise Agreement. The City denies the remaining allegations in paragraph 19 as untrue.

20.     The Shepler's Contract provides that Shepler's shall "file its schedule of services and rates for the next season," and, through a prescribed "MEMORANDUM OF UNDERSTANDING," the contract provides that: "All lines determine their own schedules and rates. However, the boat lines will file their schedules and rates with the City."

**ANSWER**: The City states that the Shepler's Franchise Agreement speaks for itself and admits that the Shepler's Franchise Agreement contains the language cited in paragraph 20. The City denies that the Shepler's Franchise Agreement is the agreement currently governing the franchise granted to Shepler's by the City. The governing agreement is the Shepler's Amendment and Restatement of Franchise Agreement. The City further states that the remaining allegations in paragraph 20 contain legal conclusions and, therefore, require no further response from the City.

The City further denies that the provisions of the Shepler's Franchise Agreement and Memorandum of Understanding cited in paragraph 20 govern the setting of rates and schedules for the 2025 season.

The City has determined under its authority to "regulate and license ferries," which was delegated exclusively to the City through the Michigan Legislature's adoption of the City's Charter, that the common ownership and control by Hoffmann Marine of Shepler's and MIFC/Arnold (as that term is defined in the answer to paragraph 24) has eliminated competition in ferry boat service to and from the City and created a monopoly in the provision of such ferry boat services. The City therefore "has the right to assert its jurisdiction over schedules and fares to

the extent permitted by present law," pursuant to Section 9 of the Shepler's Amendment and Restatement of Franchise Agreement and the City's Charter and Ordinances.

21.    Under Section 9, the Shepler's Contract provides that:

> In the event that no competition is found to exist in ferry boat service to and from the City, the City has the right to assert its jurisdiction over schedules and fares to the extent permitted by present law.

**ANSWER**: The City states that the Shepler's Franchise Agreement speaks for itself and admits that the Shepler's Franchise Agreement contains the language cited in paragraph 21. The City denies that the Shepler's Franchise Agreement is the agreement currently governing the franchise granted to Shepler's. The governing agreement is the Shepler's Amendment and Restatement of Franchise Agreement.

22.    The Shepler's Contract constitutes a federal maritime contract because the principal objective of that contract is maritime commerce, specifically to transport persons and property, from all over the world, over a navigable waterway of the United States.

**ANSWER**: The City states that the allegations in paragraph 22 contain legal conclusions and, therefore, require no further response from the City. The City denies that the Shepler's Franchise Agreement is the agreement currently governing the franchise granted to Shepler's. The governing agreement is the Shepler's Amendment and Restatement of Franchise Agreement.

23.    In 2022, Hoffmann Family of Companies (the "Hoffmann Family") purchased Shepler's, creating a partnership between the Shepler family and the Hoffmann family. The Shepler family remains critically involved in the operations of the company.

**ANSWER**: The City admits that the Hoffmann Family of Companies ("HFC") purchased a controlling share of Shepler's through a stock purchase. The City admits that HFC describes itself as a "family-owned private equity company," but the business consists of "200+ acquired

9

brands & properties globally" with "16,000+ people in HF businesses" and "10+ verticals" in "400+ locations 30 countries." See https://hfcompanies.com. HFC's brands are "organized into eight growing sectors," listed as "agriculture, aviation & transportation, financial & professional services, hospitality & entertainment, manufacturing, marine, media & marketing, and real estate." Id. In its dealings with the City, HFC has identified itself as Hoffmann Marine, a division within HFC. The City will refer to HFC as "Hoffmann Marine" to be consistent with how it represented itself to the City and how the City referred to it in its documents. The City further admits that Hoffmann Marine operates and controls Shepler's, including managing the day-to-day operations of Shepler's. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 23 of the Complaint and, therefore, denies those allegations.

24.     Plaintiff Mackinac Island Ferry Company d/b/a Arnold Transit Company ("MIFC") is the culmination of several companies with approximately 140 years of experience with ferry services to and from Mackinac Island. MIFC also operates ferry services between Mackinac Island and St. Ignace, and between Mackinac Island and Mackinaw City.

**ANSWER**: The City states that in 2016, a ferry service company known as "Star Line" purchased Arnold Transit Company and rebranded the company as Mackinac Island Ferry Company ("MIFC"). The City further states that Hoffman Marine acquired a controlling share of MIFC in 2024 through a stock purchase and rebranded the company as Arnold Transport Company (which is also referred to as MIFC, Arnold, and Arnold Transit). For purposes of this Answer, the City will refer to MIFC as "MIFC/Arnold" to accurately reflect how the company represents itself to the public. The City further states that Hoffmann Marine and Shepler's control and manage the day-to-day operations of MIFC/Arnold which includes (a) using Shepler's ferries, officers, and employees to fulfill MIFC's obligations under the MIFC/Arnold Amendment and Restatement of

Franchise Agreement (seethe answer to paragraph 26 for the definition of that phrase), and (b) Shepler's, at the instruction of Hoffman Marine, accepting ferry tickets issued by MIFC.  The City also admits that MIFC/Arnold, Shepler's, and Hoffmann Marine operate the ferry service between the City and St. Ignace and the City and Mackinaw City pursuant to franchise agreements that the City awarded to Shepler's and MIFC/Arnold. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 24 of the Complaint and, therefore, denies those allegations.

25.     MIFC also owns property in both St. Ignace and Mackinaw City. With this property, MIFC operates a business for parking services.

**ANSWER**: The City admits that MIFC/Arnold, and thus Hoffmann Marine, owns properties in St. Ignace and Mackinaw City which are used by ferry passengers to park their vehicles while the ferry passengers travel to and from Mackinac Island. The City denies that MIFC/Arnold operates a business for "parking services" that is separate or independent from its business for ferry services.

26.     On or about October 18, 2023, MIFC entered into a contract with the City for the purpose of establishing a "nonexclusive ferryboat franchise authorizing [Arnold Transit] to operate a public ferryboat service to and from the City of Mackinac Island[.]" ("MIFC Contract"). (Attached hereto as Exhibit 2 is the Contract between the City and MIFC.)

**ANSWER**: The City states that, pursuant to the City's Charter and Ordinances, it entered into the Assignment and Assumption of Contracts on or about November 10, 2016, with Arnold Transit Holding Company, f/k/a Arnold Transit Company, and Star Line Mackinac Island Passenger Services, Inc., a copy of which is attached as Exhibit 3 to the City's Counterclaim. The City admits that, pursuant to the City's Charter and Ordinances, on or around October 18, 2023 it

entered into the Amendment and Restatement of Franchise Agreement with MIFC/Arnold (the "MIFC/Arnold Amendment and Restatement of Franchise Agreement"), and that a copy is attached as Exhibit 4 to the City's Counterclaim. The City states that paragraph 26 contains legal conclusions and, therefore, requires no further response from the City. The City further states that the MIFC/Arnold Amendment and Restatement of Franchise Agreement speaks for itself.

27.    Although entered into years later, the terms of MIFC Contract are otherwise identical to the Shepler's Contract, including the same expiration date of June 30, 2027.

**ANSWER**: Denied as untrue. The City admits that the Shepler's Amendment and Restatement of Franchise Agreement and the MIFC/Arnold Amendment and Restatement of Franchise Agreement expire on June 30, 2027 and contain similar contractual provisions. The City denies the remaining allegations of paragraph 27 as untrue.

28.    Because of their similarities, both the Shepler's Contract and the MIFC Contract are commonly referred to as the "Franchise Agreement," identifying the contract between the City and the respective franchisee.

**ANSWER**: The City denies that the referenced documents are called the "Franchise Agreement" "[b]ecause of their similarities" or that the City refers to those documents collectively as "the Franchise Agreement." The City also denies the suggestion that only one franchise agreement exists that governs the franchise granted to Shepler's and MIFC/Arnold because each franchisee entered into a separate franchise agreement with the City.

29.    In consideration of MIFC's right to operate its ferry boat services, MIFC pays the City a seasonal monthly franchise fee.

**ANSWER**: Under the MIFC/Arnold Amendment and Restatement of Franchise Agreement, MIFC/Arnold has been granted a franchise "to operate a public ferry boat service to

and from the City of Mackinac Island" provided that MIFC/Arnold complies with the MIFC/Arnold Amendment and Restatement of Franchise Agreement and the City's Ordinances, as well as (among other things) pays the City the franchise fee pursuant to a payment schedule set forth in the MIFC/Arnold Amendment and Restatement of Franchise Agreement. The City denies the remaining allegations in paragraph 29 as untrue.

30.    The MIFC Contract provides that MIFC shall "file its schedule of services and rates for the next season," and, through a prescribed "MEMORANDUM OF UNDERSTANDING," the contract provides that: "All lines determine their own schedules and rates. However, the boat lines will file their schedules and rates with the City."

**ANSWER**: The City states that the MIFC/Arnold Amendment and Restatement of Franchise Agreement speaks for itself and admits that the MIFC/Arnold Amendment and Restatement of Franchise Agreement contains the language cited in paragraph 30. The City further states that the remaining allegations in paragraph 30 contain legal conclusions and, therefore, require no further response from the City.

The City has determined under its authority to "license and regulate ferries to and from the city, . . . and to regulate and prescribe . . . the charges and prices for the transportation of persons and property thereon," which was delegated exclusively to the City through the Michigan Legislature's adoption of the City's Charter, that the common ownership and control by Hoffmann Marine of Shepler's and MIFC/Arnold has eliminated competition in ferry boat service to and from the City and created a monopoly in the provision of such ferry boat services. The City therefore "has the right to assert its jurisdiction over schedules and fares to the extent permitted by present law," pursuant to Section 9 of the MIFC/Arnold Amendment and Restatement of Franchise Agreement and the City's Charter and Ordinances.

13

31.    Under Section 9, the MIFC Contract provides that:

> In the event that no competition is found to exist in ferry boat service to and from the City, the City has the right to assert its jurisdiction over schedules and fares to the extent permitted by present law.

**ANSWER**: The City states that the MIFC/Arnold Amendment and Restatement of Franchise Agreement speaks for itself and admits that the MIFC/Arnold Amendment and Restatement of Franchise Agreement contains the language cited in paragraph 31.

32.    The MIFC Contract constitutes a federal maritime contract because the principal objective of that contract is maritime commerce, specifically to transport persons and property, from all over the world, over a navigable waterway of the United States.

**ANSWER**: The City states that the allegations in paragraph 32 contain legal conclusions and, therefore, require no further response from the City.

33.    The first several months of MIFC's performance under the MIFC Contract were tumultuous. Passengers lodged numerous complaints with the City Council related to MIFC's services, and the need to address MIFC's lackluster operations became a continuous problem for the City. During this same period, Shepler's operated a first-class ferry service without any of these same problems.

**ANSWER**: The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations that the "first several months of MIFC's performance under the MIFC Contract were tumultuous" and, therefore, denies those allegations. The City admits that some of MIFC/Arnold's passengers complained by email or letter to the City about MIFC/Arnold, including complaints about MIFC/Arnold's expired tickets, late departures, alterations to its ferry schedule, commuter traffic issues, priority boarding issues, poor customer service, equipment issues, and the safety and condition of its ferries. The City admits that it desires and expects that

its franchisees will provide safe, reliable, and efficient ferry services. The City denies the remaining allegations in paragraph 33 as untrue.

34.    In 2024, to remedy the ongoing concerns, the City initiated communications with representatives from the Hoffmann Family about a potential purchase of MIFC. The City encouraged the Hoffmann Family to invest in MIFC, thus providing Mackinac Island with two ferry companies that are capable of first-class ferry service.

**ANSWER**: Denied as untrue. On July 1, 2024—*after* Hoffmann Marine had finalized the purchase of MIFC/Arnold —Hoffmann Marine's President Jenny Gezella and Shepler's President Chris Shepler informed the City's Mayor that Hoffmann Marine had purchased MIFC/Arnold. The City did not "initiate[] communications with representatives" from Hoffmann Marine "to remedy the ongoing concerns" with MIFC/Arnold's failure to perform under the MIFC/Arnold Amendment and Restatement of Franchise Agreement and the City did not "encourage[]" Hoffmann Marine to "invest" in MIFC/Arnold. The City admits only that it desires and expects the MIFC/Arnold and Shepler's to provide safe, reliable, and efficient ferry service under their respective Franchise Agreements. The City denies the remaining allegations in paragraph 34.

35.    During the Hoffmann Family's due diligence for a potential purchase of MIFC, it was discovered that MIFC would require a substantial capital investment because of its aging fleet and outdated operations.

**ANSWER**: The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35 of the Complaint and, therefore, denies those allegations.

36.    Despite these concerns, on or about June 28, 2024, the Hoffmann Family purchased MIFC, recognizing that MIFC provided a long-term business opportunity.

**ANSWER**: The City admits that Hoffmann Marine purchased MIFC/Arnold in June 2024. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 36 of the Complaint and, therefore, denies those allegations.

37.    Shortly after its purchase, the Hoffmann Family discovered that MIFC's assets were in a worse condition than was originally known. The Hoffmann Family found that MIFC's ferry fleet required significant repairs, many of which raised critical safety concerns. During the first several months of ownership, the Hoffmann Family invested approximately $6 million in MIFC, the majority of which went to repair and modernize the fleet.

**ANSWER**: The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37 of the Complaint and, therefore, denies those allegations.

38.    The necessary repairs disrupted MIFC's ferry services in 2024. To help remedy the problem, the Hoffmann Family worked closely with the City Council, including utilizing Shepler's fleet to help ensure that the island had adequate ferry services during MIFC's rehabilitation.

**ANSWER**: The City admits that MIFC/Arnold's ferry services were disrupted in 2024, which was a breach of the MIFC/Arnold Amendment and Restatement of Franchise Agreement. The City further admits that MIFC/Arnold and Hoffmann Marine represented to the City Council that fleet repairs was one of the reasons for MIFC/Arnold's disrupted ferry services in 2024. The City lacks knowledge or information sufficient to form a belief as to the truth of the allegation that "necessary repairs" were the sole reason which "disrupted MIFC/Arnold's ferry services in 2024," and, therefore, the City denies those allegations. The City denies that Hoffman Marine "worked closely" with the City Council and denies the suggestion that the City Council approved Hoffman Marine utilizing Shepler's ferry fleet to perform MIFC/Arnold's obligations under the MIFC/Arnold Amendment and Restatement of Franchise Agreement. The City admits that

representatives from Shepler's and Hoffmann Marine, acting as the owner of and managing the operations of both MIFC/Arnold and Shepler's, developed and implemented plans that utilized Shepler's ferries to replace MIFC/Arnold's ferries to provide ferry service to the City in 2024. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 38 of the Complaint and, therefore, denies those allegations.

39.     In the fall of 2024, as required under the Franchise Agreement, both Shepler's and MIFC submitted their proposed rates for ferry services to the City Council for the 2025 season.

**ANSWER**: The City admits that by or on November 15, 2024, Shepler's, MIFC/Arnold, through Hoffmann Marine, submitted to the City Council the proposed rates and schedules for ferry services for the 2025 season. The City further states that paragraph 39 contains legal conclusions and, therefore, requires no further response from the City. To the extent a response is required, the City denies those allegations.

40.     Both Shepler's and MIFC proposed a slight increase in their ticket rates for the 2025 season. To explain the increase, representatives for Shepler's and MIFC notified the City that, in addition to the substantial capital investments that need to be recouped over time, both Shepler's and MIFC were experiencing a significant increase in expenses, including a $500,000 increase in fuel prices, an increase in local taxes of $50,000, a $1,900,000 increase in payroll, and the approximately $420,000 in lost ticket value that Shepler's and MIFC, in conjunction with the City, gives away for purposes of promotion.

**ANSWER**: The City admits that both Shepler's and MIFC/Arnold, through their owner Hoffmann Marine which manages and operates them, proposed identical $2.00 increases to all children and adult ticket rates for the 2025 season. The City denies this was "a slight increase in their ticket rates." The City admits that, during a City Council meeting, Hoffmann Marine,

Shepler's and MIFC/Arnold verbally identified some expenses they have incurred in operating the ferry services. The City, however, denies Hoffmann Marine, Shepler's and MIFC/Arnold provided any information to substantiate any of the expenses identified in paragraph 40; provided any information on any other costs of operating the ferry services; or provided any information on the **shared costs** incurred or savings obtained by Hoffmann Marine, Shepler's, and MIFC/Arnold in operating as one ferry service (such as advertising, management, and administrative costs). The City further denies that Hoffmann Marine, Shepler's, and MIFC/Arnold provided the City with any information about their revenues generated from the approximately 1.5 million annual visitors to the City, despite requests from the City Council for that information. The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40 of the Complaint and, therefore, denies those allegations.

41.     In addition to a slight increase in ferry rates, Shepler's and MIFC's submission also included certain ancillary costs, allowing customers to choose between different services based on the customer's specific needs. For example, Shepler's instituted significant technology improvements for its ferry services that incentives mobile technology over traditional paper tickets. In turn, while customers can use traditional tickets, doing so comes with a slight cost.

**ANSWER**: The City denies that the increase in ferry rates proposed by Hoffmann Marine, Shepler's, and MIFC/Arnold was "a slight increase in their ticket rates." Shepler's and MIFC/Arnold have not defined "ancillary costs" as it is used in paragraph 41. Therefore, the City lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41 about "ancillary costs" and denies them as untrue.

The City further states that allegations in paragraph 41 about "traditional paper tickets" versus "incentives [for] modern technology" are not about "costs" but are ferry rates that Shepler's

18

and/or MIFC/Arnold charge for ferry services. Therefore, these ferry rates are subject to the City's regulation under the City's Charter or Ordinances and the Shepler's or MIFC/Arnold Amendment and Restatement of Franchise Agreements.  The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 41 of the Complaint and, therefore, denies those allegations.

42.     In their continued discussions with the City, Shepler's and MIFC emphasized that their priority is to draw as many passengers as possible to Mackinac Island through safe and efficient ferry services. They explained that they generate revenue through a high volume of tourists to the island, which is a shared interest with other business on Mackinac Island. Shepler's and MIFC explained their shared interest in the viability of Mackinac Island's tourist industry.

**ANSWER**: Denied as untrue. The City states that Hoffmann Marine, Shepler's, and MIFC/Arnold, acting together as a monopoly of ferry services to Mackinac Island, will—unless regulated by the City through its exclusive authority delegated by the Michigan legislature—set supra-competitive prices and charges in connection with transportation by ferry to Mackinac Island that maximize their monopoly profits and harm the City, its residents and visitors, businesses on Mackinac Island, and their employees.

43.     On or about September 11, 2024, the City Council passed a resolution that rejected Shepler's and MIFC's proposed rate increase for ferry boat services and their proposal for additional ancillary costs. The resolution states that the "recent purchase of all the ferry boat companies by one company presents the City with a monopoly situation, a situation the City has never faced before." The resolution states that the City is "freezing the rates that were in place for the 2024 season," with certain listed exceptions [sic]

**ANSWER**: Denied as untrue. The City admits that City Council passed a resolution on December 11, 2024 (not September 11, 2024) that contains the language quoted in paragraph 43. The resolution speaks for itself and a copy is attached as Exhibit A to the Answer.

The City has determined under its authority to "license and regulate ferries to and from the city, . . . and to regulate and prescribe . . . the charges and prices for the transportation of persons and property thereon," which was delegated exclusively to the City through the Michigan Legislature's adoption of the City's Charter, that the common ownership and control by Hoffmann Marine of Shepler's and MIFC/Arnold has eliminated competition in ferry boat service to and from the City and created a monopoly in the provision of such ferry boat services. The City therefore "has the right to assert its jurisdiction over schedules and fares to the extent permitted by present law," pursuant to Section 9 of the Shepler's Amendment and Restatement of Franchise Agreement and the City's Charter and Ordinances.

44.    Plaintiffs dispute that the Franchise Agreement provides the City with unilateral authority to declare a "monopoly," or specifically the existence of "no competition," for purposes of regulating the rates for ferry services under that Franchise Agreement.

**ANSWER**: The City denies that Shepler's and MIFC/Arnold Amendment and Restatement of Franchise Agreements prohibit the City from "unilaterally" determining that no competition exists between Shepler's and MIFC/Arnold for ferry services to the City. The City has the exclusive authority to determine if a monopoly exists in ferry boat services if there is "no competition" in the provision of ferry boat services. This authority was granted solely to the City through the Michigan Legislature's adoption of the City's Charter which gave the City the exclusive authority to "license and regulate ferries to and from the city, . . . and to regulate and prescribe . . . the charges and prices for the transportation of persons and property thereon."

To the extent the allegations in paragraph 44 are based on the Plaintiffs' interpretation or understanding of the "dispute," the City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 44 of the Complaint and, therefore, denies those allegations. The City further states that the remaining allegations in paragraph 44 contain legal conclusions and, therefore, require no further response from the City.

45.     Plaintiffs also dispute that the Franchise Agreement provides the City with authority to reject their proposed ancillary costs.

**ANSWER**: Shepler's and MIFC/Arnold have not defined "ancillary costs" as it is used in paragraph 45. Therefore, the City lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45 about "ancillary costs" and denies them as untrue. The City further states that the Michigan Legislature, through the adoption of the City's Charter, conferred on the City the exclusive authority to "license and regulate ferries to and from the city, . . . and to regulate and prescribe . . . the charges and prices for the transportation of persons and property thereon," which includes without limitation any and all fees and charges relating to such ferry service. To the extent the allegations in paragraph 45 are based on the Plaintiffs' interpretation or understanding of the "dispute," the City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 45 of the Complaint and, therefore, denies those allegations. The City further states that the remaining allegations in paragraph 45 contain legal conclusions and, therefore, require no further response from the City.

46.     On or about September 11, 2024, the City also formally resolved that "parking rates must be brought to the City Council by January 8, 2025." These parking rates reference the rates that Shepler's and MIFC charge for parking on their respective lots in either St. Ignace or Mackinaw City.

**ANSWER**: Denied as untrue. On December 11, 2024 (not September 11, 2024), the City Council adopted a resolution that stated, in part: "It is further resolved that parking rates must be brought to the City Council by January 8th 2025." The City admits that the reference to "parking rates" in the resolution was to the parking rates charged to the ferries' "guests" to park in lots owned by Hoffmann Marine, Shepler's and MIFC/Arnold in St. Ignace and Mackinaw City while the ferries' "guests" travel to and from Mackinac Island. The resolution speaks for itself and a copy is attached as Exhibit A to the Answer. The City further states that the Michigan Legislature delegated exclusive authority to the City to "license and regulate ferries to and from the city, . . . and to regulate and prescribe . . . the charges and prices for the transportation of persons and property thereon," including the rates that the ferry companies charge passengers for parking which is necessary to access transportation by ferry. The City further states that Hoffmann Marine, Shepler's, and MIFC/Arnold, acting together as a monopoly of ferry services to Mackinac Island, will—unless regulated by the City through its exclusive authority delegated by the Michigan legislature—set supra-competitive prices that maximize their monopoly profits and harm and the City, its residents and visitors, businesses on Mackinac Island, and their employees.

47.    During the winter of 2024-2025, representatives from the Hoffmann Family, on behalf of Shepler's and MIFC, sought to work with the City Council, including an explanation regarding why a ferry rate increase for 2025, with some additional ancillary costs, is important because of increased expenses. On January 8, 2025, the City stated that, while "the Council appreciate[s] the hard work that Hoffmann has put in to providing ferry services to Mackinac Island," the City "does not have an understanding [of the] full costs as that is not shared with the City." The City's mayor unilaterally declared that "the City is dealing with a monopoly[.]"

**ANSWER**: The City admits that, during the winter of 2024-2025, representatives of Hoffmann Marine, acting as the owner and manager of Shepler's and MIFC/Arnold, communicated with the City about the City's enforcement of Section 9 of the Franchise Agreement, as well as the City's enforcement of its Ordinances and Charter pertaining to ferries. The City denies that Hoffmann Marine, Shepler's or MIFC/Arnold provided explanations as to their requests for the ferry rate increases or "additional ancillary costs," or provided any information as to their expenses and revenues for operating ferry services under the Shepler's and MIFC/Arnold Amendment and Restatement of Franchise Agreements. The City further denies as untrue that the Mayor "unilaterally declared that 'the City is dealing with a monopoly[.]"

The City further admits that the City Council's January 8, 2025 meeting minutes contain the text quoted in paragraph 47, but denies that the quoted language is the only text in those minutes pertaining to the issues raised in this Complaint. Further, the meeting minutes speak for themselves, and a copy is attached as Exhibit B to the Answer. Shepler's and MIFC/Arnold have not defined "ancillary costs" as it is used in paragraph 47, and the City lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47 pertaining to "ancillary costs" and, therefore, denies those allegations.  As to all remaining allegations in paragraph 47, the City denies those allegations as untrue.

48.    On or about February 4, 2025, in the interest of continued cooperation with the City Council, counsel for Plaintiffs shared their proposed parking rates for 2025 for the parking lots located on Mackinaw Island and St. Ignace. In doing so, however, Plaintiffs' counsel also stated that "the City has no right under the Francise [sic] Agreements [to approve] the schedule and parking rates[.]"

**ANSWER**: The City admits that on or about February 4, 2025, counsel for Plaintiffs forwarded the parking rates that Hoffmann Marine, Shepler's, and MIFC/Arnold intended to charge their "guests" for the 2025 season for the use of parking lots located in Mackinaw City and St. Ignace when their "guests" travel to and from Mackinac Island. The City further admits that the email forwarded by Plaintiffs' counsel included the language quoted in paragraph 48. The City states that the email speaks for itself. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 48 as to why counsel for Plaintiffs shared the parking rates with the City Council and, therefore, denies those allegations. The allegations in paragraph 48 also contain legal conclusions, and, therefore, no response is required from the City. To the extent a response is required to those allegations, and as to all remaining allegations in paragraph 48, the City denies those allegations.

In further response, the City states it has determined under its exclusive authority to "license and regulate ferries," and "regulate and prescribe . . . the charges and prices for the transportation" by ferry, which was delegated exclusively to the City through the Michigan Legislature's adoption of the City's Charter, that the common ownership and control by Hoffmann Marine of Shepler's and MIFC/Arnold has eliminated competition in ferry boat service to and from the City and created a monopoly in the provision of such ferry boat services. The City therefore "has the right to assert its jurisdiction over schedules and fares to the extent permitted by present law," including over parking fees, when the City has determined—as here—there is "no competition . . . . in ferry boat service to and from the City."

49.    On February 19, 2025, the City Council unanimously passed a motion that (a) "rejected" both Shepler's and MIFC's proposed parking rates; (b) demanded that they both "remove all reference to the unapproved parking rates from their websites, other distributions, and

advertisements; and (c) demanded that they provide the City with information regarding their parking rates from 2023 and 2024, including information on lot locations and capacities.

**ANSWER**: The City admits that, on February 19, 2025, the City Council unanimously passed a motion "to reject the 2025 parking rates submitted by Arnold Transit and Shepler's Ferry as presented, to require that Shepler's Ferry and Arnold Transit provided their 2023 and 2024 parking rates with lot locations and capacities . . ., and that any references to the proposed 2025 parking fees from both companies be removed from any and all distribution." The City denies all remaining allegations in paragraph 49 as untrue.

50.    The following week, on February 26, 2025, the City unanimously passed another motion related to parking, which restated its prior motion, and gave Shepler's and MIFC's until March 3, 2025 to comply. During this meeting, counsel for the City stated that City's legal position is, at least in part, the "Franchise Agreement" provides the City with its authority to make these demands.

**ANSWER**: The City admits that, during the February 26, 2025 meeting of the City Council, the following motion was unanimously passed by the City Council:

> that under the City of Mackinac Island's authority to regulate ferry services rates and fees, and having already frozen the rates and fees at the 2024 pricing in order to study said rates and fees, further being that parking rates & fees are an integral part of ferry boat services, the Council hereby moves to freeze the parking rates at the 2024 pricing, and requires Hoffmann Marine to remove all reference to the unapproved Shepler['s] and Arnold Transit parking rates from their websites, other distributions, and advertisements. Hoffmann Marine has until Monday, March 3, 2025 at 4:00 pm to comply and notify the City Clerk of their compliance.

The City denies the allegation that the Shepler's and MIFC/Arnold Amendment and Restatement of Franchise Agreements were the only source of the City's authority to pass the aforementioned resolution. The Michigan Legislature, through the adoption of the City's Charter,

conferred on the City the exclusive authority to "regulate and license ferries" providing services to the City, including regulating parking fees, when the City has determined—as here—that there is "no competition . . . . in ferry boat service to and from the City." The City denies the remaining allegations in paragraph 50 as untrue.

51.     Plaintiffs dispute that the Franchise Agreement provides the City with any authority, whether direct or implied, to regulate Plaintiffs' parking businesses in either Mackinaw City or St. Ignace.

**ANSWER**: The City denies that Hoffmann Marine, Shepler's, and MIFC/Arnold operate a business for "parking services" that is separate or independent from their business for ferry services. The City further denies that the Shepler's and MIFC/Arnold Amendment and Restatement of Franchise Agreements are the sole authority granting the City the right to regulate Shepler's, MIFC/Arnold or Hoffmann Marine parking fees in Mackinaw City or St. Ignace.

The City has determined under its exclusive authority to "regulate and license ferries," which was delegated exclusively to the City through the Michigan Legislature's adoption of the City's Charter, that the common ownership and control by Hoffmann Marine of Shepler's and MIFC/Arnold has eliminated competition in ferry boat service to and from the City and created a monopoly in the provision of such ferry boat services. The City therefore "has the right to assert its jurisdiction over schedules and fares to the extent permitted by present law," including over parking rates, pursuant to Section 9 of Shepler's and MIFC/Arnold Amendment and Restatement of Franchise Agreements and the City's Charter and Ordinances.

To the extent the allegations in paragraph 51 are based on the Plaintiffs' interpretation or understanding of the "dispute," the City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 51 of the Complaint and, therefore, denies

those allegations. The City further states that the remaining allegations in paragraph 51 contain legal conclusions and, therefore, require no further response from the City.

## COUNT I
### (Declaratory Judgment Under 28 U.S.C § 2201)

52.    The preceding paragraphs are hereby realleged and incorporated by reference as if fully set forth herein.

**ANSWER**: The City restates and incorporates by reference its answers to paragraphs 1-51 of the Complaint as if fully set forth herein.

53.    Pursuant to 28 U.S.C. § 2201, an "actual controversy" exists between Plaintiffs and Defendant regarding the "rights and other legal relations" related to the Franchise Agreement.

**ANSWER**: The City states that paragraph 3 contains a legal conclusion and, therefore, requires no further response from the City.

54.    Under Section 9, the Franchise Agreement provides that:

> In the event that no competition is found to exist in ferry boat service to and from the City, the City has the right to assert its jurisdiction over schedules and fares to the extent permitted by present law.

**ANSWER**: The City states that the Franchise Agreement speaks for itself.

55.    Citing the Franchise Agreement, Defendant has unilaterally declared that a monopoly exists for ferry services to and from Mackinac Island and thus Defendant can establish its own fares for these services.

**ANSWER**: The City admits that it has determined under its exclusive authority to "license and regulate ferries," which was delegated exclusively to the City through the Michigan Legislature's adoption of the City's Charter, that the common ownership and control by Hoffmann Marine of Shepler's and MIFC/Arnold has eliminated competition in ferry boat service to and from the City and created a monopoly in the provision of such ferry boat services. The City therefore

"has the right to assert its jurisdiction over schedules and fares to the extent permitted by present law," pursuant to Section 9 of Shepler's and MIFC/Arnold Amendment and Restatement of Franchise Agreements and the City's Charter and Ordinances. The City denies the remaining allegations of paragraph 55 as untrue.

56.    Plaintiffs dispute that the Franchise Agreement empowers Defendant to unilaterally "find" the existence of a "no competition" for purposes of establishing fares.

**ANSWER:** The City has determined under its exclusive authority to "license and regulate ferries," which was delegated exclusively to the City through the Michigan Legislature's adoption of the City's Charter, that the common ownership and control by Hoffmann Marine of Shepler's and MIFC/Arnold has eliminated competition in ferry boat service to and from the City and created a monopoly in the provision of such ferry boat services. The City therefore "has the right to assert its jurisdiction over schedules and fares to the extent permitted by present law," pursuant to Section 9 of the Shepler's and MIFC/Arnold Amendment and Restatement of Franchise Agreements and the City's Charter and Ordinances.

To the extent the allegations in paragraph 56 are based on the Plaintiffs' interpretation or understanding of the "dispute," the City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 56 of the Complaint and, therefore, denies those allegations. The City states that the remaining allegations in paragraph 56 contain legal conclusions and, therefore, require no further response from the City.

57.    Citing the Franchise Agreement, Defendant has taken the position that it can regulate Plaintiffs proposed ancillary costs related to its ferry services.

**ANSWER**: Shepler's and MIFC/Arnold have not defined "ancillary costs" as it is used in paragraph 57 and therefore the City lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in paragraph 57 and denies those allegations. The City further states its exclusive authority to "license and regulate ferries . . . and to regulate and prescribe . . . the charges and prices for transportation" by ferry to and from Mackinac Island, which was delegated exclusively to the City through the Michigan Legislature's adoption of the City's Charter, and its "right to assert its jurisdiction over schedules and fares to the extent permitted by present law," pursuant to Section 9 of the Shepler's and MIFC/Arnold Amendment and Restatement of Franchise Agreement sand the City's Charter and Ordinances, which includes, without limitation, the right to regulate all fees and charges related to Plaintiffs' provision of ferry boat services.

58.    Plaintiffs dispute that the Franchise Agreement empowers Defendant to regulate ancillary costs related to their ferry services that are not fares for the same.

**ANSWER**: Shepler's and MIFC/Arnold have not defined "ancillary costs" as it is used in paragraph 58 and therefore the City lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 58 and denies those allegations. The City further states that it has determined under its exclusive authority to "license and regulate ferries . . . and to regulate and prescribe . . . the charges and prices for transportation" by ferry to and from Mackinac Island, which was delegated exclusively to the City through the Michigan Legislature's adoption of the City's Charter, and its "right to assert its jurisdiction over schedules and fares to the extent permitted by present law," pursuant to Section 9 of the Shepler's and MIFC/Arnold Amendment and Restatement of Franchise Agreements and the City's Charter and Ordinances includes, without limitation, the right to regulate all fees and charges related to Plaintiffs' provision of ferry boat services. To the extent the allegations in paragraph 58 are based on the Plaintiffs' interpretation or understanding of the "dispute," the City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 58 of the Complaint and, therefore, denies

those allegations. The City states that the remaining allegations in paragraph 56 contain legal conclusions and, therefore, require no further response from the City.

59.     Citing the Franchise Agreement, Defendant has also unilaterally declared that it can regulate the Plaintiffs' parking businesses in Mackinaw City and St. Ignace, including requesting that Plaintiffs cease advertising and compelling the production of financial documents.

**ANSWER**: The City denies that it only cited to the Shepler's or MIFC/Arnold Amendment and Restatement of Franchise Agreements for its authority to regulate the parking rates of Hoffmann Marine, Shepler's, and MIFC/Arnold. The City has determined under its exclusive authority to "license and regulate ferries," which was delegated exclusively to the City through the Michigan Legislature's adoption of the City's Charter, and the City's "right to assert its jurisdiction over schedules and fares to the extent permitted by present law," pursuant to Section 9 of the Shepler's and MIFC/Arnold Amendment and Restatement of Franchise Agreements and the City's Charter and Ordinances, includes the right to regulate all fees and charges by the ferry boat companies, including without limitation parking rates. The City admits that it instructed Hoffmann Marine, Shepler's, and MIFC/Arnold that they may not post rates that have not been approved by City Council for the 2025 summer season. The City denies the remaining allegations of paragraph 59.

60.     Plaintiffs dispute that the Franchise Agreement empowers Defendant to regulate Plaintiffs' parking businesses in Mackinaw City and St. Ignace, including any power to demand that they cease advertising or compel their production of financial documents.

**ANSWER**: The City denies that Shepler's, MIFC/Arnold or Hoffmann Marine operate a business for "parking services" that is separate or independent from their business for ferry services. The City further denies that the Shepler's and MIFC/Arnold Amendment and

Restatement of Franchise Agreements are the sole authority granting the City the right to regulate Shepler's, MIFC/Arnold or Hoffmann Marine parking fees in Mackinaw City or St. Ignace, including regulation of their advertising of parking fees and the production of financial documents. The City's exclusive authority to "license and regulate ferries," which was delegated exclusively to the City through the Michigan Legislature's adoption of the City's Charter, has and its "right to assert its jurisdiction over schedules and fares to the extent permitted by present law," including parking fees, advertisement of those parking fees, and production of financial documents, pursuant to Section 9 of the Shepler's and MIFC/Arnold Amendment and Restatement of Franchise Agreements and the City's Charter and Ordinances, includes the right to regulate all fees and charges by the ferry boat companies, including without limitation parking rates.

To the extent the allegations in paragraph 60 are based on the Plaintiffs' interpretation or understanding of the "dispute," the City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 60 of the Complaint and, therefore, denies those allegations. The City further states that the remaining allegations in paragraph 60 contain legal conclusions and, therefore, require no further response from the City.

WHEREFORE, Defendant City of Mackinac Island prays that the Court dismiss Plaintiffs' Complaint with prejudice, and award Defendant its attorney fees and costs and fees so wrongfully incurred.

Respectfully submitted,

By: */s/ Kimberly L. Scott*
Larry J. Saylor (P28165)
Kimberly L. Scott (P69706)
Miller, Canfield, Paddock and Stone, P.L.C.
150 W. Jefferson Ave., Suite 2500
Detroit, MI 48226
(313) 496-7986
saylor@millercanfield.com
scott@millercanfield.com

Michael E. Cavanaugh (P11744)
Fraser Trebilcock
124 W. Allegan Street
Suite 1000
Lansing, MI 48933
mcavanaugh@fraserlawfirm.com

Erin Evashevski (P80940) (*admission to be submitted*)
Evashevski Law Office
PO Box 373
838 N. State Street
St. Ignace, MI 49781
erinevashevskilaw@gmail.com

*Attorneys for City of Mackinac Island*

Dated: April 3, 2025

**DEFENDANT CITY OF MACKINAC ISLAND'S
AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT**

Defendant City of Mackinac Island (the "City"), by and through its attorneys, Miller, Canfield, Paddock and Stone, P.L.C., states the following for its affirmative defenses to Plaintiffs' Complaint that has been filed against the City in this matter. The City does not hereby assume any burden of proof that would otherwise be borne by Plaintiffs.

1.    Plaintiffs' Complaint fails to state a claim upon which relief can or may be granted.

2.    Plaintiffs have failed to state or support a claim for declaratory relief.

3.    Plaintiffs' Complaint is barred in whole or in part by the equitable doctrines of laches, estoppel, and/or unclean hands.

4.    Plaintiffs have not alleged an actual controversy giving rise to an actionable claim.

5.    The allegations set forth in Plaintiffs' Complaint misstate and misrepresent the Shepler's Amendment and Restatement of Franchise Agreement and the MIFC/Arnold Amendment and Restatement of Franchise Agreement (as those terms are defined in the City's Answer to the Complaint).

6.    The allegations set forth in Plaintiffs' Complaint misstate and misrepresent the City's Ordinances and Charter.

7.    Plaintiffs' claims are barred in whole or in part by the doctrines of governmental and/or sovereign immunity.

8.    Plaintiffs' claims are barred in whole or in part by the doctrines of stare decisis and/or res judicata.

9.    Plaintiffs have suffered no damages and therefore are not entitled to any pre- and post-judgment interest.

10.    Plaintiffs are not entitled to any expenses, costs and disbursements.

11.    Plaintiffs lack standing to assert any of the alleged claims.

12.    At all relevant times, the City's actions were lawful under the City's Ordinances and Charter.

13.    At all relevant times, the City's actions were lawful under the Shepler's Amendment and Restatement of Franchise Agreement and the MIFC/Arnold Amendment and Restatement of Franchise Agreement (as those terms are defined in the City's Answer to the Complaint).

14.    Plaintiffs' claims are barred in whole or in part by the doctrine of waiver and/or acquiescence.

15.    Plaintiffs' Complaint fails to comply with Fed. R. Civ. P. 8(a)(1) (a pleading must contain a "short and plain statement of claim showing that the pleader is entitled to relief").

The City reserves the right to amend these affirmative defenses as may be necessary throughout the course of discovery in this litigation.

Respectfully submitted,

By: */s/ Kimberly L. Scott*
Larry J. Saylor (P28165)
Kimberly L. Scott (P69706)
Miller, Canfield, Paddock and Stone, P.L.C.
150 W. Jefferson Ave., Suite 2500
Detroit, MI 48226
(313) 496-7986
saylor@millercanfield.com
scott@millercanfield.com

Michael E. Cavanaugh (P11744)
Fraser Trebilcock
124 W. Allegan Street
Suite 1000
Lansing, MI 48933
mcavanaugh@fraserlawfirm.com

Erin Evashevski (P80940) (*admission to be submitted*)
Evashevski Law Office
PO Box 373
838 N. State Street
St. Ignace, MI 49781
erinevashevskilaw@gmail.com

*Attorneys for City of Mackinac Island*

Dated: April 3, 2025

## CITY OF MACKINAC ISLAND'S COUNTERCLAIM

Counter-Plaintiff City of Mackinac Island, as its Counterclaim against Shepler's Inc. d/b/a Shepler's Mackinac Island Ferry Service ("Shepler's") and Mackinac Island Ferry Company d/b/a Arnold Transit Company ("MIFC/Arnold") (collectively "Counter-Defendants"), alleges as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction of the present Counterclaim pursuant to 28 U.S.C. § 1331, 1337, and 1367.

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391, because counter-defendants are residents of this District as defined in 28 U.S.C. § 1391(c)(2).

3.      This Court is authorized to grant declaratory relief as quested by Counter-Plaintiff herein pursuant to 28 U.S.C. § 2201.

### PARTIES

4.      Counter-Plaintiff City of Mackinac Island (the "City") is a Michigan municipal corporation located in Mackinac County, Michigan.

5.      Counter-Defendant Shepler's is a Michigan Domestic Profit Corporation with its principal place of business located in Mackinaw City, Cheboygan County, Michigan. Shepler's has substantial assets and operations located on Mackinac Island.

6.      Counter-Defendant MIFC/Arnold (sometimes hereinafter "MIFC" or "Arnold") is a Michigan Domestic Profit Corporation with its principal place of business in St. Ignace, Mackinac County, Michigan. MIFC/Arnold has substantial assets and operations located on Mackinac Island.

## FACTS ALLEGED

7.    Mackinac Island is located in Lake Huron at the eastern end of the Straits of Mackinac, between Michigan's upper and lower peninsulas, and is entirely surrounded by water. The territorial boundaries of the City include all of Mackinac Island, although a large portion of the island is preserved as the Mackinac Island State Park, and Round Island.

8.    For over a century, Mackinac Island has been a popular tourist destination and summer resort community. Given its great appeal to tourists, the City, which has a permanent population of approximately 583 residents, each summer experiences an influx of hundreds of thousands of visitors, hundreds of seasonal residents, and thousands of seasonal workers who reside in or commute to the City during the tourist season to work at the many hotels, restaurants, bars and retail shops located on the Island.

9.    The City's permanent residents need reliable ferry service, and the ferry service does not end with the tourist season. Rather, the City and its residents need reliable ferry service to and from Mackinac Island all year long (or for as long as ice conditions on the Straits permit) for a whole host of reasons — *e.g.*, food and other supplies, emergency medical treatment, dental treatment, procuring goods and services not available on the Island, employment, and visiting friends and family, among other reasons. Without ferry service, the City's permanent residents simply do not have a practical way to come and go from their Island.

10.    These factors alone make the City far different than most other municipalities. What makes the City even more unique is the fact that it was established more than one hundred years ago with the Legislature's enactment of 1899 LA 437 (the "Charter"). As a result, the City is one of only a very small and select handful of municipalities in the state whose authority to enact ordinances and to

carry on its affairs is primarily derived from a special legislative act rather than some other more general statutory provision, such as the Home Rule Cities Act, M.C.L. § 117.1a *et seq*.

11.    In other words, the Legislature realized long ago how special the City of Mackinac Island is, and wisely chose to provide the City with specific grants of power to enable the City to adequately handle its particular transportation needs and to otherwise function in its unique environment.

12.    Since 1898, Mackinac Island has banned non-emergency motor vehicles.

13.    The Charter provides the City with broad authority to establish, authorize, license and regulate the ferries transporting persons and freight to and from the City, including the regulation of schedules and rates. Specifically, the Charter, at Chapter IX, §1, Part 13, vests the City with the power to enact ordinances that require any ferry boat company providing service to first obtain a franchise from the City:

> Said City of Mackinac Island shall, in addition to such other powers as are herein conferred . . . the council may pass such ordinances . . . to establish or authorize, license and regulate ferries to and from the City, or any place therein . . . and to regulate from time to time the charges and prices for the transportation of persons and property thereon.

14.    Similarly, the Charter, at Chapter XVI, §1, states:

> The council of said City may regulate and license ferries from such City or any place of landing therein to the opposite shore, or from one part of the City to another; and may require the payment of such reasonable sum for such license as to the council shall seem proper and may impose such reasonable terms and restrictions in relation to keeping in management of such ferries and the time, manner and rates of carriage and transportation of persons and property as may be proper, and provide for the revocation of any such license and for the punishment, by proper fines and penalties, of the violation of any ordinance prohibiting unlicensed ferries, and regulating those established and licensed.

15.    The City's exclusive authority to grant franchises to ferry boat operators and to charge fees for those franchises has been upheld by the courts. See *Arnold Transit Co v. City of*

*Mackinac Island*, 99 Mich App. 266; 297 N.W.2d 904 (1980), affirmed, 415 Mich. 362; 329 N.W.2d 712 (1982), appeal dismissed for want of a substantial federal question, 464 U.S. 804 (1983).

16.     While there is a landing strip on Mackinac Island that can accommodate small aircraft, the only feasible mode of transportation to and from the City for the vast majority of its residents and visitors is the use of watercraft, either personal boats or ferries.

17.     For almost all residents and visitors, the ferry boats are the normal means of traveling to and from the Island and delivering property, goods and inventory to the City.

18.     In recent years, three ferry companies provided service to Mackinac Island: Arnold Transit Company, Shepler's, and Star Line.

19.     In 2016, Star Line purchased all or a majority of the stock of Arnold Transit Company, and rebranded the combined business "Mackinac Island Ferry Company" ("MIFC").

20.     In 2022, Hoffmann Marine, which on information and belief is an unincorporated division of Hoffmann Family of Companies ("HFC"), purchased all or a controlling majority of Shepler's stock.

21.     In or about June 2024, Hoffmann Marine purchased all or a controlling majority of the stock of MIFC (f/k/a "Star Line"), bringing the two remaining ferry companies serving Mackinac Island under the common ownership of Hoffmann Marine.

22.     In a press release dated June 29, 2024, announcing the acquisition of MIFC, HFC described itself as "a multi-vertical, family-owned private equity firm consisting of over 100 global brands, and employs 11,000 employees with businesses located in 30 countries and 400 locations around the world. Hoffmann Family of Companies' verticals include Aviation, Agriculture, Financial Services, Hospitality, Business & Professional Services, Industrial, Manufacturing,

Marine, Media & Marketing, Real Estate and Transportation." A copy of the press release is attached as Exhibit 5.

23.     In or about September 2024, Hoffmann Marine rebranded MIFC "Arnold Transit Company" (which will be referred to as "MIFC/Arnold").

24.     While Hoffmann Marine has maintained Shepler's and MIFC/Arnold as separate corporations, on information and belief, Hoffmann Marine owns all or a majority of the stock of both companies, and exercises complete control over both companies, including their boats, docks, parking lots, names, brands and pricing.

25.     Hoffmann Marine's control over Shepler's and MIFC/Arnold is confirmed by the facts set forth below, among others.

26.     Both Shepler's and MIFC/Arnold report to Jenny Gezella, Hoffmann Marine's President, who on information and belief is the ultimate decision-maker for both companies.

27.     Ms. Gezella's profile on HFC's website reports that as president of Hoffmann Marine, Ms. Gezella "oversees 46 boats across the United States"; "Hoffmann Marine operates docks and marinas across the country"; "[a]s President, [Ms. Gezella] oversees all day-to-day operations of the business, working closely with operators in each company"; "[s]he played a pivotal role in expanding the company's presence on Mackinac Island, Michigan, where Hoffmann Marine operates ferry service, docks . . . and is among the largest real estate owners in the area." A copy of Ms. Gezella's profile is attached as Exhibit 6.

28.     The HFC press release dated June 29, 2024, stated: "'To ensure a seamless transition, Jenny [Gezella] will be on the [Mackinac] island this season . . . to drive new business,' stated Greg Hoffmann, Co-CEO of HFC. 'In addition to overseeing a local fleet of 24 boats, Jenny remains committed to maintaining high standards across all operations.'" See Exhibit 5 hereto.

29.     In an article in the Mackinac Island Town Crier (which was also purchased by HFC), dated July 20-26, 2024, Ms. Gezella was quoted as saying: "Star line tickets will be accepted at Shepler's.  As a family now of companies, a ticket is a ticket . . . . If you can't get on at Star Line, bring it over to Shepler's, and we will get you on the boat." A copy of the article is attached as Exhibit 7.

30.     Shepler's CEO Chris Shepler acts or has acted as the chief operating officer of both Shepler's and MIFC/Arnold.

31.     Ms. Gezella and Chris Shepler have appeared together and spoken on behalf of both MIFC/Arnold and Shepler's in dealing with City officials on rates and operational matters.

32.     In late 2024, Shepler's and MIFC/Arnold asked the City to approve identical $2 increases in ticket prices for 2025 for both ferry companies. Ms. Gezella and Chris Shepler appeared together at the City Council meeting on behalf of Hoffmann Marine and both ferry companies.

33.     In Summer 2024, Hoffmann Marine pulled most of MIFC/Arnold's boats out of service, and used Shepler's boats to transport passengers for both companies.

34.     Relying on its Charter, the City on June 29, 1977, adopted Ordinance Number 12, amended July 10, 2012 (the "Ordinance"), which regulates ferry boat operations to and from the City. In part, the Ordinance states: "[N]o person shall operate a ferry boat service nor shall any person provide a ferry boat service in the City without such person having first obtained a franchise from the City."

35.     In accord with the Ordinance, Shepler's entered into an Amendment and Restatement of Franchise Agreement with the City dated November 13, 2023, which expires June

30, 2027. A copy of the Amendment and Restatement of Franchise Agreement is attached as Exhibit 2.

36.    In accord with the Ordinance, MIFC (now d/b/a/Arnold) entered into an Amendment and Restatement of Franchise Agreement with the City dated October 18, 2023, which expires June 30, 2027. A copy of the Amendment and Restatement of Franchise Agreement is attached as Exhibit 4.

37.    Section 9 of both Amendment and Restatement of Franchise Agreements provides that [i]n the event that no competition is found to exist in ferry boat service to and from the City, the City has the right to assert its jurisdiction over schedules and fares to the extent permitted by present law."

38.    Shepler's and MIFC/Arnold, being under the common ownership and complete control of Hoffmann Marine, are not competitors as a matter of fact and law.

39.    The City is empowered under the Amendment and Restatement of Franchise Agreements, and its Charter and Ordinances, to regulate the rates and charges of Shepler's and MIFC/Arnold for ferry boat service to Mackinac Island, including without limitation their charges for parking in the company-owned lots which is necessary to access the ferries, and other rates and charges in connection with transportation by ferry.

40.    By their present Complaint and otherwise, MIFC/Arnold and Shepler's falsely insist that competition exists between them despite their common ownership and control by Hoffmann Marine.

41.    The City Council declined to approve the fare increases requested by Shepler's and MIFC/Arnold in late 2024, pending adoption by the City of an updated Ordinance incorporating a

procedure for rate regulation, and further study by a consultant retained by the City to determine whether Counter-Defendants' proposed rates are fair and reasonable.

42.     In addition to the approximately 583 residents who live on Mackinac Island year-round, Shepler's and MIFC/Arnold report that Mackinac Island attracts upwards of 1.5 million passengers per year.  Most of them, including visitors, seasonal residents and seasonal employees, arrive in the summer months.  See https://www.mackinacisland.org/blog/post/can-you-live-on-mackinac-island/.

43.     There is no public transit in either Mackinaw City or St. Ignace. While a small number of visitors arrive on Mackinac Island by private plane, chartered aircraft, or private boat, the vast majority of visitors, residents, and employees travel to the Island by ferry and must arrive at the docks in Mackinaw City and St. Ignace by private vehicle. This means that hundreds of thousands of vehicles must be parked at or near the ferry docks each year.

44.     Shepler's and MIFC/Arnold own extensive parking lots in Mackinaw City and St. Ignace. Some of the lots are dockside. Other parking lots owned by Shepler's and MIFC/Arnold are remote from the docks and are accessed by a shuttle bus provided by the ferry company.

45.     The June 29, 2024, HFC Press Release stated that with the acquisition of MIFC/Arnold, "HF Companies now owns [sic] more than 116 parcels of land, including docks in Mackinaw City, Mackinac Island, and St. Ignace, 51 buildings and 6500 parking spaces." (Exhibit 5 hereto, emphasis added).

46.     There are no competing public or privately-owned parking lots in or near Mackinaw City or St. Ignace that ferry passengers could use. On-street parking in both cities is limited, and both cities restrict on-street parking to two hours, which is too short for a trip to the island. Businesses in both cities offer limited parking and restrict its use to customers.

47.     While it is conceivable that a competitor could develop additional remote parking lots and bus customers to the ferries, there are substantial barriers to entry, including the need to purchase and develop large tracts of land, obtain zoning approval, purchase and operate buses to transport passengers to the ferry docks, and gain access to the ferry docks to drop off passengers, all of which would make development of competing parking lots expensive, time-consuming and uncertain.

48.     Shepler's and MIFC/Arnold own or have exclusive access to the docks necessary for use by the ferries in St. Ignace, Mackinaw City, and the City of Mackinac Island, and their common control of the docks acts as a further barrier to entry by competing ferry boat services, cementing Shepler's and MIFC/Arnold's monopoly.

49.     Because the City of Mackinac Island is just that, an island, ferry boat service is an essential facility for the City and its residents, visitors, businesses located on the island, and employees of those businesses.

50.     Before Hoffman Marine acquired Shepler's and MIFC/Arnold, the ferry companies offered parking free of charge to persons who purchased a ferry ticket, effectively bundling the parking with a ferry ticket.

51.     Shepler's and MIFC/Arnold also provided free parking for year-round Mackinac Island residents, many of whom keep a vehicle in St. Ignace or Mackinaw City for use on the mainland, and for seasonal residents and seasonal employees who commute to the Island.

52.     Since their acquisition by Hoffman Marine, Shepler's and MIFC/Arnold have imposed charges for parking of at least $10 per day, with higher rates for overnight parking, and rates as high as $80 per day for "premium" parking.

53.     Shepler's and MIFC/Arnold have also announced plans to charge Mackinac Island residents and commuters hundreds of dollars for annual or seasonal parking passes.

54.     Unless their parking fees are regulated, MIFC/Arnold and Shepler's can side-step fare regulation by charging excessive prices for parking at their captive parking lots.

55.     Because parking in the lots owned by Shepler's and MIFC/Arnold is necessary to access the ferries, it is an integral part of transportation to Mackinac Island by ferry, the City's Charter, the Ordinance, and the Amendment and Restatement of Franchise Agreements grant the City the right to regulate charges by MIFC/Arnold and Shepler's for parking.

56.     MIFC/Arnold and Shepler's have denied that the City can regulate their parking fees and have refused to submit their proposed fees for the 2025 season for approval by the City.

57.     The refusal by MIFC/Arnold and Shepler's to comply with their Amendment and Restatement of Franchise Agreements by cooperating in rate regulation by the City prevents the City from fulfilling the regulatory responsibilities authorized by its Charter, the Ordinance and the Amendment and Restatement of Franchise Agreements, causing irreparable injury to the City, its residents, businesses located in the City, their employees, and visitors.

58.     Shepler's and MIFC/Arnold together own, or control by leases, one hundred percent of the docks suitable for ferry operations in St. Ignace, Mackinaw City, and on Mackinaw Island. Control of the docks prevents entry by potential competitors into the relevant market for ferry service to Mackinac Island, further cementing the ability of Shepler's and MIFC/Arnold to extract monopoly profits from that market.

59.     The City is injured in its business or property by the ferry boat companies' antitrust violations and breaches of contract alleged herein. The City is a customer of the ferries, and the ferry companies' supra-competitive rates and charges for ferry service, including but not limited

to parking, increase the City's costs and suppress the City's revenues by discouraging travel to Mackinac Island.

## COUNT I
### Monopolization and Contract in Restraint of Trade
### Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2

60.    Counter-Plaintiff incorporates by reference as if fully set forth herein the allegations set forth in paragraphs 1 through 59 above.

61.    Under the antitrust laws, a relevant market consists of goods or services that are reasonably interchangeable by customers. A seller has market or monopoly power when it can significantly raise prices or decrease quality without losing enough revenue to make the move unprofitable. In general, market or monopoly power exists when a seller controls a large share of a relevant market.

62.    Ferry service to Mackinac Island constitutes a relevant product and geographic market for the purposes of the antitrust laws.

63.    Shepler's and MIFC/Arnold control 100 percent of the relevant market for ferry service to Mackinac Island, and together have and exercise monopoly power.

64.    Because ferry customers must, as a practical matter, park in one of the lots owned by the ferry companies, the parking lots controlled by Shepler's and MIFC/Arnold act as barriers to entry into the relevant market for ferry service to Mackinac Island and enable Shepler's and MIFC/Arnold to extract monopoly profits from that relevant market.

65.    In the alternative, parking necessary to use the ferries is a relevant product and geographic market for the purpose of the antitrust laws, over which Shepler's and MIFC/Arnold exercise monopoly power.

46

66.     The control by Shepler's and MIFC/Arnold of 100 percent of the docks suitable for ferry operations in St. Ignace, Mackinaw City and on Mackinac Island acts as a further barrier to entry into the relevant market for ferry service to Mackinac Island, cementing the ability of Shepler's and MIFC/Arnold to extract monopoly profits from the relevant market.

67.     The ferry companies' increases in rates for ferry tickets and parking confirm that they have monopoly power, i.e., the power to raise prices.

68.     Because a parent corporation and its wholly-owned subsidiaries are treated as a single entity under the antitrust laws, Hoffmann Marine, Shepler's and MIFC/Arnold are a single entity for antitrust purposes.

69.     Hoffmann Marine's acquisition, operation and control of Shepler's and MIFC/Arnold is a contract, combination or conspiracy in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.S. § 1, and creates a monopoly in the relevant market or markets, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

## COUNT II
### Price Fixing and Market Division
### Section 1 of the Sherman Act, 15 U.S.C. § 1

70.     Counter-Plaintiff incorporates by reference as if fully set forth herein the allegations set forth in paragraphs 1 through 69 above.

71.     In the alternative, in the event MIFC/Arnold and Shepler's are correct that they remain independent companies that continue to compete, the communication, coordination and agreements between Shepler's and MIFC/Arnold on rates and terms of service constitute a conspiracy to fix prices and divide markets, which is a per se violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

**COUNT III**
**Michigan Antitrust Reform Act**
**MCL 445.772 and MCL 445.773**

72.     Counter-Plaintiff incorporates by reference as if fully set forth herein the allegations set forth in paragraphs 1 through 71 above.

73.     The actions of Counter-Defendants violate Sections 2 and 3 of the Michigan Antitrust Reform Act, MCL 445.772 and MCL 445.773 ("MARA"). Also see MCL 445.784(2).

**COUNT IV**
**Breach of Contract**

74.     Counter-Plaintiff incorporates by reference as if fully set forth herein the allegations set forth in paragraphs 1 through 73 above.

75.     The City's Charter empowers it to regulate "rates" or "charges and prices" for "transportation" by ferry. "Transportation" includes parking in the lots owned by the ferry companies, because virtually all passengers must use the parking lots to access the ferries, and all other fees and charges imposed by Counter-Defendants in connection with transportation by ferry.

76.     Because competition between the ferry companies has ceased as a matter of fact and law, MIFC/Arnold and Shepler's are obligated by Section 9 of their respective Amendment and Restatement of Franchise Agreement to cooperate with the City in its regulation of rates for ferry transportation to and from Mackinac Island, including rates for parking in the lots owned by the ferry companies which are necessary to access the ferries, and all other fees and charges imposed by Counter-Defendants in connection with transportation by ferry.

77.     Counter-Defendants' assertion that competition between them continues to exist despite their common ownership and control by Hoffmann Marine is false and their failure and refusal to cooperate in the City's regulatory program breaches the Amendment and Restatement of Franchise Agreements.

78.     Counter-Defendants' breach of their Amendment and Restatement of Franchise Agreements irreparably injures the City by interfering with its right to regulate ferry transportation to and from Mackinac Island, which harms the City's residents, deters visitors, reduces the value of properties and businesses in the City, and suppresses the City's tax revenues.

## COUNT V
### Declaratory Judgment, 28 U.S.C. § 2201

79.     The City incorporates by reference as if fully set forth herein the allegations set forth in paragraphs 1 through 78 above.

80.     Pursuant to 28 U.S.C. § 2201, an actual controversy exists between the City and Counter-Defendants regarding their respective rights, under the City's Charter, the Ordinance, and the Amendment and Restatement of Franchise Agreements, in connection with the regulation of ferry service to Mackinac Island, including parking necessary to access the ferries.

81.     This Court is authorized by 28 U.S.C. § 2201 to enter judgment declaring the rights of the parties.

WHEREFORE, Counter-Plaintiff City of Mackinac Island prays that the Court enter judgment as follows:

1.     Enter declaratory judgment declaring that

    a.   The City's power to regulate charges and prices for "transportation" by ferry to Mackinac Island, confirmed in *Arnold Transit Co v. City of Mackinac Island*, 99 Mich App. 266; 297 N.W.2d 904 (1980), affirmed, 415 Mich. 362; 329 N.W.2d 712 (1982), appeal dismissed for want of a substantial federal question, 464 U.S. 804 (1983), includes the power to regulate rates for parking in the lots owned by the Counter-Defendants which are necessary to access the ferries to Mackinac Island,

and other fees and charges imposed by Counter-Defendants in connection with transportation by ferry to Mackinac Island.

b.  The Charter, Amendment and Restatement of Franchise Agreements, and the Ordinances empower the City to determine that competition between Counter-Defendants has ceased.

c.  Competition between Counter-Defendants has ceased as a matter of fact and law.

d.  Counter-Defendants have obtained a monopoly in ferry boat service to and from the City of Mackinac Island in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and Sections 2 and 3 of MARA, MCL 445.772 and MCL 445.773.

e.  Counter-Defendants have obtained a monopoly in parking spaces necessary for the operation of ferry boat services to and from the city of Mackinac Island in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and Sections 2 and 3 of MARA, MCL 445.772 and MCL 445.773.

f.  Counter-Defendants are obligated by Section 9 of their respective Amendment and Restatement of Franchise Agreement to cooperate with the City in its regulation of rates for ferry transportation to and from Mackinac Island, including rates for parking in the lots owned by Counter-Defendants and other fees and charges imposed by Counter-Defendants in connection with transportation by ferry to Mackinac Island.

g.  Counter-Defendants' breach of their Amendment and Restatement of Franchise Agreements by failing to cooperate in the City's regulation of rates for transportation by ferry to Mackinac Island, including the rates for parking in the lots owned by Counter-Defendants necessary to access the ferries and other fees

50

and charges imposed by Counter-Defendants in connection with transportation by ferry to Mackinac Island, irreparably injures the City by interfering with its right to regulate ferry transportation to and from Mackinac Island, harming the City's residents, businesses on the Island, and employees who work on the Island, and deterring visitors.

h.  In the alternative, if (as Counter-Defendants falsely contend), Counter-Defendants continue to compete with each other despite their common ownership and control by Hoffmann Marine, Counter-Defendants' communication, coordination and agreement through Hoffmann Marine on rates and terms of service constitute a conspiracy to fix prices and divide markets, which are *per se* violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 2 of the Michigan Antitrust Reform Act, MCL 445.772.

i.  In the further alternative, if (as Counter-Defendants falsely contend), Counter-Defendants' rates for parking in their captive lots are not subject to regulation by the City of Mackinac Island, Counter-Defendants have monopolized the relevant market for parking necessary for transportation by ferry to Mackinac Island, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, and Section 3 of the Michigan Antitrust Reform Act, MCL 445.773.

2.  Award Counter-Plaintiff treble its actual damages, attorney fees, costs and such other appropriate relief as may be just and equitable.

Respectfully submitted,

By: */s/ Kimberly L. Scott*
Larry J. Saylor (P28165)
Kimberly L. Scott (P69706)
Miller, Canfield, Paddock and Stone, P.L.C.
150 W. Jefferson Ave., Suite 2500
Detroit, MI 48226
(313) 496-7986
saylor@millercanfield.com
scott@millercanfield.com

Michael E. Cavanaugh (P11744)
Fraser Trebilcock
124 W. Allegan Street
Suite 1000
Lansing, MI 48933
mcavanaugh@fraserlawfirm.com

Erin Evashevski (P80940) (*admission to be submitted*)
Evashevski Law Office
PO Box 373
838 N. State Street
St. Ignace, MI 49781
erinevashevskilaw@gmail.com

*Attorneys for City of Mackinac Island*

Dated: April 3, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2025, I electronically filed the foregoing document with the Clerk or the Court using the ECF system which will send notification of such filing to all counsel of record.

By: *Kimberly L. Scott*

43444521.9/100487.00016