UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SHEPLER'S INC., et al.,

      Plaintiffs/Counter-Defendants,

v.

CITY OF MACKINAC ISLAND,

      Defendant/Counter-Plaintiff.

_____/

Case No. 2:25-cv-36

HON. ROBERT J. JONKER

**ORDER**

This case involves private ferry service to and from Mackinac Island. There are two related, but distinct, sets of issues. The first set involves interpretation and application of the contractual franchise agreement between the City and each of the ferry company plaintiffs. The second set involves the City's claims that the ferry companies and their common owner are violating state and federal antitrust laws. The Court dismissed the City's first set of antitrust claims with leave to amend (ECF No. 58) and entered a CMO for the parties to address the contact issues (*See* ECF No. 28).

The City has re-pleaded antitrust claims (ECF No. 63) and proposed to add the common owner of the ferry companies as an additional counterclaim defendant.[1] (ECF No. 64). The ferry companies have moved to dismiss the newly pleaded antitrust claims (ECF No. 80) and have also

---

[1] The City has actually used the vehicle of a Third-Party Complaint under Rule 14, rather than a proposed addition of a counterclaim defendant under Rule 13(h). But that distinction is immaterial for the subject of this current Order.

1

opposed addition of their common owner. (ECF No. 76). Briefing is not yet complete on these issues.

Briefing is complete on two other motions. First, the City moves to compel the Hoffman Family of Companies to respond to a document subpoena under Rule 45. (ECF No. 77). The ferry companies and Hoffman say the subpoena is beyond the scope of discovery on the contract issues, which are the only issues open for discovery right now, and is not proportional to the needs of the case in any event. (ECF No. 93). Second, the ferry companies seek to amend the CMO to push the deadline for expert disclosures to a date after fact discovery is complete, or at least to a date closer to the end of fact discovery. (ECF No. 85). The City opposes any changes to the CMO deadlines on expert disclosures. (ECF No. 89).

The starting point for addressing both these motions is reiterating that the case involves two distinct sets of issues: one set involving the contractual franchise issues, and a second set involving antitrust issues. In the Court's view, the antitrust issues are factually and legally far more complex than the contract issues. The Court has made this view clear in both its written orders and its comments from the bench. And it was in part because of this view that the Court ruled that disclosure and discovery would be going forward *only* on contract issues at this time. (ECF No. 28, Transcript of Rule 16, at PageID 407). Pleadings on the contract issues are complete and closed, so disclosure and discovery is appropriate and manageable at this time.

In contrast, pleadings on the antitrust issues remain open. Indeed, it is not yet clear whether the amended counterclaims will survive Rule 12(b)(6). The Sixth Circuit recently reiterated the critical importance of assessing antitrust standing issues when determining whether a plaintiff other than a direct purchaser or seller has a *Twombly*-plausible federal antitrust claim. *Acad. of Allergy & Asthma in Primary Care v. Amerigroup Tenn., Inc.*, No. 24-5133, 2025 WL 2886701

(6th Cir. Oct. 10, 2025) (affirming dismissal of federal antitrust claims).  And if an antitrust claim does survive Rule 12(b)(6), it may or may not mean bringing in Hoffman.  The antitrust claims are not yet ripe for disclosure or discovery.  If and when they are, the Court will set CMO deadlines, including deadlines for expert disclosures on the antitrust issues.

With respect to the contract issues, the key issue recognized by all parties and the Court is the meaning and application of Section 9 of the Franchise Agreement, which addresses what happens if "no competition is found to exist in ferry boat service to and from the City." (ECF No. 1-1, PageID 19).  It is certainly true that antitrust law involves market competition, and that competition is also the subject of Section 9.  But that does not mean that interpreting and applying Section 9 is the same thing as analyzing antitrust theories.

To the contrary, as the Court has previously observed, the meaning of "competition" within Section 9 may mean simply that at least two separately branded ferry companies are offering consumers a meaningful choice in ferry transportation.  Common upstream ownership may or may not be relevant.  Outside the ferry boat context, for example, it is not unusual to have separately branded operating companies competing with each other under an umbrella of common ownership.  Yum! Brands, for example, is the common owner of KFC, Taco Bell and Pizza Hut, all of whom compete with each other and offer consumers a meaningful choice in the restaurant market.  U.S. Sec. Exch. Comm'n, Form 10-K: Yum! Brands, Inc. (2025), https://www.sec.gov/Archives/edgar/data/1041061/000104106125000013/yum-20241231.htm; *see also* Kate Taylor & Yutong Yuan, *10 Companies You've Never Heard of Control More Than 50 of the Biggest Restaurants Chains in the World*, Bus. Insider (Sept. 5, 2019, 10:08 AM), https://www.businessinsider.com/who-owns-taco-bell-arbys-burger-king-2019-3.    Similarly, Restaurant Brands International is the common owner of Tim Hortons, Popeyes, and Burger King.

U.S. S<small>EC</small>. E<small>XCH</small>. C<small>OMM</small>'<small>N</small>, F<small>ORM</small> 10-K: R<small>ESTAURANT</small> B<small>RANDS</small> I<small>NTERNATIONAL</small> I<small>NC</small>. (2025), https://d18rn0p25nwr6d.cloudfront.net/CIK-0001618756/b16f0901-feeb-4cff-9658-3baf738cef10.pdf.

These examples of branded consumer service companies competing with each other from a consumer perspective, despite common upstream ownership, illustrate the difference between the contract theories and the antitrust theories in this case. Regardless of which side bears the burden of proof on the meaning of Section 9—an issue the Court is not resolving at this point—whether and how expert testimony from either side will meaningfully illuminate the contract issue is not clear to the Court. Indeed, the Court observed at the Rule 16 that the parties might not use experts at all on the contract issues. (ECF No. 28, PageID 407). If either or both parties decide to use experts, from the Court's perspective they will not be on the market definition and other issues commonly addressed by experts on antitrust issues. These observations lead to the Court to deny the ferry companies' Motion to amend the CMO deadlines.

The Court is also denying the City's Motion to enforce its Rule 45 subpoena to Hoffman. Once again, the starting point for the Court's analysis is that the contract issues currently open for disclosure and discovery are distinct from the antitrust issues that may or may not ultimately be in the case. The vast majority of the 45 topics the subpoena addresses are germane primarily to potential antitrust issues. (ECF No. 78-1, PageID 1553-58). To the extent there is any overlap on the contract issues, the kind of information at issue can and should be requested and provided by the separate ferry companies that are already party to the case. Rule 45 "sets forth provisions designed to protect persons subject to a subpoena from undue burden or expense." *Matthias Jans & Assocs., Ltd. v. Dropic*, No. 01-MC-26, 2001 WL 1661473, at *1 (W.D. Mich. Apr. 9, 2001). Reyling on Hoffman—a nonparty—for information that the City could get from

4

either ferry company—both parties in this case—would unduly burden Hoffman and is reason enough to not enforce this subpoena. *See Raymond James & Assocs., Inc. v. 50 N. Front St. TN, LLC*, No. 18-CV-2104-JTF-TMP, 2018 WL 6528192, at *1 (W.D. Tenn. Sept. 10, 2018) ("To determine whether production poses an undue burden, the court should consider . . . *whether the information can be obtained from more convenient sources*. . . . In making this determination, numerous courts have quashed subpoenas issued to non-parties when the requesting parties could have obtained the documents from other parties."); *see also Precourt v. Fairbank Reconstruction Corp.*, 280 F.R.D. 462, 467 (D.S.D. 2011) ("If the party seeking the information can easily obtain the same information without burdening the nonparty, the court will quash the subpoena."). Subpoenas are also "subject to the same discovery limitations as those set out in Rule 26," including the rule that discovery must be "proportional to the needs of the case." *See State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*, 315 F.R.D. 220, 222 (E.D. Mich. 2016) (internal quotations omitted). The City's broad subpoena—which seeks information that it could procure from other sources—is not, at this time, proportional to their needs. At this stage of the case, then, the Court will not enforce the City's Rule 45 subpoena because it finds that enforcement unduly burden Hoffman and would not be proportional to the needs of the case.

Accordingly, the Motion of the ferry companies to amend the CMO (ECF No. 85), and of the City to enforce its Rule 45 subpoena (ECF No. 77) are **DENIED**.

**IT IS SO ORDERED.**

Dated:   October 21, 2025                     /s/ Robert J. Jonker
                                              ROBERT J. JONKER
                                              UNITED STATES DISTRICT JUDGE