**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

---

Shepler's Inc. d/b/a Shepler's Mackinac Island Ferry Service, and Mackinac Island Ferry Company d/b/a Arnold Transit Company,

        *Plaintiffs/Counter-Defendants*,

      v.

City of Mackinac Island,

        *Defendant/Counter-Plaintiff*.

---

Case No.: 2:25-cv-00036 (RJJ) (MV)

**PLAINTIFFS' ANSWER AND AFFIRMATIVE DEFENSES**
**TO DEFENDANT'S FIRST AMENDED COUNTERCLAIMS**

By Opinion and Order dated February 20, 2026, the Court granted the Motion to Dismiss filed by Plaintiffs Shepler's Inc. ("Shepler's") and Mackinac Island Ferry Company ("Arnold Transit" and together with Shepler's, "Plaintiffs") in part, dismissing Counts II through VI, and Parts 6 and 7 of Count VII, of the First Amended Counterclaims (the "Counterclaims") filed by Defendant the City of Mackinac Island (the "City"). (*See* ECF No. 125) (the "Dismissal Order"). The Dismissal Order also denied the City's motion to join the Hoffmann Family of Companies as a party to this action. Plaintiffs, by and through their attorneys, respond to the Counterclaims, as limited by the Dismissal Order, as follows:

1

## **"INTRODUCTION"**[1]

1.    Ferries are the lifeblood of Mackinac Island. Ferries transport the vast majority of the 1.5 million people who travel to the Island each year and a significant number of goods needed on the Island. Recognizing that ferries are an essential public utility for the Island, the Michigan Legislature approved in 1899 the City's Charter, which empowers the City of Mackinac Island to franchise and regulate ferries serving the Island.

> **ANSWER:** Plaintiffs are without sufficient knowledge or information to form a belief as to the allegations in this Paragraph, and therefore deny those allegations.

2.    In the past, when multiple ferry companies served the Island, the franchise agreements allowed the competing ferry companies to file their rates without active review by the City. The current Franchise Agreements, however, wisely preserve the City's right to actively regulate the ferry companies' rates "[i]n the event that no competition is found to exist in ferry boat service to and from the City[.]"

> **ANSWER:** Plaintiffs admit that past franchise agreements allowed the competing ferry companies to file their rates without active review by the City. Plaintiffs otherwise deny the allegations in this Paragraph.

3.    In 2022 and 2024, Hoffmann Family of Companies ("HFC" or "Hoffmann"), a private equity company, purchased both remaining ferry companies serving the Island, Shepler's and MIFC/Arnold (together, the "Hoffmann Ferry Companies"). On December 11, 2024, after Hoffmann's acquisition of both ferry companies, the City found that the Hoffmann Ferry Companies were no longer competitors, triggering the City's right to regulate their charges, prices, and rates. Yet the Hoffmann Ferry Companies—public utilities—continue to falsely insist that they are immune from regulation and refuse to submit to the City's rate regulation. Their refusal to cooperate with the City violates their Franchise Agreements and calls for a declaration by the Court of the parties' respective rights and obligations under the regulatory scheme.

> **ANSWER:** Plaintiffs admit that the Hoffmann Family of Companies purchased an interest in Shepler's in 2022 and Arnold Transit in 2024. Plaintiffs otherwise deny the allegations in this Paragraph.

---

[1] The quoted, bold headings referenced herein are taken from the City's Counterclaims and used in Plaintiffs' Answer to the Counterclaims only for ease of reference. To the extent that any of the headings in the City's Counterclaims are considered allegations, Plaintiffs deny those allegations.

4.       Hoffmann's acquisition of the ferry companies also creates a monopoly in two relevant product and geographic markets, in violation of federal and state antitrust laws: (1) transportation service to and from Mackinac Island and (2) long-term parking (defined as at 3 or more hours of parking), which is necessary to access transportation to and from Mackinac Island for those who are not residents of Mackinaw City or St. Ignace. "A corporation's initial acquisition of control [of another corporation] will always be subject to scrutiny under § 1 of the Sherman Act and § 7 of the Clayton Act, 15 U.S.C. § 18." *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 777 (1984). Section 1 prohibits contracts, combinations, and conspiracies in restraint of trade, and Section 7 prohibits acquisitions of stock or assets where the effect "may be to substantially lessen competition or tend to create a monopoly." The willful acquisition and control of competitors that resulted in a monopoly is also a violation under Section 2 of the Sherman Act. *Standard Oil Co. v. U.S.*, 221 U.S. 1, 70-77 (1911). The violations are actionable under Section 4 of the Clayton Act, 15 U.S.C. § 1, and 16 of the Clayton Act, 15 U.S.C. § 26.

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

5.       Ironically, the Hoffmann Ferry Companies' resistance to public utility regulation deprives them of their best defense to a potential challenge by travelers, residents, and businesses under the antitrust laws.

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

6.       The City seeks a judgment enforcing its right, granted by its Charter and Ordinances, and the Franchise Agreements, to actively regulate the ferry companies as the public utilities they are. Regulation is necessary to prevent the combined ferry companies from continuing to exploit their monopoly and inflicting further harm to the City, its visitors, its residents, and businesses on the Island. The City also seeks to recover treble its damages suffered in the interim, together with its attorney fees and costs.

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to

respond to this Paragraph. To the extent a response is required, Plaintiffs deny the

allegations in this paragraph.

## "JURISDICTION AND VENUE"

7. This Court has jurisdiction of the present Counterclaim and Third-Party Claim pursuant to 28 U.S.C. § 1331, 1337, and 1367.

**ANSWER:** Plaintiffs admit that this Court has jurisdiction with respect to the

Counterclaims. Plaintiffs otherwise deny the allegations in this Paragraph.

8. Venue is proper in the Western District of Michigan pursuant to 28 U.S.C. § 1391, because counter-defendants are residents of this District as defined in 28 U.S.C. § 1391(b)(1) and (c)(2) and the causes of action arose in this district.

**ANSWER:** Plaintiffs admit that venue is proper. Plaintiffs otherwise deny the

allegations in this Paragraph.

9. This Court is authorized to grant declaratory relief as quested by Counter-Plaintiff herein pursuant to 28 U.S.C. § 2201.

**ANSWER:** Plaintiffs deny the allegations in this Paragraph.

## "PARTIES"

10. Counter-Plaintiff and Third-Party Plaintiff City of Mackinac Island (the "City") is a Michigan municipal corporation located in Mackinac County, Michigan.

**ANSWER:** Plaintiffs are without sufficient knowledge or information to form a

belief as to the allegations in this Paragraph, and therefore deny those allegations.

11. Counter-Defendant Shepler's is a Michigan Domestic Profit Corporation with its principal place of business located in Mackinaw City, Cheboygan County, Michigan. Shepler's has substantial assets and operations located on Mackinac Island and in Mackinaw City and St. Ignace, Michigan. In 2022, Hoffmann purchased all or a controlling majority of Shepler's stock and controls Shepler's.

**ANSWER:** Plaintiffs admit that Shepler's is a domestic corporation with its

principal place of business in Mackinaw City, Michigan, and that in 2022, the

4

Hoffmann Family of Companies purchased a majority of Shepler's stock. Plaintiffs

otherwise deny the allegations in this Paragraph.

12.    Counter-Defendant MIFC/Arnold (sometimes hereinafter "MIFC" or "Arnold;" f/d/a Star Line) is a Michigan Domestic Profit Corporation with its principal place of business in St. Ignace, Mackinac County, Michigan. MIFC/Arnold has substantial assets and operations located on Mackinac Island and in Mackinaw City and St. Ignace. In 2024, Hoffmann purchased all or a controlling majority of MIFC/Arnold's stock and controls MIFC/Arnold.

**ANSWER:** Plaintiffs admit that Arnold Transit is a domestic corporation with its

principal place of business in St. Ignace, Michigan, and that in 2024, the Hoffmann

Family of Companies purchased a majority of Arnold's stock. Plaintiffs otherwise

deny the allegations in this Paragraph.

13.    Third-Party Defendant Hoffmann is a private equity firm with its headquarters at 550 Port-O-Call Way, Naples, Florida 34102, and a place of business in Winnetka, Illinois. HFC owns and controls Shepler's, MIFC/Arnold, local newspapers on Mackinac Island and in St. Ignace, and property on Mackinac Island, in Mackinaw City and in St. Ignace, Michigan. Hoffmann has described itself as among the largest real estate owners in Mackinaw City and St. Ignace. Hoffmann prominently displays its logos on the ferry boats, on the Hoffmann Ferry Companies' web sites and other publications, and in the Hoffmann-owned local newspapers.

**ANSWER:** Because the Dismissal Order denied the City's motion to join the

Hoffmann Family of Companies as a party to this litigation, a response to this

Paragraph is not required. To the extent a response is required, Plaintiffs admit that

the Hoffmann Family of Companies is a private equity firm with its principal place

of business in Naples, Florida, that the Hoffmann Family of Companies owns

Shepler's and Arnold Transit, newspapers on Mackinac Island and in St. Ignace,

and property on Mackinac Island, in Mackinaw City and in St. Ignace, Michigan.

Plaintiffs also admit that there are logos for the Hoffmann Family of Companies

on Plaintiffs' vessels and websites. Plaintiffs otherwise deny the allegations in this

Paragraph.

**"FACTS ALLEGED"**

**"The City, Through the Powers Delegated to it by the Michigan Legislature, Regulates Ferries to Mackinac Island as a Public Utility."**

14.    Mackinac Island is located in Lake Huron at the eastern end of the Straits of Mackinac, between Michigan's upper and lower peninsulas, and is entirely surrounded by water. There is no bridge to Mackinac Island.

    **ANSWER:** Plaintiffs admit the allegations in this Paragraph.

15.    The territorial boundaries of the City include all of Mackinac Island and Round Island. The jurisdiction of the City embraces and covers the navigable waters adjacent to the City for the distance of one mile from the shorelines of both islands. (See City Charter, Chapter 1, Section One.) Approximately 80% of Mackinac Island is preserved as the Mackinac Island State Park.

    **ANSWER:** Plaintiffs are without sufficient knowledge or information to form a

    belief as to the allegations in this Paragraph, and therefore deny those allegations.

16.    Since 1898, Mackinac Island has banned non-emergency motor vehicles, which contributes to its uniqueness.

    **ANSWER:** Plaintiffs are without sufficient knowledge or information to form a

    belief as to the allegations in this Paragraph, and therefore deny those allegations.

17.    For over a century, Mackinac Island has been a popular tourist destination and summer resort community. Given its great appeal to tourists, the City, which has a permanent population of approximately 583 year-round residents, each summer experiences an influx of hundreds of thousands of visitors, hundreds of seasonal residents, and thousands of seasonal workers who reside in or commute to the City during the tourist season to work at the many hotels, restaurants, bars and retail shops located on the Island.

    **ANSWER:** Plaintiffs admit that Mackinac Island is a popular destination,

    experiencing an influx of visitors during the tourist season. Plaintiffs are otherwise

    without sufficient knowledge or information to form a belief as to the allegations

    in this Paragraph, and therefore deny those allegations.

18.    Each year, Mackinac Island attracts upwards of 1.5 million travelers from all over the United States and the world. Of those 1.5 million travelers, which include visitors, seasonal

residents and seasonal employees that arrive in the summer months, 90% to 95% travel to and from the Island by ferry.

> **ANSWER:** Plaintiffs are without sufficient knowledge or information to form a
>
> belief as to the allegations in this Paragraph, and therefore deny those allegations.

19.     The City's permanent residents and visitors need reliable ferry service, and the ferry service does not end with the tourist season. Rather, the City and its residents need reliable ferry service to and from Mackinac Island all year long (or for as long as ice conditions on the Straits permit) for a host of reasons — *e.g.*, food and other supplies, emergency medical treatment, dental treatment, procuring goods and services not available on the Island, employment, and visiting friends and family, among other reasons. Without ferry service, the City's permanent residents simply do not have a practical way to come and go from their Island.

> **ANSWER:** Plaintiffs are without sufficient knowledge or information to form a
>
> belief as to the allegations in this Paragraph, and therefore deny those allegations.

20.     These factors alone make the City far different than most other municipalities. What makes the City even more unique is the fact that it was established more than one hundred years ago with the Legislature's enactment of 1899 LA 437 (the "Charter"). As a result, the City's authority to enact ordinances and to carry on its affairs is derived from a special legislative act rather than some other more general statutory provision, such as the Home Rule Cities Act, M.C.L. § 117.1a *et seq*.

> **ANSWER:** This Paragraph states legal conclusions to which no response is
>
> required. To the extent a response is required, Plaintiffs are without sufficient
>
> knowledge or information to form a belief as to the allegations in this Paragraph,
>
> and therefore deny those allegations.

21.     In other words, the Michigan Legislature realized long ago how special the City of Mackinac Island is, and wisely chose to provide the City with specific grants of power to enable the City to adequately handle its particular transportation needs and to otherwise function in its unique environment.

> **ANSWER:** This Paragraph states legal conclusions to which no response is
>
> required. To the extent a response is required, Plaintiffs are without sufficient
>
> knowledge or information to form a belief as to the allegations in this Paragraph,
>
> and therefore deny those allegations.

22.     The Charter provides the City with broad authority to establish, authorize, license, manage and regulate the ferries transporting persons and property to and from the City, including the regulation of schedule, rates, charges, and prices. Specifically, the Charter, at Chapter IX, §1, Part 13, vests the City with the power to enact ordinances that require any ferry boat company providing service to first obtain a franchise from the City:

> Said City of Mackinac Island shall, in addition to such other powers as are herein conferred . . . the council may pass such ordinances . . . to establish or authorize, license and <u>regulate</u> ferries to and from the City, or any place therein . . . and to <u>regulate</u> from time to time the <u>charges and</u> <u>prices for the transportation</u> of persons and property thereon.

(Emphasis added).

> **ANSWER:** This Paragraph states legal conclusions to which no response is required. To the extent a response is required, Plaintiffs are without sufficient knowledge or information to form a belief as to the allegations in this Paragraph, and therefore deny those allegations, except admit the existence of the Charter.

23.     Similarly, the Charter, at Chapter XVI, §1, states:

> The council of said City may regulate and license ferries from such City or any place of landing therein to the opposite shore, or from one part of the City to another; and may require the payment of such reasonable sum for such license as to the council shall seem proper and may impose such reasonable terms and restrictions in relation to keeping in <u>management</u> of such ferries and the time, <u>manner and rates of</u> <u>carriage and transportation</u> of persons and property as may be proper, and provide for the revocation of any such license and for the punishment, by proper fines and penalties, of the violation of any ordinance prohibiting unlicensed ferries, and regulating those established and licensed.

(Emphasis added).

> **ANSWER:** Plaintiffs admit to the existence of the Charter. Plaintiffs otherwise deny the allegations in this Paragraph.

24.     Because ferry service is an essential service and is the primary means of transportation to Mackinac Island—and the only means for most travelers—the City has designated ferries serving Mackinac Island as a public utility.

8

**ANSWER:** This Paragraph states legal conclusions to which no response is required. To the extent a response is required, Plaintiffs are without sufficient knowledge or information to form a belief as to the allegations in this Paragraph, and therefore deny those allegations.

25.    The courts have upheld the City's exclusive authority to grant franchises to ferry boat operators and to charge fees for those franchises. See *Arnold Transit Co v. City of Mackinac Island*, 99 Mich App. 266; 297 N.W.2d 904 (1980), affirmed, 415 Mich. 362; 329 N.W.2d 712 (1982), appeal dismissed for want of a substantial federal question, 464 U.S. 804 (1983). (Footnote: The Supreme Court's dismissal for want of a substantial federal question is precedential. *See Hicks v. Miranda*, 422 U.S. 332, 344 (1975).).

**ANSWER:** This Paragraph states legal conclusions to which no response is required. To the extent a response is required, Plaintiffs are without sufficient knowledge or information to form a belief as to the allegations in this Paragraph, and therefore deny those allegations.

26.    Relying on its Charter, the City on June 29, 1977, adopted Ordinance Number 12, amended July 10, 2012 (the "2012 Ordinance"), which regulates ferry boat operations to and from the City. In part, the 2012 Ordinance states: "[N]o person shall operate a ferry boat service, nor shall any person provide a ferry boat service in the City without such person having first obtained a franchise from the City."

**ANSWER:** This Paragraph states legal conclusions to which no response is required. To the extent a response is required, Plaintiffs are without sufficient knowledge or information to form a belief as to the allegations in this Paragraph, and therefore deny those allegations, except admit the existence of the 2012 Ordinance.

**"The City Granted Franchises for Ferry Service to Shepler's, Star Line and Arnold in 2012."**

27.    In 2012, three ferry companies provided service to Mackinac Island: Arnold Transit Company, Shepler's, and Star Line (later renamed as MIFC/Arnold). The City granted each ferry company a franchise agreement in 2012 with the same terms and conditions. (Exhibits 1-3.)

**ANSWER:** Plaintiffs admit the allegations in this Paragraph.

28.     In accord with the 2012 Ordinance, MIFC (now d/b/a/ Arnold) entered into an Amendment and Restatement of Franchise Agreement with the City dated October 18, 2023, which expires June 30, 2027. A copy of the MIFC/Arnold Amendment and Restatement of Franchise Agreement (the "Arnold Franchise Agreement") is attached as Exhibit 4.

**ANSWER:** Plaintiffs admit the allegations in this Paragraph.

29.     In accord with the 2012 Ordinance, Shepler's entered into an Amendment and Restatement of Franchise Agreement with the City dated November 13, 2023, which expires June 30, 2027. A copy of Shepler's Amendment and Restatement of Franchise Agreement (the "Shepler's Franchise Agreement") is attached as Exhibit 5.

**ANSWER:** Plaintiffs admit the allegations in this Paragraph.

30.     The Arnold Franchise Agreement and the Shepler's Franchise Agreement contain the same operative language. Collectively, they are referred to as the "Franchise Agreements."

**ANSWER:** Plaintiffs admit the allegations in this Paragraph.

31.     The Franchise Agreements incorporate a document known as the 2012 Memorandum of Understanding ("MOU").

**ANSWER:** Plaintiffs admit the allegations in this Paragraph.

32.     Paragraph 2 of the MOU says that "[a]ll lines determine their own schedules and rates" and all lines "will file their schedules and rates with the City." (*See* Exhibits 4-5).

**ANSWER:** Plaintiffs admit the allegations in this Paragraph.

33.     Section 9 of both Franchise Agreements, however, provides that "[i]n the event that no competition is found to exist in ferry boat service to and from the City, the City has the right to assert its jurisdiction over schedules and fares to the extent permitted by present law." (Id.)

**ANSWER:** Plaintiffs admit the allegations in this Paragraph.

34.     Section 11 of both Franchise Agreements provides that it "is subject to all applicable provisions of the Charter of the City of Mackinac Island and ordinances thereof, particularly Ordinance No. 465, being the Ferry Boat Code, as well as the laws and Constitution of the State of Michigan, and shall, whenever possible, be construed as consistent with them." (Id., emphasis added.) (Footnote: To avoid a jury's determination on Plaintiffs/Counter-Defendants' Complaint, the Hoffmann Ferry Companies invoked admiralty law jurisdiction. See Complaint, ECF No. 1, PageID.1, ¶ 1. The Plaintiffs/Counter-Defendants' invocation of federal law is not permitted under Section 11 of the Franchise Agreements, which provides the Franchise Agreement is subject and shall be construed as consistent with the laws of the State of Michigan and the

Constitution of the State of Michigan, not federal admiralty, or maritime law. For this reason, and based on the case law, all claims brought by the parties are to be tried by a jury.).

**ANSWER:** Plaintiffs admit to the existence of the Franchise Agreements and the language set forth therein. Plaintiffs otherwise deny the allegations in this Paragraph and its footnote.

**"Hoffmann's Purchase of the Remaining Ferry Companies in 2022 and 2024 Eliminated Competition Between Them."**

35.    In 2016, Star Line purchased all or a majority of the stock of Arnold Transit Company and rebranded the combined business as "Mackinac Island Ferry Company" ("MIFC"). (*See* Exhibit 6.) After Star Line's acquisition, there were only two ferry companies providing ferry service to Mackinac Island.

**ANSWER:** Plaintiffs admit the allegations in this Paragraph.

36.    In 2022, Hoffmann purchased all or a controlling majority of Shepler's stock.

**ANSWER:** Plaintiffs admit the allegations in this Paragraph.

37.    HFC describes itself as "a multi-vertical, family-owned private equity firm consisting of over 100 global brands, and employs 11,000 employees with businesses located in 30 countries and 400 locations around the world. Hoffmann Family of Companies' verticals include Aviation, Agriculture, Financial Services, Hospitality, Business & Professional Services, Industrial, Manufacturing, Marine, Media & Marketing, Real Estate and Transportation." (See Exhibit 7.)

**ANSWER:** Plaintiffs admit the allegations in this Paragraph.

38.    Since the Shepler's purchase, Hoffmann has controlled the operations of Shepler's through Hoffmann Marine, which Hoffmann has described as "merely a trade name used by the Hoffmann Family of Companies to encompass its separately-owned and organized maritime businesses." ECF No. 19, PageID.197, fn.2. Despite their claim that it is simply a "trade name," Hoffmann Marine has its own President, who Hoffmann represents publicly is the ultimate decision-maker for Shepler's.

**ANSWER:** Plaintiffs deny the allegations in this Paragraph.

39.    In or about June 2024, Hoffmann purchased all or a controlling majority of the stock of MIFC/Arnold (f/k/a "Star Line"), bringing the two remaining ferry companies serving Mackinac Island under Hoffmann's common ownership.

11

**ANSWER:** Plaintiffs admit that the Hoffmann Family of Companies purchased a majority of stock in Arnold Transit in 2024 and that both Plaintiffs are owned by the Hoffmann Family of Companies. Plaintiffs otherwise deny the allegations in this Paragraph.

40.    Hoffmann represents publicly that Hoffmann Marine's President, Jenny Gezella, is the ultimate decision-maker for MIFC/Arnold and Shepler's.

**ANSWER:** Plaintiffs deny the allegations in this Paragraph.

41.    In or about September 2024, Hoffmann rebranded MIFC as "Arnold Transit Company."

**ANSWER:** Plaintiffs admit the allegations in this Paragraph.

42.    In 2025, Hoffmann branded the Shepler's and MIFC/Arnold ferry boats, vehicles, and staff clothing prominently with the "Hoffmann Family of Companies" and "Hoffmann Marine" logos. (See Exhibit 8.)

**ANSWER:** Plaintiffs admit that both Shepler's and Arnold Transit's vessels include logos for Hoffmann Marine and/or the Hoffmann Family of Companies. Plaintiffs otherwise deny the allegations in this Paragraph.

43.    Hoffmann also added the logos for Hoffmann Marine and Hoffmann Family of Companies to the Arnold and Shepler's websites. (See Exhibit 9).

**ANSWER:**Plaintiffs admit that both Shepler's and Arnold Transit's websites include logos for Hoffmann Marine and/or the Hoffmann Family of Companies. Plaintiffs otherwise deny the allegations in this Paragraph.

44.    The Hoffmann's rebranding of Shepler's and MIFC/Arnold further communicates to the public that Hoffmann controls the operations of Shepler's and MIFC/Arnold.

**ANSWER:** Plaintiffs deny the allegations in this Paragraph.

**"Combined under the Common Ownership and Control of Hoffmann, Shepler's and MIFC/Arnold No Longer Compete with Each Other."**

45.      While Hoffmann has maintained the Hoffmann Ferry Companies as separate corporations, Hoffmann owns all or a majority of the stock of both companies, and exercises complete control over both companies, including their boats, docks, parking lots, names, brands, and pricing. The Hoffmann Ferry Companies no longer operate as separate companies with competing interests; they are owned and managed as one single ferry business.

> **ANSWER:** Plaintiffs admit that the Hoffmann Family of Companies has maintained Shepler's and Arnold Transit as separate corporations and that the Hoffmann Family of Companies owns a majority of the stock of both Plaintiffs. Plaintiffs otherwise deny the allegations in this Paragraph.

46.      Hoffmann's control over the Hoffmann Ferry Companies is confirmed by the facts set forth below, among others.

> **ANSWER:** Plaintiffs deny the allegations in this Paragraph.

47.      Both of the Hoffmann Ferry Companies report to Jenny Gezella, Hoffmann Marine's President, who is the ultimate decision-maker for the Hoffmann Ferry Companies.

> **ANSWER:** Plaintiffs deny the allegations in this Paragraph.

48.      Ms. Gezella's profile on HFC's website reports that as president of Hoffmann Marine, Ms. Gezella "oversees 46 boats across the United States"; "Hoffmann Marine operates docks and marinas across the country"; "[a]s President, [Ms. Gezella] oversees all day-to-day operations of the business, working closely with operators in each company"; "[s]he played a pivotal role in expanding the company's presence on Mackinac Island, Michigan, where Hoffmann Marine operates ferry service, docks . . . and is among the largest real estate owners in the area." A copy of Ms. Gezella's profile is attached as Exhibit 10.

> **ANSWER:** Plaintiffs deny the allegations in this Paragraph, except admit that the City selectively and misleadingly quotes from the website.

49.      An HFC press release dated June 29, 2024, stated: "'To ensure a seamless transition, Jenny [Gezella] will be on the [Mackinac] island this season . . . to drive new business,' stated Greg Hoffmann, Co-CEO of HFC. 'In addition to overseeing a local fleet of 24 boats, Jenny remains committed to maintaining high standards across all operations.'" (Exhibit 7.)

**ANSWER:** Plaintiffs deny the allegations in this Paragraph, except admit that the

City selectively and misleadingly quotes from the press release.

50.     In an article in the Mackinac Island Town Crier (one of the local newspapers purchased by Hoffmann), dated July 20-26, 2024, Ms. Gezella was quoted as saying: "Star line tickets will be accepted at Shepler's. As a family now of companies, a ticket is a ticket . . .. If you cannot get on at Star Line, bring it over to Shepler's, and we will get you on the boat." A copy of the article is attached as Exhibit 11.

**ANSWER:** Plaintiffs deny the allegations in this Paragraph, except admits that the

City selectively and misleadingly quotes from the article.

51.     Shepler's CEO Chris Shepler acts or has acted as the chief operating officer of both Hoffmann Ferry Companies. In some instances, Chris Shepler has acted as an executive of both ferry companies as the same time.

**ANSWER:** Plaintiffs deny the allegations in this Paragraph.

52.     Ms. Gezella and Chris Shepler have appeared together and spoken on behalf of both MIFC/Arnold and Shepler's in dealing with City officials on rates and operational matters, including at City Council meetings.

**ANSWER:** Plaintiffs admit that Ms. Gezella and Chris Shepler have both

appeared before the City Council and have spoken on behalf of Plaintiffs. Plaintiffs

otherwise deny the allegations in this Paragraph.

53.     In late 2024, Shepler's and MIFC/Arnold asked the City to approve identical $2 increases in ticket prices for 2025 for both ferry companies.

**ANSWER:** Plaintiffs deny the allegations in this Paragraph.

54.     In Summer 2024, Hoffmann pulled most of MIFC/Arnold's boats out of service and used Shepler's boats to transport passengers for both companies.

**ANSWER:** Plaintiffs admit that in the Summer of 2024, most of Arnold Transit's

boats were pulled out of service for repairs. Plaintiffs otherwise deny the

allegations in this Paragraph.

14

55.     In a conversation with at least one resident of Mackinac Island, Mr. Shepler stated that the Hoffmann Ferry Companies are "all one company."

**ANSWER:** Plaintiffs deny the allegations in this Paragraph.

56.     In explaining why Shepler's raised its parking prices and reduced the preferred partnership incentives that had been offered for years, Mr. Shepler indicated that the money generated *from Shepler's* changes in business practices was needed to fund *MIFC/Arnold's business expenses, not Shepler's*.

**ANSWER:** Plaintiffs deny the allegations in this Paragraph.

57.     When members of the public were understandably concerned about the lack of competition between and monopolization of ferry services, and all the parking needed to use them, falling into the hands of a single entity, Hoffmann's and the Hoffmann Ferry Companies' leadership repeatedly assured the public they had nothing to fear because the City regulated their prices.

a.  Mr. Shepler, acting as an executive for both ferry companies told the public that the City Council "regulate[s] us now that we're [a] single franchise[.]" (Exhibit 12, Transcript of Interview with the Big Show Starring Michael Patrick Shiels; https://www.ivoox.com/en/chris-shepler-shepler8217s-mackinac-island-ferry-service-audios-mp3_rf_133160664_1.html.)

b.  Mr. Shepler, who at the time was an executive for both ferry companies, explained to the public that the Hoffmann Ferry Companies are "a single franchise" that operate as the "sole carrier" to Mackinac Island. (Id.)

c.  And in response to concerns about price gouging, Mr. Shepler, representing both ferry companies, told the public that the "City Council has the [] right to regulate <u>fares and schedules so we fall under whatever they tell us to do . . . so there's no bumping of rates, there's no gouging there's none of that . . . it's regulated by the City of Mackinac Island</u>. . . ." (Id.; emphasis added)

d.  Mr. Shepler, as president of Shepler's and MIFC/Arnold, pointed to the Franchise Agreements in responding to public concerns that a monopoly exists in the ferry services to Mackinac Island, was reported as "point[ing] to the services agreement with Mackinac Island that requires the ferry services to have their rates and schedules approved by the city council each year[.]" (See Exhibit 13, 9 and 10 News Article, emphasis added.)

e.  Jenny Gezella, President of Hoffmann Marine who directly manages the operations of both Hoffmann Ferry Companies, similarly assured the public by pointing to the City's Charter and saying their "prices are approved by the City." (Exhibit 14, Hoffmann Marine Buys Star Line - The St. Ignace News).

**ANSWER:** Plaintiffs deny the allegations in this Paragraph.

15

**"The City Properly Enforces Section 9 of the Franchise Agreements."**

58.     The Hoffmann Ferry Companies, being under the common ownership and complete control of Hoffmann, are not competitors as a matter of fact and law. The City is therefore empowered under the Franchise Agreements, the City's Charter and the 2025 Ordinance, to regulate the Hoffmann Ferry Companies' charges, prices and rates for ferry boat service to Mackinac Island, including but not limited to their charges for parking in the company-owned lots in or near Mackinaw City and St. Ignace, and the Hoffmann Ferry Companies are obligated to cooperate with the City in rate regulation.

> **ANSWER:** This Paragraph states legal conclusions to which no response is required. To the extent a response is required, Plaintiffs are without sufficient knowledge or information to form a belief as to the allegations in this Paragraph, and therefore deny those allegations.

59.     On December 11, 2024, the City adopted a resolution determining that the Hoffmann Ferry Companies, being under Hoffmann's common ownership and control, are no longer competitors. A copy of the resolution is attached as Exhibit 15.

> **ANSWER:** This Paragraph states legal conclusions to which no response is required. To the extent a response is required, Plaintiffs are without sufficient knowledge or information to form a belief as to the allegations in this Paragraph, and therefore deny those allegations, except admit the existence of the so-called "resolution" dated December 11, 2024.

60.     The City Council declined to approve the fare increases requested by Shepler's and MIFC/Arnold in late 2024, pending adoption of an amended Ordinance spelling out the procedure for rate regulation and submission by the ferry companies of data necessary for the City and its consultants to determine whether Counter-Defendants' proposed rates and charges are fair and reasonable. (Id.)

> **ANSWER:** Plaintiffs admit that the City Council purported to decline Plaintiffs' fare increases in late 2024. Plaintiffs otherwise deny the allegations in this Paragraph.

61.     In May 2025, the City adopted Ferry Boats Ordinance No. 629 (the "2025 Ordinance"). The 2025 Ordinance amends and replaces the 2012 Ordinance, spelling out the

16

procedure for the City's public utility regulation over the ferries serving Mackinac Island. A copy of the 2025 Ordinance is attached as Exhibit 16. (Footnote: Additionally, the provisions of the 2012 Ordinance were incorporated into the Ordinance No. 629.).

> **ANSWER:** Plaintiffs admit that the City Council adopted Ferry Boats Ordinance
>
> No. 629 in May 2025. Plaintiffs otherwise deny the allegations in this Paragraph.

62.    Despite their common ownership and control by Hoffmann, the Hoffmann Ferry Companies falsely insist by their present Complaint and otherwise that competition exists between them and refuse to submit the data required by the 2025 Ordinance or otherwise cooperate with the City in rate regulation. Both Hoffmann Ferry Companies have since increased their fees and charges in connection with ferry transportation to and from Mackinac Island and parking without City review or approval.

> **ANSWER:** Plaintiffs admit that they have increased fares, fees, and charges
>
> without the City's approval. Plaintiffs otherwise deny the allegations in this
>
> Paragraph.

63.    The refusal by the Hoffmann Ferry Companies to comply with their Franchise Agreements by cooperating in rate regulation prevents the City from fulfilling the regulatory responsibilities authorized by its Charter, the Ordinance and the Franchise Agreements, causing irreparable injury to the City, its residents, businesses located in the City, their employees, and visitors, reduces the value of properties and businesses in the City, and suppresses the City's tax revenues.

> **ANSWER:** This Paragraph states legal conclusions to which no response is
>
> required. To the extent a response is required, Plaintiffs deny those allegations.

### "The Elimination of Competition in Ferry Services."

64.    For interpreting and applying the Franchise Agreements, only ferry services provided by the Hoffmann Ferry Companies—the only providers of "ferry boat service" to and from Mackinac Island—is considered.

> **ANSWER:** This Paragraph states legal conclusions to which no response is
>
> required. To the extent a response is required, Plaintiffs deny those allegations.

65.    Section 9 of both Franchise Agreements expressly provides that "[i]n the event that no competition is found to exist in ferry boat service to and from the City, the City has the right to assert its jurisdiction over schedules and fares to the extent permitted by present law." (Exhibits 4-5, emphasis added).

17

**ANSWER:** Plaintiffs admit the allegations in this Paragraph.

66.    "[F]erry boat service," by its plain language, does not include transportation by private airplane, private boat, or any other means of transportation to the Island other than ferry boat.

**ANSWER:** This Paragraph states legal conclusions to which no response is required. To the extent a response is required, Plaintiffs deny those allegations.

67.    While the Franchise Agreements do not bind the City to apply antitrust law in determining whether competition exists between the Hoffmann Ferry Companies, antitrust case law does provide a helpful touchstone. As this Court has recognized (ECF No. 58, PageID.1091), under the antitrust laws, commonly owned companies like the Hoffmann Ferry Companies are not competitors as a matter of law:

> [T]he coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise for purposes of §1 of the Sherman Act. A parent and its wholly owned subsidiary have a complete unity of interest. Their objectives are common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousnesses, but one. They are not unlike a multiple team of horses drawing a vehicle under the control of a single driver. With or without a formal "agreement," the subsidiary acts for the benefit of the parent, its sole shareholder.

*Copperweld*, 467 U.S. at 771.

**ANSWER:** This Paragraph states legal conclusions to which no response is required. To the extent a response is required, Plaintiffs deny those allegations.

68.    Hoffmann's acquisition of Shepler's and MIFC/Arnold eliminated competition in ferry services, giving the Hoffmann Ferry Companies 100% market share in ferry services, 90% to 95% market share in transportation services, and 80% to 85% market share in long-term parking services (defined as at 3 or more hours of parking), which is necessary to access transportation to and from Mackinac Island for those who are not residents of Mackinaw City or St. Ignace.

**ANSWER:** Plaintiffs deny the allegations in this Paragraph.

### "The State Action Doctrine"

69.    Ironically, the Hoffmann Ferry Companies' resistance to public utility regulation deprives them of their best defense to a potential challenge by travelers, residents, and businesses under the antitrust laws.

**ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

70. The "state action" doctrine exempts certain conduct of government units and regulated entities from the antitrust laws. See *Parker v. Brown*, 317 U.S. 341 (1943). Private entities like the Hoffmann Ferry Companies are covered by the "state action" doctrine if their conduct is "actively supervised" pursuant to a "clearly articulated and affirmatively expressed . . . state policy" to displace competition with regulation. *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc*, 445 U.S. 97, 105 (1980).

**ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. This Paragraph also contains legal conclusions, to which no response is required. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

71. Importantly, the regulators' passive acceptance of a tariff proposed by the regulated entity is not enough to trigger the state action exemption. *Cantor v. Detroit Edison Co*, 428 U.S. 579, 597-602 (1976).

**ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. This Paragraph also contains legal conclusions, to which no response is required. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

72. The Local Government Antitrust Act, 15 U.S.C. §§ 34-36 ("LGAA"), provides a limited immunity from damages under the federal antitrust laws that extends to private entities actively regulated by a municipality. But no immunity applies if the City merely rubber-stamps the decisions of the private defendants. *City Communications, Inc. v. City of Detroit*, 660 F. Supp. 932, 935 (E.D. Mich. 1987).

**ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. This Paragraph also contains legal conclusions, to which no response is required. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

73.    The Michigan Antitrust Reform Act codifies an analogous exemption. *See* MCL 445.774(4).

**ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. This Paragraph also contains legal conclusions, to which no response is required. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

74.    None of these exemptions are available to Hoffmann or the Hoffmann Ferry Companies since they have refused to comply with Section 9 of the Franchise Agreements.

**ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. This Paragraph also contains legal conclusions, to which no response is required. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

**"The City's Antitrust Claims Involve Two Relevant Service Markets. The First Relevant Service Market is Transportation Services to and from Mackinac Island."**

75.    For 90% to 95% of the residents and visitors, ferry boats are the normal means of transportation to and from Mackinac Island and delivering property, goods, and inventory to the City.

**ANSWER:** Plaintiffs are without sufficient knowledge or information to form a belief as to the allegations in this Paragraph, and therefore deny those allegations.

20

76.      While there is a landing strip on Mackinac Island that can accommodate small aircraft, and a small number of private watercraft can access the Island, ferries are the only reasonable mode of transportation to and from the City for the vast majority of the 1.5 million people who travel to the Island each year.

> **ANSWER:** Plaintiffs are without sufficient knowledge or information to form a belief as to the allegations in this Paragraph, and therefore deny those allegations.

77.      Transportation services from St. Ignace and Mackinaw City to Mackinac Island is a relevant geographic market. Of the 1.5 million people who annually travel to Mackinac Island, 90%-95% do so by ferry from those cities. These customers of travel services to and from Mackinac Island cannot reasonably substitute high-cost travel by private boat or private, chartered, or taxi aircraft. And currently there is no ferry service to and from Mackinac Island from any other location in Michigan or elsewhere.

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. This Paragraph also contains legal conclusions, to which no response is required. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

78.      A relevant product market consists of goods or services that are reasonably interchangeable by customers. See *United States v. E.I. duPont de Nemours & Co.*, 353 U.S. 586, 399-400 (1957). The relevant geographic market consists of the area to which customers can reasonably turn for sources of supply. *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961). A seller has market power when it has "the ability to raise prices above those that would be charged in a competitive market." *NCAA v. Board of Regents*, 468 U.S. 85, 109 n.38 (1984). In general, market or monopoly power exists when a seller controls a large share of a relevant market. *Spirit Airlines, Inc. v. Northwest Airlines,* 431 F.3d 917, 935 (6th Cir. 2005).

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. This Paragraph also contains legal conclusions, to which no response is required. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

21

79.     The contours of the relevant market, and the existence of market power, are questions of fact. *Spirit Airlines,* 431 F.3d at 933-37.

>    **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. This Paragraph also contains legal conclusions, to which no response is required. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

80.     In *Spirit Airlines*, the Sixth Circuit observed "that reasonable interchangeability may be gauged by (1) the product uses, i.e., whether the substitute products or services can perform the same function, and/or (2) consumer response (cross-elasticity); that is, consumer sensitivity to price levels at which they elect substitutes for the defendant's product or service." 431 F.3d at 933, citing du Pont, 351 U.S. at 376.

>    **ANSWER:**Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. This Paragraph also contains legal conclusions, to which no response is required. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

81.     An antitrust plaintiff need not plead or prove that the defendant controls 100 percent of the relevant market. To the contrary:

>    The existence of [market or monopoly] power ordinarily is inferred from the seller's possession of a predominant share of the market." . . . Judge Learned Hand enunciated what has become the classic explanation of when market share becomes large enough to constitute a monopoly: "over ninety . . . percentage is enough to constitute a monopoly; it is doubtful whether sixty or sixty-four percent would be enough; and certainly thirty-three percent is not." *United States v. Aluminum Co. of America*, 148 F.2d 416, 424 (2nd Cir. 1945). In *Eastman Kodak*, the Court cited its earlier precedent that possession of "over two-thirds of the market is a monopoly.

*Spirit Airlines*, 431 F.3d at 935, quoting *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 481 (1992).

**ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. This Paragraph also contains legal conclusions, to which no response is required. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

82.     Closely in point, in *Spirit Airlines*, the Sixth Circuit held a jury could find that Northwest Airlines had monopoly power over product and geographic markets consisting of air transportation between city pairs where Northwest had market shares of 89%, 78%, and 70%, respectively. See 431 F.3d at 935-36.

**ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. This Paragraph also contains legal conclusions, to which no response is required. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

83.     Flights to and from Mackinac Island are not a reasonable alternative to the ferries. There is no scheduled air service to Mackinac Island. Travelers desiring to fly to Mackinac Island need to charter a plane, use their own plane, or contract with a taxi plane. The single 3500-foot runway on the Island can only accommodate aircraft up to a small business jet that can accommodate up to (but not more than) 9 passengers. The the landing strip serves up to 30 flights per day during the high season, which runs from mid-May to mid-October, about five months. Of those 30 flights, 68% are private charters or personal planes and 32% are air taxis.

**ANSWER:** Plaintiffs are without sufficient knowledge or information to form a belief as to the allegations in this Paragraph, and therefore deny those allegations.

84.     Even for the few fortunate enough to own a private plane, the cost of operating one—about $555 per hour one way for a modest single-engine turboprop (see Exhibit 17), plus landing fees—far exceeds the $28-$50 cost of a round-trip ferry ticket and is not a reasonable substitute.

**ANSWER:** Plaintiffs are without sufficient knowledge or information to form a belief as to the allegations in this Paragraph, and therefore deny those allegations.

85.    Aircraft charter companies charge $4,780 and upwards for one-way flights to Mackinac Island from local airports, like Pellston, Harbor Springs, and St. Ignace. (See Exhibit 18.) At this price range, charter flights are not a reasonable substitute for ferries.

> **ANSWER:** Plaintiffs are without sufficient knowledge or information to form a
>
> belief as to the allegations in this Paragraph, and therefore deny those allegations.

86.    Those who are not fortunate enough to own or charter a plane can purchase a seat on a taxi plane, but those tickets start at $58 one-way for an adult ticket and there is a one-way flight minimum of $162 (which covers up to 3 seats). (See Exhibit 19.) These flights far exceed the costs of a round-trip ferry ticket and are not a reasonable substitute.

> **ANSWER:** Plaintiffs are without sufficient knowledge or information to form a
>
> belief as to the allegations in this Paragraph, and therefore deny those allegations.

87.    Even if every one of the 30 flights per day to Mackinac Island carried six passengers, during the 150-day high season, the planes would bring in 27,000 people, or about 1.8% of the 1.5 million people who travel to the Island each year. This is insufficient to restrain Hoffmann and the Hoffmann Ferry Companies from exercising monopoly power. (Footnote: The largest plane that can land at the airport on Mackinac Island is a 9-passenger plane.).

> **ANSWER:** This Paragraph states legal conclusions to which no response is
>
> required. To the extent a response is required, Plaintiffs deny that the Hoffmann
>
> Family of Companies have "monopoly power." Plaintiffs are otherwise without
>
> sufficient knowledge or information to form a belief as to the allegations in this
>
> Paragraph, and therefore deny those allegations.

88.    In contrast, Shepler's fleet consists of seven boats, which have a total capacity of 1,418 passengers. The boats make multiple trips per day from St. Ignace or Mackinaw City and return trips from Mackinac Island. Shepler's boats and their capacities are:
- The Welcome    97 passengers
- Felicity        150 passengers
- The Hope        150 passengers
- Wyandot        265 passengers
- Capt. Shepler   265 passengers
- Miss Margy     281 passengers
- William Richard   210 passengers

24

(See Exhibit 20.) The trip to Mackinac Island takes from 16 to 26 minutes, depending on the port of origin and speed of the boat.

> **ANSWER:** Plaintiffs admit that Shepler's makes multiple trips per day from St. Ignace or Mackinaw City to and from Mackinac Island, but otherwise deny the allegations in this Paragraph.

89.    MIFC/Arnold's boats are steel hulled and can operate in some ice conditions and therefore can usually operate for most of the year and, in some years, all year. They, therefore, provide essential Winter service to Mackinac Island at a time when travel by private watercraft or aircraft is difficult or impossible.

> **ANSWER:** Plaintiffs admit that Arnold Transit's vessels can operate in some ice conditions and that those vessels provide winter service. Plaintiffs otherwise deny the allegations in this Paragraph.

90.    Arnold's fleet consists of ten boats with a total capacity of 2,240 passengers, which also offer multiple daily departures from St. Ignace, Mackinaw City and Mackinac Island. Arnold's boats and their capacities are:
- Straits of Mackinac  295 passengers
- Ottawa        470 passengers
- Huron        330 passengers
- West Shore     150 passengers
- Mackinac Express  345 passengers
- Joliet        150 passengers
- Radisson       350 passengers
- LaSalle       150 passengers

(See Exhibit 21.)

> **ANSWER:** Plaintiffs admit that Arnold Transit makes multiple trips per day from St. Ignace or Mackinaw City to and from Mackinac Island, but otherwise deny the allegations in this Paragraph.

91.    Private boats are not a reasonable substitute for travel to the Island by ferry. Of the 1.5 million people who travel to Mackinac Island, only a few have the luxury of doing so by private boat. Only 80 public transient boat slips are available on the Island, and those slips are in operation only from mid-May to mid-October. (See Exhibit 22.) Even if every one of those 80 slips turned over every 24 hours and every boat carried four people, private boats would accommodate only 48,000 people per year, or about 3.2% of the 1.5 million people who travel to the Island annually. This is insufficient to restrain Hoffmann and the Hoffmann Ferry Companies from exercising

25

monopoly power. (Footnote: There are also 15 "luxury" private docks—owned by Hoffmann, see Exhibit 23—available on the Island for $7.00 per foot per day in high season, plus $10.00 for electric power (a total of $185 per day for a modest 25-foot boat). (See Exhibit 24.) This far exceeds the cost of a ferry ticket and does not restrain Hoffmann itself from exercising monopoly power in the relevant market for transportation services to and from Mackinac Island.).

**ANSWER:** Plaintiffs are without sufficient knowledge or information to form a belief as to the allegations in this Paragraph, and therefore deny those allegations.

92.    Further, boats use a lot of fuel—about 10 to 20 gallons per hour for a typical "center console" boat. (See Exhibit 25.) Boat fuel costs around $5.40/gallon to $5.71/gallon for octane, see Exhibit 26. Fuel alone would cost far more than a ferry ticket.

**ANSWER:** Plaintiffs are without sufficient knowledge or information to form a belief as to the allegations in this Paragraph, and therefore deny those allegations.

93.    Of those private boats that travel to Mackinac Island, only a small number are docked in and around Mackinaw City or St. Ignace. Boat owners whose boats are not docked or stored in the immediate area would need to motor or trailer their boat to the Straits, increasing the costs to travel by private boat to Mackinac Island.

**ANSWER:** Plaintiffs are without sufficient knowledge or information to form a belief as to the allegations in this Paragraph, and therefore deny those allegations.

94.    For the reasons stated above, private boats are not a reasonable substitute for ferries and do not restrain Hoffmann and the Hoffmann Ferry Companies from exercising their monopoly power.

**ANSWER:** This Paragraph states legal conclusions to which no response is required. To the extent a response is required, Plaintiffs deny that the Hoffmann Family of Companies have "monopoly power." Plaintiffs are otherwise without sufficient knowledge or information to form a belief as to the allegations in this Paragraph, and therefore deny those allegations.

95.    Nor do reasonable substitutes for transportation services to and from Mackinac Island include potential entrants, such as Uber, Lyft or a possible start-up ferry service originating at some other town on Lake Michigan. To be relevant, entry must be "timely, likely, and sufficient in magnitude, character and scope to deter or counteract the effects" of the acquisition. See U.S. Department of Justice and Federal Trade Commission, 2023 Merger Guidelines, § 3.2 & n. 66,

26

quoting *FTC v. Sanford Health*, 926 F.3d 959, 963 (8th Cir. 2019). The existence of potential entrants is a "rebuttal argument" on which the party defending the merger or acquisition has the burden of proof. Id.

> **ANSWER:** This Paragraph states legal conclusions to which no response is
>
> required. To the extent a response is required, Plaintiffs deny those allegations.

96.    There is no evidence any third party exists whose potential entry is "timely, likely, and sufficient in magnitude, character and scope to deter or counteract" the monopoly power of Hoffmann and the Hoffmann Ferry Companies during the remaining 2 years of the Franchise Agreements or at any relevant period of time after their expiration in 2027.

> **ANSWER:** This Paragraph states legal conclusions to which no response is
>
> required. To the extent a response is required, Plaintiffs deny that the Hoffmann
>
> Family of Companies has a "monopoly power." Plaintiffs are otherwise without
>
> sufficient knowledge or information to form a belief as to the allegations in this
>
> Paragraph, and therefore deny those allegations.

97.    For example, there is no evidence Uber or Lyft has ever considered offering transportation across the Straits of Mackinac. If such services were even feasible, these taxis would need to obtain dock space on the Island and a franchise agreement from the City and split the $821,664 franchise fee with the Hoffmann Ferry Companies (assuming only 1 taxi service entered the market, the fee would be split 1/3). Such costs of entry are prohibitive for services like Uber or Lyft to enter the market.

> **ANSWER:** Plaintiffs are without sufficient knowledge or information to form a
>
> belief as to the allegations in this Paragraph, and therefore deny those allegations.

98.    Nor is there evidence that the Plaunt Transportation ferry in Cheboygan (or any other ferry service that currently exists in Michigan) is either an actual or potential competitor that would restrain the monopoly power of Hoffmann and the Hoffmann Ferry Companies. Plaunt operates <u>one</u> open-decked ferry boat that hauls cars, trucks, and walk-on passengers from Cheboygan to Bois Blanc Island. The Plaunt ferry operates only from May 1 to November 30. Walk-on passengers stand outside on the deck, with the vehicles, and are cautioned to wear a coat. The ferry has no restroom. Even if the Plaunt Ferry had a franchise agreement and dock space on Mackinac Island, which it does not— travel from Cheboygan on the slow Plaunt ferry is not a reasonable substitute for travel on the Shepler's and MIFC/Arnold ferries. The three-mile trip (one-way) from Cheboygan to Bois Blanc Island takes approximately 45 minutes. (See Exhibit 27.) Cheboygan is 14 miles by water from Mackinac Island, though it can be 30 miles depending on the route taken. So, the trip from Cheboygan on the slow Plaunt ferry boat would take over <u>three</u>

27

hours. In contrast, Mackinaw City is four miles from Mackinac Island and St Ignace is 6 to 7 miles from Mackinac Island, and both Shepler's and MIFC/Arnold offer travel times of 16-30 minutes. Thus, ferry services originating in Cheboygan or other cities even farther away are not actual or potential competitors.

> **ANSWER:** This Paragraph states legal conclusions to which no response is required. To the extent a response is required, Plaintiffs deny that the Hoffmann Family of Companies have "monopoly power." Plaintiffs are otherwise without sufficient knowledge or information to form a belief as to the allegations in this Paragraph, and therefore deny those allegations.

99.    The vast majority of the 1.5 million people—90% to 95%— who annually travel to Mackinac Island do so by ferry from Mackinaw City and St. Ignace and cannot reasonably substitute high-cost transportation by private boat, aircraft, small boat ferry taxis, or ferry transportation from some other location where no such service is currently available.

> **ANSWER:** Plaintiffs are without sufficient knowledge or information to form a belief as to the allegations in this Paragraph, and therefore deny those allegations.

100.    New entry is speculative and unlikely, and in any event, would not reduce the Hoffmann Ferry Companies' market power for many years, if at all.

> **ANSWER:** Plaintiffs are without sufficient knowledge or information to form a belief as to the allegations in this Paragraph, and therefore deny those allegations.

101.    The market power of Hoffmann and the Hoffmann Ferry Companies is protected by "prohibitive entry barriers." *In re Packaged Ice Antitrust Litig.*, 723 F.Supp.2d 987, 1014 (E.D. Mich. 2010).

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. This Paragraph also contains legal conclusions, to which no response is required. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

102.    The Hoffmann Ferry Companies' control of docks is a barrier to entry into the relevant market.

a.  The Hoffmann Ferry Companies own or have exclusive access to the docks necessary for use by ferries in St. Ignace, Mackinaw City, and the City of Mackinac Island.

b.  Even if the ferry companies were willing to allow a new entrant to share the use of their docks, the size of the Hoffmann Ferry Companies' boats and number of arrivals and departures would present insurmountable logistical and safety challenges.

c.  The City is aware of no plans to build new docks either on the Island or the mainland suitable for use by ferries to Mackinac Island. Development of new docks would require acquisition of expensive and scarce lake frontage, approval by the Corps of Engineers and local authorities, and substantial construction expense.

**ANSWER:**  Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. This Paragraph also contains legal conclusions, to which no response is required. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

103.    The control of parking by Hoffmann and the Hoffmann Ferry Companies is another barrier to entry into the relevant market for transportation services to Mackinac Island.

a.  There is no public transit in either Mackinaw City or St. Ignace. Between 85% and 90% of visitors, residents, and employees who transportation to the Island by ferry must arrive at the docks in Mackinaw City and St. Ignace by private vehicle. This means that hundreds of thousands of vehicles must be parked at or near the ferry docks each year.

b.  Mackinaw City and St. Ignace do not have public parking lots that allow cars to park for more than 2-3 hours. Parking on the streets are metered and are also limited to 2-3 hours. The cities prohibit overnight parking on city streets. To travel to and from Mackinac Island, parking services are required for at least 3-4 hours for some travelers and overnight for other travelers.

c.  The Hoffmann Ferry Companies own extensive parking lots in Mackinaw City and St. Ignace. Some of the lots are dockside, while others are remote from the

29

docks and are accessed by a shuttle bus provided by the Hoffmann Ferry Companies.

d.  HFC's June 29, 2024, Press Release in connection with the acquisition of MIFC/Arnold stated, "HF Companies now owns [sic] more than 116 parcels of land, including docks in Mackinaw City, Mackinac Island, and St. Ignace, 51 buildings and 6500 parking spaces." (Exhibit 7, emphasis added).

e.  Except for one company that entered the market who entered the market this year and who offers a limited amount of parking next to one of the ferry docks, there are no competing parking lots that ferry customers could reasonably use either in or near Mackinaw City or St. Ignace, or elsewhere. This parking lot has not restrained the Hoffmann Ferry Companies from charging supracompetitive prices or reducing output in the relevant market.

f.  Nor is the City aware of any effort to plan or develop competing parking lots. Development of competing parking lots would require finding and buying land within a reasonable distance of the docks, e.g., a 20-minute bus ride from the ferries, obtaining zoning approval, grading and paving, acquiring and operating buses to transport passengers, and obtaining access to the ferry docks to drop off passengers.

g.  While travelers who stay overnight at a hotel in Mackinaw City or St. Ignace and travel to Mackinac Island for the day may park their cars at their hotel parking lots, 80% to 85% of the travelers to Mackinac Island do not stay at the local hotels and need a place to park their cars. These hotels, however, will not allow travelers to park their cars overnight in the hotel parking lots if the traveler has not also purchased a hotel room for that same night, which more than 80% of travelers do not do.

h.  Because ferry customers must, as a practical matter, park in one of the lots owned by the ferry companies, the Hoffmann Ferry Companies' control of parking acts as a barrier to entry into the relevant market for transportation services to and from Mackinac Island and enables Hoffmann and the Hoffmann Ferry Companies to exercise monopoly power in the relevant market.

**ANSWER:** Plaintiffs deny the allegations in this Paragraph. Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. This Paragraph also contains legal conclusions, to which no response is required. To the extent a response is required, Plaintiffs deny the allegations in

30

this paragraph, including that the Hoffmann Family of Companies have "monopoly power."

104. The Franchise Agreements between the City and the Hoffmann Ferry Companies are also a barrier to entry into the relevant market for transportation to Mackinac Island.

    a. While the Franchise Agreements are non-exclusive, a new entrant would need to obtain a franchise agreement, and the current Franchise Agreements require the franchise fee, now about $821,664 per year, to be divided <u>equally</u> among the franchisees. (See Exhibits 4-5, § 8.)

    b. A new entrant must therefore pay a franchise fee of $300,000 even before it has any revenue, reducing the Hoffmann Ferry Companies' franchise fees by $150,000 apiece.

**ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. This Paragraph also contains legal conclusions, to which no response is required. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

105. Hoffmann and the Hoffmann Ferry Companies control the relevant market for transportation to Mackinac Island, and exercise monopoly or market power, i.e., the power to raise prices above—or reduce services below—a competitive level. They possess a market share of 90-95% of the market for transportation services and 100% of the market for ferry services.

**ANSWER:** This Paragraph states legal conclusions to which no response is required. To the extent a response is required, Plaintiffs deny that the Hoffmann Family of Companies have "monopoly power." Plaintiffs are otherwise without sufficient knowledge or information to form a belief as to the allegations in this Paragraph, and therefore deny those allegations.

106. The Hoffmann Ferry Companies' post-acquisition increases in rates and charges for transportation services confirm that they possess, have exercised, and will continue exercising market power and there are no substitutes that are constraining their power. See *Spirit Airlines*, 431 F.3d at 933-937.

**ANSWER:** This Paragraph states legal conclusions to which no response is required. To the extent a response is required, Plaintiffs deny that the Hoffmann Family of Companies have "monopoly power." Plaintiffs are otherwise without sufficient knowledge or information to form a belief as to the allegations in this Paragraph, and therefore deny those allegations.

107.    The combination of the Hoffmann Fery Companies eliminated competition in the market for transportation services. Following the combination, the Hoffmann Ferry Companies obtained a 90% to 95% market share in the market for transportation services and 100% of the market for ferry boat services. The combination created by Hoffmann's acquisition and control of the only two predominate competitors in the market for transportation services is a violation of § 1 of the Sherman Act, § 7 of the Clayton Act, and Section 2 of the Sherman Act.

**ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

108.    The Hoffmann Ferry Companies raised their ferry ticket prices by $2.00 this year. Their rates are 2-4 times higher than the rates of any other ferry service operating in Michigan. Per nautical mile, the Hoffmann Ferry Companies ticket prices are more expensive than the price for a premier overnight cabin on a ferry between Wisconsin and Michigan; the Hoffmann Ferry Companies' rates are $1.43 to $2.60/nautical mile higher than the overnight premium cabin.

**ANSWER:** Plaintiffs admit that they raised their ferry ticket prices in 2025. Plaintiffs are otherwise without sufficient knowledge or information to form a belief as to the allegations in this Paragraph, and therefore deny those allegations.

109.    Before Hoffmann acquired Shepler's and MIFC/Arnold, both ferry companies offered friends and family of residents of Mackinac Island the same ferry ticket price as the residents (a commuter ticket). After the acquisition, Hoffmann and the Hoffmann Ferry Companies eliminated that benefit and require friends and family to purchase non-commuter tickets.

**ANSWER:** Plaintiffs deny the allegations in this Paragraph.

32

**"The Second Relevant Service Market for Antitrust Purposes is Long Term Parking Necessary to Access the Ferries to Mackinac Island."**

110.    The second relevant service market for antitrust purposes is the market for long term parking in the geographic market of parking lots in or near Mackinaw City and St. Ignace, the only locations from which ferries currently serve Mackinac Island. Long term parking is defined as 3-4 or more hours of parking, which is the amount of parking needed to travel by ferry to and from Mackinac Island for those who are not residents of Mackinaw City or St. Ignace.

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

111.    There is one small third-party owned parking lot near the ferry docks in Mackinaw City that started offering paid parking services this year. This parking lot, however, cannot accommodate enough travelers to impact the prices for long term parking. Even with this lot starting parking services during the 2025 summer season, the Hoffmann Ferry Companies raised their parking prices and reduced their services. This parking lot has not restrained the Hoffmann Ferry Companies from charging supracompetitive prices or reducing services in the relevant market.

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph, except admit that there is a third-party owned parking lot near the ferry docks in Mackinaw City.

112.    Apart from this, there are no competing public or privately-owned parking lots in or near Mackinaw City or St. Ignace that ferry passengers could reasonably use to access the ferries.

   a.    On-street parking in both St. Ignace and Mackinaw City is limited. Both cities restrict on-street parking to 2-3 hours and enforce the limitation. Two to three hours is too short for a trip to the Island.

   b.    Businesses in both cities offer limited off-street parking and restrict its use to customers.

33

c.  There is no public transportation in either St. Ignace or Mackinaw City. And more than a million yearly ferry passengers do not live in St. Ignace or Mackinaw City and therefore need to park within walking or biking distance of a dock, especially if traveling with small children and/or luggage.

d.  There is no evidence any third party currently plans to develop parking lots and offer parking for ferry customers to Mackinac Island. A new entrant would need to buy sufficient land, obtain zoning approval, improve the land, purchase and operate buses or shuttles, and obtain access to the ferry docks to deliver passengers.

e.  Hotels allow their guests to use their parking but limit that service to the dates that the guests stay at the hotel. If the guest does not have lodging for the night, they cannot park at the hotels.

**ANSWER:** Plaintiffs deny the allegations in this paragraph.

113.  For the reasons stated above, the Hoffmann Ferry Companies possess at least an 80-85% market share in long term parking in Mackinaw City and St. Ignace.

**ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

114.  Before Hoffmann acquired Shepler's and MIFC/Arnold, both ferry companies provided free parking for year-round Mackinac Island residents, many of whom keep a vehicle in St. Ignace or Mackinaw City for use on the mainland, and for seasonal residents and seasonal employees who commute to the Island.

**ANSWER:** Plaintiffs deny that Plaintiffs previously provided free parking. Plaintiffs are otherwise without sufficient knowledge or information to form a belief as to the allegations in this Paragraph, and therefore deny those allegations.

115.  Before Hoffmann acquired Shepler's and MIFC/Arnold, there was at least one parking lot that was free for ferry customers to use. Before Hoffmann acquired Shepler's and MIFC/Arnold, both ferry companies offered free shuttle services for Mackinac Island employees and residents, including to their lodging and the grocery store and hospital.

**ANSWER:** Plaintiffs deny the allegations in this Paragraph.

34

116.    Since their acquisition by Hoffman, the Hoffmann Ferry Companies have imposed charges for parking of at least $10 for daily parking, with higher rates for overnight parking as high as $90 per day for "premium" parking.

**ANSWER:** Plaintiffs admit that Plaintiffs charge for daily parking. Plaintiffs

otherwise deny the allegations in this Paragraph.

117.    Since post-acquisition, the Hoffmann Ferry Companies have also charged Mackinac Island residents and commuters hundreds of dollars for annual or seasonal parking passes.

**ANSWER:** Plaintiffs admit that Plaintiffs have charged Mackinac Island residents

and commuters for annual or seasonal parking passes. Plaintiffs otherwise deny

the allegations in this Paragraph.

118.    Since post-acquisition, the Hoffmann Ferry Companies have eliminated free shuttle services to Mackinac Island employees and residents and have ceased shuttles to their lodging and the grocery store and hospital.

**ANSWER:** Plaintiffs deny the allegations in this Paragraph.

119.    The Hoffmann Ferry Companies' parking rates are significantly higher than the parking rates charged by ferry services at other locations in Michigan. The majority of the other ferries allow free daily parking, while a limited number of ferries charge $5.00 to $10.00 less than Hoffmann and the Hoffmann Ferry Companies. And for overnight parking, the Hoffmann Ferry Companies are charging $10 to $22 more than other ferries in Michigan for non-premium parking (the other ferries do not charge any "premium" parking rates).

**ANSWER:** Plaintiffs are without sufficient knowledge or information to form a

belief as to the allegations in this Paragraph, and therefore deny those allegations.

120.    The Hoffmann Ferry Companies' post-acquisition increases in long term parking rates and the reduction in the services confirm that they have and exercised and will continue exercising market power and there are no substitutes that are constraining their power. See *Spirit Airlines*, 431 F.3d at 933-937.

**ANSWER:** Because the allegations in this Paragraph concern the City's antitrust

claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to

respond to this Paragraph. To the extent a response is required, Plaintiffs deny the

allegations in this paragraph.

121. The City and businesses on Mackinac Island have no other option but to tell their employees, customers, and contractors to park in the Hoffmann Ferry Companies' lots; there are no other parking options available in Mackinaw City or St. Ignace.

**ANSWER:** Plaintiffs deny the allegations in this Paragraph.

122. And, unless their parking fees are regulated, the Hoffmann Ferry Companies can side-step fare regulation by the City by charging excessive prices for parking at their captive parking lots.

**ANSWER:** Plaintiffs deny the allegations in this Paragraph.

123. The combination of the Hoffmann Ferry Companies eliminated competition in the market for long term parking. Following the combination, the Hoffmann Ferry Companies obtained an 80% to 85% market share in the market for long term parking. The combination created by Hoffmann's acquisition and control of the only two competitors in the market for long term parking is a violation of § 1 of the Sherman Act, § 7 of the Clayton Act, and § 2 of the Sherman Act.

**ANSWER:** Because the allegations in this Paragraph concern the City's antitrust

claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to

respond to this Paragraph. To the extent a response is required, Plaintiffs deny the

allegations in this paragraph.

**"The Antitrust Violations Harm the City Now and in the Future."**

124. Two years remain on the current Franchise Agreements. The Hoffmann Ferry Companies' violations of their Franchise Agreements, and the antitrust violations by Hoffmann and the ferry companies, are impacting the City now and the impact will be even greater in the future. Not only are the City and its residents, businesses and visitors paying higher rates now for reduced service, but the Hoffmann Ferry Companies will be in a position to use their market power to bully City into unfavorable new franchise terms, which threatens to compound the injury for many years in the future.

**ANSWER:**Because the allegations in this Paragraph concern the City's antitrust

claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to

respond to this Paragraph. To the extent a response is required, Plaintiffs deny the

allegations in this paragraph.

### "The Antitrust Violations Impact Interstate Commerce."

125.    The antitrust violations alleged herein have a "not insubstantial" impact on interstate commerce. The Hoffmann Ferry Companies concede that "Mackinac Island is a historically significant tourist destination with approximately 1.5 million people visiting the island each year <u>from around the world</u>." (ECF No. 1, PageID.2, ¶ 8, emphasis added; *also see id.*, PageID.7, ¶ 32 (Hoffmann Ferry Companies "transport persons and property, from all over the world, over a navigable waterway of the United States.").)

**ANSWER:** Because the allegations in this Paragraph concern the City's antitrust

claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to

respond to this Paragraph. To the extent a response is required, Plaintiffs deny the

allegations in this paragraph.

126.    The Hoffmann Ferry Companies have asserted admiralty jurisdiction over their breach of contract claim, thus conceding that the ferries operate in interstate commerce.

**ANSWER:** Plaintiffs admit that they have asserted admiralty jurisdiction.

Plaintiffs otherwise deny the allegations in this Paragraph.

### COUNT I
### Breach of Contract
### (Counter-Defendants)

127.    Counter-Plaintiff incorporates by reference as if fully set forth herein the allegations set forth in paragraphs 1 through 126 above.

**ANSWER:** Plaintiffs repeat and reallege the responses to the preceding paragraphs of the

Counterclaims as if those responses were set forth fully herein.

128.    The City's Charter empowers it to regulate "rates" or "charges and prices" for "transportation" by ferry. "Transportation" includes parking in the lots owned by the ferry companies, because virtually all passengers must use the parking lots to access the ferries, and all other fees and charges imposed by Counter-Defendants in connection with transportation by ferry.

**ANSWER:** Plaintiffs deny the allegations in this Paragraph.

129.    Because competition between the ferry companies has ceased as a matter of fact and law, MIFC/Arnold and Shepler's are obligated by Section 9 of their respective Amendment and Restatement of Franchise Agreement to cooperate with the City in its regulation of rates for ferry transportation to and from Mackinac Island, including rates for parking in the lots owned by the ferry companies which are necessary to access the ferries, and all other fees and charges imposed by Counter-Defendants in connection with transportation by ferry.

**ANSWER:**This Paragraph states legal conclusions to which no response is required. To the extent a response is required, Plaintiffs deny those allegations.

130.    Counter-Defendants' assertion that competition between them continues to exist despite their common ownership and control by Hoffmann Marine is false and their failure and refusal to cooperate in the City's regulatory program breaches the Amendment and Restatement of Franchise Agreements.

**ANSWER:** This Paragraph states legal conclusions to which no response is required. To the extent a response is required, Plaintiffs deny those allegations.

131.    Counter-Defendants' breach of their Amendment and Restatement of Franchise Agreements irreparably injures the City by interfering with its right to regulate ferry transportation to and from Mackinac Island, which harms the City's residents, deters visitors, reduces the value of properties and businesses in the City, and suppresses the City's tax revenues.

**ANSWER:**This Paragraph states legal conclusions to which no response is required. To the extent a response is required, Plaintiffs deny those allegations.

WHEREFORE, the City prays for injunctive relief compelling the Hoffmann Ferry Companies, and all persons in concert with them, including Hoffmann, to comply with the City's public utility regulation of their rates, fares, and schedules in connection with transportation to Mackinac Island as mandated by the City's Charter, the City's 2012 and 2025 Ordinances, and the Franchise Agreements, including regulation of their fees for parking, early boarding, baggage, convenience fees, and any other fees they may devise.

**ANSWER:** Plaintiffs deny that the City is entitled to any of the relief requested in this Paragraph.

## COUNT II
### Section 1 of the Sherman Act, 15 U.S.C. § 1 and Section 7 of the Clayton Act, 15 U.S.C. § 18
### Acquisition and Abuse of Monopoly Power in the Market for Transportation Services to and From Mackinac Island
### (Counter-Defendants and Third-Party Defendant as to Section 1; Third-Party Defendant as to Section 7)

132.    Counter-Plaintiff and Third-Party Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 131 above, as if fully set forth herein.

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

133.    Section 1 of the Sherman Act, 15 U.S.C. § 1, prohibits "[e]very contract, combination, . . . or conspiracy in restraint of trade or commerce among the several states, or with foreign nations . . . ." A merger between companies that are major competitive factors in a relevant market violates Section 1. *United States v. First National Bank and Trust Co. of Lexington*, 376 U.S. 665, 669-70 (1964).

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

134.    Section 7 of the Clayton Act, 15 U.S.C. § 18, prohibits the acquisition of stock or assets "of one or more persons engaged in [interstate] commerce or in any activity affecting commerce," where "the effect of such acquisition, . . . may be substantially to lessen competition, or to tend to create a monopoly." The use of "may" means that Section 7 prohibits potentially anticompetitive mergers or acquisitions in their incipiency; there is no need to wait until the impact on competition has actually occurred:

> Section 7 is designed to arrest in its incipiency not only the substantial lessening of competition from the acquisition by one corporation of the whole or any part of the stock of a competing corporation, but also to arrest in their incipiency restraints or monopolies in a relevant market which, as a reasonable probability, appear at the time of suit likely to result from the acquisition by one corporation of all or any part of the stock of any other corporation. The section is violated whether or not actual

39

restraints or monopolies, or the substantial lessening of competition, have occurred or are intended.

*duPont*, 353 U.S. at 589.

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

135.    Section 4 of the Clayton Act, 15 U.S.C. § 15, allows "any person . . . injured in his business or property by reason of anything forbidden in the antitrust laws" to sue and "recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." A "person" is defined to include "corporations and associations existing under or authorized by . . . the laws of any State," including the City, which is a municipal corporation existing under Michigan law. See 15 U.S.C. § 12.

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

136.    Injury to "business or property" includes paying a higher price for goods or services as a result of an antitrust violation. See *Chattanooga Foundry & Pipe Works v. City of Atlanta*, 203 U.S. 390, 396 (1906) ("A person whose property is diminished by a payment of money wrongfully induced is injured in his property."); *Chase Manufacturing, Inc. v. Johns Manville Corp.*, 84 F.4th 1157, 1177 (10th Cir. 2023) (payment of supra-competitive prices resulting from an antitrust violation is antitrust injury under Section 4).

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

137.    Section 16 of the Clayton Act, 15 U.S.C. § 26, allows any "person, firm, corporation, or association to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust

laws . . ." Id. (emphasis added). Under Section 16, the plaintiff "need only demonstrate a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur." *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 130 (1969). Thus, the plaintiff can obtain injunctive relief under Section 16 where damages are unavailable under Section 4. *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 111, 113 (1986); *U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 627 (7th Cir. 2003) ("the direct-purchaser doctrine does not foreclose equitable relief"). In other words, threatened direct and indirect injury can support a claim for injunctive relief under Section 16.

>**ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

138.	The City is a customer of the Hoffmann Ferry Companies and suffers antitrust injury from the anticompetitive combination of the ferry companies under Hoffmann's common ownership. The City pays for the commuter passes of employees and contracted workers, including the City Engineer/Building Inspector, City Assessor, construction workers, bathroom cleaners, window washing companies, attorneys, and other professionals who commute to the Island for work contracted by the City. The City therefore incurs actual and potential supra-competitive charges and service reductions by the Hoffmann Ferry Companies, and thereby directly suffers antitrust injury.

>**ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

140.	The City also suffers indirect antitrust injury from the antitrust violations by Hoffmann and the Hoffmann Ferry Companies because they deter people from visiting or living on Mackinac Island, raise the cost of doing business on the Island, and reduce the value of real property on the Island, diminishing the City's tax base and revenues.

>**ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

141.    The City has standing to sue for damages and injunctive relief under 15 U.S.C. § 15 and 15 U.S.C. § 26.

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

142.    Hoffmann and the Hoffmann Ferry Companies' post-acquisition control of 100% of ferry service to and from Mackinac Island and together have and exercised market power to raise prices for ferry services. Even if private boats and private, chartered, and taxi aircraft are included in the relevant market for transportation services to and from Mackinac Island, Hoffmann and the Hoffmann Ferry Companies post-acquisition of market share is between 90% and 95% and they have exercised market or monopoly power to raise prices and reduce services.

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

143.    Through Hoffmann's acquisition and control over the ferry companies, Hoffmann and the Hoffmann Ferry Companies have eliminated competition in the market for transportation services to and from Mackinac Island, since post-acquisition they control 90%-95% of the relevant market, which is sufficient to constitute a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 and Section 7 of the Clayton Act, 15 U.S.C. § 18.

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

144.    The ferry companies' lock-step increases in rates for ferry tickets, early boarding fees, credit card "convenience" fees, fees for transporting bicycles, and other charges confirm that they not only have monopoly power, i.e., the power to raise prices, *Byars v. Bluff City News Co.*, 609 F.2d 843, 550 (1979), but also that they intend to continue to raise prices and inflict further injury to competition and their customers. These exercises of monopoly power by Hoffmann and

42

Hoffmann Ferry Companies are violations of Section 1 of the Sherman Act, 15 U.S.C. § 1 and Section 7 of the Clayton Act, 15 U.S.C. § 18.

**ANSWER:**Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

WHEREFORE, the City prays for injunctive relief compelling the Hoffmann Ferry Companies, and all persons in concert with them, including Hoffmann, to comply with the City's public utility regulation of their rates, fares, and schedules in connection with transportation to Mackinac Island as mandated by the City's Charter, the City's 2012 and 2025 Ordinances, and the Franchise Agreements, including regulation of their fees for parking, early boarding, baggage, convenience fees, and any other fees they may devise. The City also prays for an award of treble its damages suffered until the regulatory program is fully implemented, together with its attorney fees and costs.

**ANSWER:**Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

## COUNT III
### Section 2 of the Sherman Act, 15 U.S.C. § 2
### Willful Acquisition and Abuse of Monopoly Power in the Market for Transportation Services to and from Mackinac Island
### (Counter-Defendants and Third-Party Defendant)

144. Counter-Plaintiff and Third-Party Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 143 above, as if fully set forth herein.

**ANSWER:**Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

43

145. Section 2 of the Sherman Act, 15 U.S.C. § 2, provides: "Every person who shall monopolize, or attempt to monopolize, or combine…with any other person or persons, to monopolize any part of the trade or commerce among several States…shall be deemed guilty of a felony…."

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

146. A Section 2 claim has two elements: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.,* 384 U.S. 563, 570-571 (1966) (emphasis added). "Anticompetitive conduct make take a variety of forms, but it is generally defined as conduct to obtain or maintain monopoly power as a result of competition on some basis other than the merits." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 308 (2007).

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

147. Through Hoffmann's acquisition and control over the ferry companies, Hoffmann has eliminated competition in the relevant market for transportation services to and from Mackinac Island.

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

148. Hoffmann and the Hoffmann Ferry Companies did not acquire monopoly power in the relevant market due to a superior product, business acumen, or historic accident. They obtained their monopoly power solely through a willful acquisition of the two predominant competitors in the relevant market. Their willful acquisition of 90% to 95% of the relevant market through the

acquisition of the predominant competitors in the relevant market is a violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. See *id.*; *Standard Oil Co. v. United States*, 221 U.S. 1, 70-77 (1911).

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

149.    Hoffmann and the Hoffmann Ferry Companies knew prior to the acquisition that they would control 90% to 95% of the relevant market post-acquisition, which is sufficient to show their intent to monopolize the market through the acquisitions. *Id.* at 77.

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

150.    In exercising their monopoly power post-acquisition, Hoffmann and the Hoffmann Ferry Companies have raised prices in the relevant market so that their prices exceed by 2-4 times the prices per mile of other ferries located in Michigan, reduced services that were previously offered by the ferries for decades when there was competition among the ferries and thwarted the regulatory oversight by the City. Thus, they have imposed supracompetitive prices and reduced output in the relevant market due to their willful acquisition of monopoly power in the relevant market.

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

151.    Hoffmann and the Hoffmann Ferry Companies will exercise their willfully-acquired monopoly power in the negotiations of the next franchise agreement with the City when the current franchises expire in 2027, to eliminate any effective regulatory oversight by the City of their ferry services. This is not conjecture. The Hoffmann Ferry Companies have already threatened to cease operations if the City regulates them. (ECF No. 25, PageID.270 ("The City has effectively announced that it intends to use the 2025 Ordinance to unilaterally impose restrictions

45

on the Ferry Companies…. Such measures could very well cause the Ferry Companies to have no choice but to cease operations.").)

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

152.    The City is a customer of the Hoffmann Ferry Companies as alleged above and suffers antitrust injury from the willful acquisition and exercise of monopoly power by Hoffmann and the Hoffmann Ferry Companies over the relevant market for transportation service to and from Mackinac Island. Specifically, because the City pays for the commuter passes of certain employees and contracted workers, it incurs actual and potential supra-competitive charges and service reductions by the Hoffmann Ferry Companies, and thereby directly suffers antitrust injury. The City also suffers indirect antitrust injury from the antitrust violations by Hoffmann and the Hoffmann Ferry Companies because they deter people from visiting or living on Mackinac Island, raise the cost of doing business on the Island, and reduce the value of real property on the Island, diminishing the City's tax base and revenues.

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

153.    The City has standing to sue for damages and injunctive relief under 15 U.S.C. § 15 and for injunctive relief under 15 U.S.C. § 26.

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

WHEREFORE, the City prays for injunctive relief compelling the Hoffmann Ferry Companies, and all persons in concert with them, including Hoffmann, to comply with the City's public utility regulation of their rates, fares, and schedules in connection with transportation to and from Mackinac Island as mandated by the City's Charter, the City's 2012 and 2025 Ordinances, and the Franchise Agreements, including regulation of their fees for parking, early boarding,

baggage, convenience fees, and any other fees they may devise. The City also prays for an award of treble its damages suffered until the regulatory program is fully implemented, together with its attorney fees and costs.

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

## COUNT IV
### Section 1 of the Sherman Act, 15 U.S.C. § 1 and Section 7 of the Clayton Act, 15 U.S.C. § 18
### Acquisition and Abuse of Monopoly Power in the Market for Long-Term Parking
### (Counter-Defendants and Third-Party Defendant as to Section 1; Third-Party Defendant as to Section 7)

154.    Counter-Plaintiff and Third-Party Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 153 above, as if fully set forth herein.

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

155.    The Hoffmann Ferry Companies possess 80% to 85% of the market for long-term parking in the geographic market of Mackinaw City and St. Ignace.

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

156.    The City is a customer of the Hoffmann Ferry Companies and suffers antitrust injury from the anticompetitive combination of the ferry companies under HFC's common ownership. The City pays for the parking fees of employees and contracted workers, including the City Engineer/Building Inspector, City Assessor, construction workers, bathroom cleaners, window washing companies, attorneys, and other professionals who commute to the Island for work contracted by the City. The City therefore incurs any actual or potential supra-competitive

47

charges by the Hoffmann Ferry Companies and thereby suffers antitrust injury. The City also suffers indirect antitrust injury from the antitrust violations by Hoffmann and the Hoffmann Ferry Companies because they deter people from visiting or living on Mackinac Island, raise the cost of doing business on the Island, and reduce the value of real property on the Island, diminishing the City's tax base and revenues.

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

157.    The ferry companies' lock-step increases in rates for parking confirm that they not only have monopoly power, i.e., the power to raise prices, *Byars v. Bluff City News Co.*, 609 F.2d 843, 550 (1979), but also that they intend to and have raised prices above supracompetitive levels, reduced services, and inflicted injury to competition and their customers.

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

158.    The City has standing to sue for damages and injunctive relief under 15 U.S.C. § 15 and 15 U.S.C. § 26.

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

WHEREFORE, the City prays for injunctive relief compelling the Hoffmann Ferry Companies, and all persons in concert with them, including Hoffmann, to comply with the City's public utility regulation of their rates, fares, and schedules in connection with transportation to Mackinac Island as mandated by the City's Charter, the City's 2012 and 2025 Ordinances, and the Franchise Agreements, including regulation of their fees for parking in their company-owned lots. The City also prays for an award of treble its damages suffered until the regulatory program is fully implemented, together with its attorney fees and costs.

**ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

**COUNT V**
**Section 2 of the Sherman Act, 15 U.S.C. § 2**
**Willful Acquisition and Abuse of Monopoly Power in the Market for Long-Term Parking**
**(Counter-Defendants and Third-Party Defendant)**

159.    Counter-Plaintiff and Third-Party Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 158 above, as if fully set forth herein.

**ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

160.    Section 2 of the Sherman Act, 15 U.S.C. § 2, provides: "Every person who shall monopolize, or attempt to monopolize, or combine…with any other person or persons, to monopolize any part of the trade or commerce among several States…shall be deemed guilty of a felony…." The willful acquisition and control of competitors or the willful acquisition of a monopoly violates Section 2.

**ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

161.    A Section 2 claim has two elements: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.,* 384 U.S. 563, 570-571 (1966). "Anticompetitive conduct may take a variety of forms, but it is generally defined as conduct to obtain or maintain monopoly power as a result of competition on some basis other than the merits." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 308 (2007).

49

**ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

162.    Hoffmann's and the Hoffmann Ferry Companies' monopoly power was not acquired due to a superior product, business acumen, or historic accident. They obtained their monopoly power solely through a willful acquisition of the only two competitors in the relevant market for long-term parking in in Mackinaw City and St. Ignace, Michigan. Their acquisition of 80% to 85% of the relevant market is a violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. See *id.*; *Standard Oil Co. v. United States*, 221 U.S. 1, 70-77 (1911).

**ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

163.    The post-acquisition share of market power is so high that there is a presumption that Hoffmann and Hoffmann Ferry Companies, prior to the acquisitions, intended to monopolize the market through the acquisitions. *Id.* at 77.

**ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

164.    In exercising their monopoly power post-acquisition, Hoffmann and the Hoffmann Ferry Companies have raised prices in the relevant market so that their prices significantly exceed the parking prices of other ferries serving Michigan. The majority of the other ferries offer daily parking for free, while the other ferries charge $5.00 to $10.00 less than what Hoffmann and the Hoffmann Ferry Companies charge. And for overnight parking, Hoffmann and the Hoffmann Ferry Companies are charging $10 to $22 more than other ferries in Michigan. They have also exercised their monopoly power by reducing services previously offered by the ferries for decades when there was competition among the ferries, as well as by thwarting the regulatory oversight by the City. Thus, they have imposed supracompetitive prices and reduced output in the relevant market due to their willful acquisition of monopoly power in the relevant market.

**ANSWER:**Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

165.    Hoffmann and the Hoffmann Ferry Companies will continue to exercise their willfully-acquired monopoly power in negotiating the next franchise agreement with the City when the current franchises expire in 2027, in order to prevent the City from effectively regulating their ferry services. This is not conjecture. The Hoffmann Ferry Companies have already threatened to cease operations if the City regulates them. (ECF No. 25, PageID.270 ("The City has effectively announced that it intends to use the 2025 Ordinance to unilaterally impose restrictions on the Ferry Companies…. Such measures could very well cause the Ferry Companies to have no choice but to cease operations.").)

**ANSWER:**Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

166.    The City is a customer of the Hoffmann Ferry Companies and suffers antitrust injury from the willful acquisition of the ferry companies under HFC's common ownership. The City pays for the parking fees of employees and contracted workers who commute to the Island for work contracted by the City. The City therefore incurs any actual or potential supra-competitive charges by the Hoffmann Ferry Companies and thereby directly suffers antitrust injury. The City also suffers indirect antitrust injury from the antitrust violations by Hoffmann and the Hoffmann Ferry Companies because they deter people from visiting or living on Mackinac Island, raise the cost of doing business on the Island, and reduce the value of real property on the Island, diminishing the City's tax base and revenues.

**ANSWER:**Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

167.    The ferry companies' lock-step increases in rates for parking confirm that they not only have monopoly power, i.e., the power to raise prices, *Byars v. Bluff City News Co.*, 609 F.2d

843, 550 (1979), but also that they intend to continue to raise prices and inflict further injury to competition and their customers.

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

168. The City has standing to sue for damages and injunctive relief under 15 U.S.C. § 15 and 15 U.S.C. § 26.

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

WHEREFORE, the City prays for injunctive relief compelling the Hoffmann Ferry Companies, and all persons in concert with them, including Hoffmann, to comply with the City's public utility regulation of their rates, fares, and schedules in connection with transportation to Mackinac Island as mandated by the City's Charter, the City's 2012 and 2025 Ordinances, and the Franchise Agreements, including but not limited to regulation of their fees for parking. The City also prays for an award of treble its damages suffered until the regulatory program is fully implemented, together with its attorney fees and costs.

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

### COUNT VI
### Sections 2 and 3 of the Michigan Antitrust Reform Act,
### MCL 445.772 and MCL 445.773
### (Counter-Defendants and Third-Party Defendant)

169. Counter-Plaintiff and Third-Party Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 168 above, as if fully set forth herein.

**ANSWER:**Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

170.    The actions of Counter-Defendants and Third-Party Defendant violate Section 2 and 3 of the Michigan Antitrust Reform Act, MCL 445.772 and MCL 445.773 ("MARA"). Also see MCL 445.784(2).

**ANSWER:**Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

171.    Sections 2 of MARA is analogous to Section 1 of the Sherman Act, and Section 3 of MARA is analogous to Section 2 of the Sherman Act. In construing MARA, the "courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes, including, without limitation, the doctrine of per se violations and the rule of reason[.]" MCL 445.784(2).

**ANSWER:**Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

172.    There are, however, two significant differences between MARA and the Sherman Act. First, as the Hoffmann Ferry Companies concede, MARA does not require pleading or proof of impact on interstate commerce.

**ANSWER:**Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

173.    Second, under MARA, a plaintiff can obtain damages for injury suffered either "directly or indirectly" by an antitrust violation, as well as injunctive relief for actual or threatened injury. MCL 445.778(1).

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

174.    The Hoffmann Ferry Companies' anticompetitive conduct has caused, and unless regulated threatens to cause, both direct and indirect injury to the City. The refusal by the Hoffmann Ferry Companies to comply with their Franchise Agreements by cooperating in rate regulation with the City prevents the City from fulfilling the regulatory responsibilities causing direct injury to the City, its residents, businesses located in the City, their employees, and visitors.

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

WHEREFORE, the City prays for injunctive relief compelling the Hoffmann Ferry Companies, and all persons in concert with them, including HFC, to comply with the City's public utility regulation of their rates, fares, and schedules as mandated by the City's Charter, the 2012 and 2025 Ordinances, and the Franchise Agreements, including regulation of their fees for parking, early boarding, baggage, convenience fees, and any other fees they may devise. The City also prays for an award of double its damages suffered until the regulatory program is fully implemented, together with its attorney fees and costs.

> **ANSWER:** Because the allegations in this Paragraph concern the City's antitrust claims, which were dismissed in the Dismissal Order, Plaintiffs are not required to respond to this Paragraph. To the extent a response is required, Plaintiffs deny the allegations in this paragraph.

# COUNT VII
## Declaratory Judgment, 28 U.S.C. § 2201 (Counter-Defendants and Third-Party Defendant)

175.    Counter-Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 174 above, as if fully set forth herein.

**ANSWER:** Plaintiffs repeat and reallege the responses to the preceding paragraphs of the Counterclaims as if those responses were set forth fully herein.

176.    Pursuant to 28 U.S.C. § 2201, an actual controversy exists between the City, Counter-Defendants and Third-Party Defendants regarding their respective rights, under the City's Charter, the Ordinance, and the Franchise Agreements, in connection with the regulation of ferry service to Mackinac Island, including parking necessary to access the ferries.

**ANSWER:** Plaintiffs admit that an actual controversy exists between the City and Counter-Defendants regarding their respective rights, under the City's Charter, the Ordinance, and the Franchise Agreements, in connection with the regulation of ferry service to Mackinac Island. Plaintiff otherwise denies the allegations in this Paragraph.

177.    This Court is authorized by 28 U.S.C. § 2201 to enter judgment declaring the rights of the parties.

**ANSWER**: Plaintiffs admit the allegations in this Paragraph as to the rights of the City and Counter-Defendants.

WHEREFORE, Counter-Plaintiff City of Mackinac Island prays that the Court enter judgment as follows:

    A.    Enter declaratory judgment declaring that

        1.    The Charter, Franchise Agreements, and the Ordinances empower the City to determine that competition between Counter-Defendants in the provision of ferry boat service to Mackinac Island has ceased.

        2.    Competition between Counter-Defendants in the provision of ferry boat service to Mackinac Island has ceased as a matter of fact and law.

        3.    Counter-Defendants are obligated by Section 9 of their respective Franchise Agreements to cooperate with the City in its regulation of their

charges and prices for transportation by ferry to and from Mackinac Island.

4. The City's power to regulate charges and prices for transportation by ferry to Mackinac Island includes the power to regulate rates for parking in the lots owned by the Counter-Defendants which are necessary to access the ferries, and other fees and charges imposed by Counter-Defendants in connection with transportation by ferry to Mackinac Island.

5. Counter-Defendants breached their Franchise Agreements by failing to cooperate in the City's regulation of rates for transportation by ferry to Mackinac Island, including the rates for parking in the lots owned by Counter-Defendants necessary to access the ferries and other fees and charges imposed by Counter-Defendants in connection with transportation by ferry to Mackinac Island,

6. Counter-Defendants and Third-Party Defendant have violated Section 1 of the Sherman Act, 15 U.S.C. § 1, Section 2 of the Sherman Act, 15 U.S.C. § 2, Section 7 of the Clayton Act, 15 U.S. C. § 18, and Sections 2 and 3 of the Michigan Antitrust Reform Act, MCL 445.772 and MCL 445.773, by unlawfully combining all of the ferry companies serving Mackinac Island under the common ownership and control of Third-Party Defendants, and exercising monopoly power over transportation to Mackinac Island.

7. Counter-Defendants and Third-Party Defendant have violated Section 1 of the Sherman Act, 15 U.S.C. § 1, Section 2 of the Sherman Act, 15 U.S.C. § 2, Section 7 of the Clayton Act, 15 U.S. C. § 18, and Sections 2 and 3 of the Michigan Antitrust Reform Act, MCL 445.772 and MCL 445.773, by unlawfully combining the predominant providers of long-term parking serving transportation Mackinac Island under the common ownership and control of Third-Party Defendants, and exercising monopoly power over such long-term parking.

B. Enter injunctive relief compelling the Hoffmann Ferry Companies, and all persons in concert with them, including Hoffmann, to comply with the City's public utility regulation of their rates, fares, and schedules in connection with transportation to Mackinac Island as mandated by the City's Charter, the City's 2012 and 2025 Ordinances, and the Franchise Agreements, including regulation of their fees for parking, early boarding, baggage, convenience fees, and any other fees they may devise,

C. Award Counter-Plaintiff and Third-Party Plaintiff treble its actual damages, together with attorney fees, costs and such other appropriate relief as may be just and equitable, against Counter-Defendants and Third-Party Plaintiff, jointly and severally.

**ANSWER:** Plaintiffs deny that the City is entitled to any of the relief requested in this Paragraph.

### AFFIRMATIVE DEFENSES

Plaintiffs, by and through their attorneys, Blank Rome LLP and Dykema Gossett PLLC, state the following for their affirmative defenses to the City's Counterclaims filed against Plaintiffs in this matter.

1. The Counterclaims fail to state a cause of action for which relief can be granted.

2. To the extent that the Franchise Agreements expire and no new agreements are entered, the Carriers By Waters Act (not the Charter) controls and operates to bar the Counterclaims.

3. The Counterclaims are barred because the City has no authority to regulate parking or ancillary services.

4. Assuming arguendo the City may regulate the rates for ferry services, it cannot do so based upon a return on investment model as attempted under the 2025 Ordinance.

5. The Counterclaims are barred by the doctrine of unclean hands.

6. The Counterclaims are barred by the doctrines of laches, waiver, acquiescence, and/or estoppel.

7. The Counterclaims are barred because of the City's prior material breach of the Franchise Agreements.

8. The Counterclaims are barred by fraud and/or misrepresentation.

9. The damages alleged in the Counterclaims, if any, are barred because the City failed to mitigate damages.

10.    The damages alleged in the Counterclaims, if any, are barred by principles of setoff and/or recoupment.

11.    The Counterclaims are barred by reason of documentary evidence, including, but not limited to, the Franchise Agreements.

12.    The City has not suffered any damages and therefore is not entitled to any pre- and post-judgment interest.

13.    Plaintiffs reserve the right to assert additional affirmative defenses in the event that ongoing discovery shows that such additional affirmative defense would be appropriate.


Dated: March 15, 2026

Respectfully submitted,

Mark J. Magyar
Dykema Gossett PLLC
201 Townsend Street, Ste. 900
Lansing, MI
Tel.: (616) 334-4447
mmagyar@dykema.com

- and –

*s/ William J. Dorsey*
William J. Dorsey
Blank Rome LLP
444 West Lake Street, Ste. 1650
Chicago, IL 60606
Tel.: (312) 776-2512
william.dorsey@blankrome.com

Deborah Skakel
Gregory Cronin
Blank Rome LLP
1271 Avenue of the Americas
New York, NY 10023
Tel.: (212) 885-5156
gregory.cronin@blankrome.com

*Attorneys for Plaintiffs-Counter-Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Answer to the City's Counterclaims was served on March 15, 2026, on all counsel of record via the ECF filing system.

<u>*s/ William J. Dorsey*</u>