**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

Shepler's Inc. d/b/a Shepler's Mackinac Island Ferry Service, and Mackinac Island Ferry Company d/b/a Arnold Transit Company,

        Plaintiffs/Counter-Defendants,

    v.

City of Mackinac Island,

        Defendant/Counter-Plaintiff.

Case No.: 2:25-cv-00036 (RJJ) (MV)

**PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT'S APPEAL**
**OF MAGISTRATE JUDGE VERMAAT'S**
**MARCH 9, 2026 ORDER (ECF NO. 127)**

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND AND DOCUMENTS REQUESTED................................................. 4

LEGAL STANDARD ................................................................................................ 6

    I.     Appeal of a Magistrate's Decision........................................................ 6

    II.    Motions To Compel Discovery .............................................................. 7

ARGUMENT............................................................................................................. 7

    I.     The City Again Seeks Improper and Irrelevant Antitrust-Related Discovery ........ 7

          A.    Documents Concerning Hoffmann's Separate Acquisitions of Plaintiffs Are Not Relevant to Post-Acquisition Operation And Competition........... 8

          B.    An Expansive and Deep Probe of Plaintiffs' Separate Finances Does Not Relate to the Franchise Agreements or Answer Whether "Competition" Exists ................................................................................ 10

    II.    The Repeated Request for "Shepler Family" Employment Records Should Continue To Be Rejected ...................................................... 11

    III.   Plaintiffs Do Not Need To Respond to the City's Request for a Legal Conclusion ................................................................................ 12

    IV.   The City Improperly Seeks Discovery in Furtherance of an Ordinance That Is Not Effective as to Plaintiffs and Not Part of the Contract Claims in This Action...... 13

    V.    Plaintiffs Should Be Awarded Their Fees and Costs in Opposing the City's Appeal, Which Amounts to The City's Third Request for Judicial Intervention Seeking the Same Relief. ...................................................... 14

CONCLUSION......................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BullsEye Telecom, Inc. v. Centurylink Communs., LLC,*
2:19-cv-10812, 2019 U.S. Dist. LEXIS 203926 (E.D. Mich. Nov. 23, 2019)..........................13

*Heights Cmty. Cong. v. Hilltop Realty, Inc.,*
774 F.2d 135 (6th Cir. 1985) .................................................................................................6

*Kelly v. McLain,*
08-CV-10448-DT, 2008 U.S. Dist. LEXIS 87387 (E.D. Mich. Oct. 28, 2008) ........................7

*Michigan Ry. Co. v. City of Lansing,*
260 F. 322 (E.D. Mich. 1919)...............................................................................................14

*Pemberton v. Bell's Brewery, Inc.,*
1:22-cv-739, 2024 U.S. Dist. LEXIS 99713 (W.D. Mich. June 5, 2024)................................14

*Scales v. J.C. Bradford & Co.,*
925 F.2d 901 (6th Cir. 1991) .................................................................................................7

*Superior Prod. P'ship v. Gordon Auto Body Parts Co.,*
784 F.3d 311 (6th Cir. 2015) .................................................................................................7

Plaintiffs Shepler's Inc. ("Shepler's") and Mackinac Island Ferry Company ("Arnold Transit" and together with Shepler's, "Plaintiffs"), by and through their undersigned counsel, submit this Memorandum of Law in Opposition to the Appeal of Magistrate Judge Vermaat's March 9, 2026 Order (the "Order") (ECF No. 127) filed by Defendant the City of Mackinac Island (the "City"). (*See* ECF No. 132).

**PRELIMINARY STATEMENT**

This appeal is the City's third attempt to obtain what both Judge Jonker and Magistrate Judge Vermaat have already confirmed is irrelevant discovery concerning (now twice dismissed) antitrust claims.[1] Rather than reviewing the 1,539 documents Plaintiffs and the Hoffmann Family of Companies ("Hoffmann") produced on March 23, 2026, or the court-ordered supplemental document responses and objections Plaintiffs submitted that same day (*see* Exs. A, B), the City instead filed yet another motion arguing that "[a]sset and stock purchase agreements," "[a]nalyses of returns on equity," and "[d]ocuments showing the number of vehicles on which each Plaintiff assessed parking fees and parking revenues" are all purportedly "demonstrably" relevant to the breach of contract issue subject to discovery and the threshold question of whether "no competition is found to exist in ferry boat service to and from the City." (*See* City's Appeal, ECF 132, PageID.2439). The City's request should again be denied. Further, given the City's repeated filings and failure to review the discovery already produced in this litigation (particularly the documents Plaintiffs produced in response to the Order that *do* relate to the Franchise Agreement claims), fees and costs should be awarded to Plaintiffs.

---

[1] *See* ECF Nos. 96 (Order denying motion to compel a subpoena directed to the Hoffmann Family of Companies), 127 (Order denying motion to compel the same requested discovery from Plaintiffs).

In its instant motion, the City attempts to recharacterize their discovery requests in hopes of misleading the Court into a different result – but what the City argues in this motion and what documents it actually seeks are two different things. For example, the City argues that its document requests seek "financial documents that *would show whether and how [Plaintiffs] coordinate and agree on rates and services,* … documents showing the *corporate and operational relationships between Plaintiffs*, and … documents showing whether competition exists between them." (ECF No. 132, PageID.2434) (emphasis added). However, the City neglects to inform the Court that Plaintiffs and Hoffmann were ordered to produce, *and did produce*, documents concerning "[t]he setting or determination of Plaintiffs' service rates and services" and Plaintiffs' "executive management team or corporate structure." (*See* ECF 127, PageID.2330, 2333). The documents the City persists in pursuing (purchase agreements, due diligence materials, financial statements, parking documents, etc.) are irrelevant to the Franchise Agreement's "competition" clause and were properly rejected by the Court.

That the City persists in pushing for parking-related documents (e.g., Req. No. 27) is especially egregious. This Court's Opinion and Order regarding the preliminary injunction motions (ECF No. 50) enjoined the City from regulating parking, finding it lacked the authority to do so. And the Sixth Circuit affirmed this Court on that issue. (ECF No. 129, March 12, 2026 Op. at PageID.2364). Discovery concerning parking has no place in this case.

The City's reliance on its own experts' definitions of "competition" also mischaracterizes the requests the City seeks to enforce here. To the extent the City seeks to understand who "controls" Plaintiffs' independent rate setting processes, Plaintiffs and Hoffmann produced those documents the same day the City filed this appeal. The City's newfound catchphrase "true

*economic* competition"[2] does not sanction antitrust-related discovery regarding the acquisition of Plaintiffs (i.e., events occurring before this "competition" dispute arose) or an overly broad review of Plaintiffs' separate finances. That the City's proffered experts are experts in the field of antitrust (*see, e.g.*, Palmer Report at 25 (Palmer's professional experience has focused on the economic analysis of complex *antitrust issues*")) underscores the City's sleight of hand in trying to morph prohibited antitrust discovery into appropriate breach of contract discovery.

So why does the City continue to demand these irrelevant antitrust-related documents after this Court's October 21, 2025 Order, after the Magistrate's March 9, 2026 Order, and after Plaintiffs' court-ordered supplemental document production on March 23, 2026 (a supplemental production that the city ignored)? Buried in footnote 2 of its appeal brief (ECF No. 132, PageID.2439), the City reveals its true goal: The City adopted yet another Ordinance on March 18, 2026, seeking to regulate Plaintiffs in circumvention of the Franchise Agreements, and the City "need[s]" financial information and documents for what it euphemistically calls its "rate case" under its new regulatory regime. (*See* ECF Nos. 132-1, 132-2). Again, the City's aggressive overreach in pushing its unconstitutional, *ex post facto* regulatory scheme predicated on a return on investment ("ROI") model and demanding documents in its so-called "rate case" underscores the method to the City's apparent madness in continuing for a third time to obtain extensive and in-depth financial information well beyond what Plaintiffs have already produced, well beyond what "inevitably inform[s] one side's position or the other on the contract issues" (ECF No. 28, PageID 407), and potential ammunition for its "rate case."

---

[2] *See* ECF No. 132, PageID.2443 ("The City Seeks Documents Necessary to Evaluate Whether True Economic Competition Exists Between Plaintiffs.").

Because the City has sought judicial intervention on this same discovery issue three times, did so most recently without bothering to review Plaintiffs' court-ordered supplemental production, and is now bootstrapping the extensive financial information sought in its so-called "rate case," the City's appeal should be denied, and fees and costs should be awarded to Plaintiffs.

## BACKGROUND AND DOCUMENTS REQUESTED

The City's document requests[3] can be organized as follows: (i) requests concerning Hoffmann's separate acquisitions of the Plaintiffs; (ii) requests concerning Plaintiffs' finances; (iii) requests concerning undefined "intra-company services"; and (iv) two miscellaneous requests concerning the employment of "Shepler family member[s]" and Plaintiffs' "contention" that competition exists. (*See* Ex. C (list of requests at issue here)).[4]

Over five months ago, in October 2025, Plaintiffs requested that the City revise its requests for production in light of the fact that the Court (i) dismissed the City's antitrust claims,[5] (ii) made clear that antitrust discovery would *not* proceed,[6] and (iii) denied the City's motion to compel discovery from Hoffmann, recognizing that the "vast majority of the 45 topics the subpoena [to Hoffmann] addresses are germane primarily to potential antitrust issues."[7] In response, the City

---

[3] The City's instant motion challenges "Section II.c. of the Order" (*see* ECF No. 132, PageID.2436), which concerns "Requests No. 4–7, 15–17, 22–24, 26–37, No. 38, 40 (Shepler's), and No. 39 (Arnold/MIFC."(ECF No. 127, PageID.2331).

[4] While the City decided to file this appeal before even receiving Plaintiffs' supplemental responses and objections, Plaintiffs confirmed in its supplemental response that no agreements exist for "intra-company services," and therefore, that category is moot. (*See* Exs. A, B, Req. No. 39).

[5] *See* ECF 58.

[6] *See* ECF No. 28, Tr. at 59:14-23 ("And *I'll make it clear that I am not opening disclosure and discovery on the antitrust issues* other than to the extent they *inevitably*, or some facts anyway inevitably inform one side's position or the other on the *contract issues*.")(emphasis added).

[7] *See* ECF 96, PageID 1695.

refused to limit, modify or revise in any way a single document demand, maintaining document requests nearly identical[8] to those that the Court found to be germane to antitrust issues. (*See* ECF 113-6, 113-7).

Nearly **two months later**, after the City refused to produce any of its representatives for deposition, and after Plaintiffs filed a motion to compel discovery and depositions from the City, the City filed another motion to compel, which Magistrate Judge Vermaat granted in part and denied in part. (*See* ECF No. 127). In the Order, Magistrate Vermaat directed Plaintiffs to submit supplemental responses and objections (*see* Exs. A, B), and compelled Plaintiffs and the Hoffmann Family of Companies to produce certain categories of discovery, including documents concerning Plaintiffs' corporate structure, service rates and rate setting, capital investments to repair Arnold's fleet, Hoffmann's "motivations" for acquiring Plaintiffs, and Hoffmann's documents related to the Franchise Agreement and competition post-acquisition. (*See* ECF No. 127). However, Magistrate Vermaat agreed with the Court's prior decision on antitrust discovery (*see* ECF No. 119), finding that those requests – i.e., the requests that are subject to the City's instant appeal – "pertain primarily to antitrust issues." (ECF No. 127, PageID.2332).

On March 18, 2026, five days before filing its instant motion, the City sent a letter to Plaintiffs demanding that Plaintiffs provide the City with the documents and information requested in a four-page, single spaced, list pursuant to its newest March 18, 2026 ferry regulation ordinance and resolution (the "2026 Ordinance").[9] (*See* ECF Nos. 132-1, 132-2). Like the requests at issue

---

[8] *Compare* ECF 113-2 Request Nos. 4-7 *with* ECF 78-1 Subpoena Request Nos. 4-9; Request No. 15 *with* Subpoena Request No. 18; Request Nos. 22-24 *with* Subpoena Request Nos. 26-31; Request Nos. 26-37 *with* Subpoena Request Nos. 12-14, 16, 32, 33, 35.

[9] It is worth noting that the City does not attach as exhibits to its appeal the document requests that are the subject of its motion or Plaintiffs' supplemental responses and objections to those requests

here, the City's new demand also seeks "corporate organization detail" and "financials statements, historical costs and service revenues." *Id.* The City's newest attempt to regulate Plaintiffs in circumvention of the Franchise Agreements is not the subject of this case or in any way covered by the Franchise Agreements. Nonetheless, the City tacitly admits that the documents sought in this appeal are "needed" for the City's "rate case" under its 2026 Ordinance and its new ROI regulatory scheme, not the claims in this case. (*See* ECF No. 132, PageID.2439) ("[S]*ome* of the financial information needed in the rate case is also sought in the Requests[.]") (emphasis added).

On March 23, 2026, the City filed this appeal, seeking to compel irrelevant documents for the third time, which are related to the dismissed antitrust claims, the enjoined regulation of parking, and the City's separate "rate case" under its new 2026 Ordinance. The appeal of the City's motion to compel should be denied, and fees and costs awarded to Plaintiffs.

## LEGAL STANDARD

### I.      Appeal of a Magistrate's Decision

On appeal of a magistrate judge's order regarding a non-dispositive matter, the Court "shall consider the appeal and shall set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." LCivR 72.3(a); Fed. R. Civ. P. 72(a); 28 U.S.C. §636(b)(1)(A).

A finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985). "The question is not whether the finding is the best or only conclusion that can be drawn from the evidence, or whether it is the one which the reviewing court would draw." *Id.*

---

but did attach its new 2026 Ordinance and related document demand. (*See* ECF Nos. 132-1, 132-2).

In determining whether a magistrate judge's decision is "contrary to law," a district court is to apply "the same standard the Sixth Circuit employs to review a district court's ruling on an evidentiary question, which is an 'abuse of discretion' occurs when a court improperly applies the law or uses an erroneous legal standard." *Kelly v. McLain*, 08-CV-10448-DT, 2008 U.S. Dist. LEXIS 87387, *4 (E.D. Mich. Oct. 28, 2008) (citing *United States v. Taplin*, 954 F.2d 1256, 1258 (6th Cir. 1992)).

## II.     Motions To Compel Discovery

"[T]he desire to allow broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991). While Federal Rule of Civil Procedure 26(b)(1) allows parties to obtain discovery "relevant to any party's claim or defense and proportional to the needs of the case[,]" the Court "may limit discovery where 'the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." *Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 320-321 (6th Cir. 2015). The trial court "retains discretion to determine that a discovery request is too broad and oppressive." *Id.* (citations omitted).

ARGUMENT

## I.     The City Again Seeks Improper and Irrelevant Antitrust-Related Discovery

The Court made clear that it would not allow discovery into issues related to the City's now twice dismissed antitrust counterclaims, and that the only active dispute between the parties concerns the Franchise Agreements and whether "no competition" has been found to exist in the ferry boat service to and from the City. (*See* ECF No. 28, Tr. at 21:20-22:20; 59:14-23). In opposing the City's first motion to compel discovery from Hoffmann, and its second motion to compel

discovery from Plaintiffs and Hoffmann, Plaintiffs identified the antitrust-related demands seeking "all documents reviewed by, obtained by, or provided to you in conducting due diligence" and "all communications relating to or discussing your acquisition or purchase" of the Plaintiffs,[10] and argued that it was entirely unclear how this mountain of documents and communications – which would all *pre-date* when Plaintiffs came to be owned by Hoffmann – would have any relevance whatsoever as to whether Plaintiffs' post-transaction common ownership caused "no competition" to exist.  Both Judge Jonker and Magistrate Judge Vermaat agreed, finding that the majority of the demands improperly sought antitrust discovery. (*See* Nos. ECF 96, PageID.1695, 127, PageID.2332).

Now, on its third attempt, the City has tried to re-characterize its documents demands as having to do with "rate setting" and "true *economic* competition." But the language of the document requests has not changed, and neither should the result.

### A. Documents Concerning Hoffmann's Separate Acquisitions of Plaintiffs Are Not Relevant to Post-Acquisition Operation And Competition

To be clear, Plaintiffs agreed to produce – and did produce – documents and communications concerning their separate corporate structure and rate setting processes. Plaintiffs have not agreed to produce documents and communications concerning the mountain of transaction-related documents requested by the City because how Hoffmann carried out its separate purchases of each of the Plaintiffs is irrelevant. The requests at issue here[11] – "stock purchase agreements," "stock transfer certificates," documents obtained in "due diligence," and "all communications" with Hoffmann and other third parties discussing the acquisitions – do not evidence the existence of competition *after* those acquisitions took place.

---

[10] *See* ECF No. 78-1 Request Nos. 1-9, 17-18, 23, 39-40, 44-45.

[11] *See* Exs. A, B, Request Nos. 4-7, 15.

In its appeal, the City first argues that these documents are relevant because they "shed light on how Plaintiffs operate post-acquisition, whether they are commonly controlled, and whether they operate as a single company." (ECF No. 132, PageID.2443). As discussed above, Plaintiffs and Hoffmann were ordered to produce, *and did produce*, documents concerning "[t]he setting or determination of Plaintiffs' service rates and services" and Plaintiffs' "executive management team or corporate structure." (*See* ECF 127, PageID.2330, 2333). Further, in their supplemental document responses and objections, Plaintiffs confirmed that "intracompany" agreements among or between Plaintiffs and Hoffmann do not exist. (*See* Exs. A, B (Request No. 36)). But the City did not bother to review Plaintiffs' supplemental, court-ordered production before filing this appeal. If, after it does review that supplemental production, the City truly cannot glean information concerning operations and alleged "control" from Plaintiffs' and Hoffmann's supplemental documents, then the City is free to question Plaintiffs' representatives, whom Plaintiffs have agreed to produce for deposition, and Jenny Gezella of Hoffmann Marine, whom Plaintiffs have also agreed to produce for deposition.

The City also argues that documents concerning the separate acquisitions "are relevant to Plaintiffs' allegation that the City 'initiated' discussions with Hoffmann and 'encouraged' the Arnold/MIFC acquisition." (ECF No. 132, PageID.2444). These facts come from declarations previously submitted by Chris Shepler and David Hoffmann, where they discuss *conversations* with City representatives. (*See* ECF No. 25-4, 25-3). The conversations that are referenced in the declarations are fair game for deposition discovery, and Messrs. Shepler and Hoffmann will be deposed in this matter with respect to the statements in their respective declarations. (*See* ECF No. 126 (denying Plaintiffs' motion for protective order concerning the deposition of David

9

Hoffmann)). But acquisition documents (which for the Shepler's acquisition pre-date those meetings) will not illuminate in-person discussion.

The terms of the two acquisitions do not inform the parties or this Court about the meaning of a 2012 Franchise Agreement or the dispute that arose *after* those two acquisitions took place. Nor is the answer to the contractual question under the 2012 Franchise Agreement concerning the existence of competition in any way reliant on the terms of the two earlier acquisitions. While the City's motion espouses its own theories on whether or not competition exists (theories with which Plaintiffs obviously disagree and reject), that issue does not support an intrusive and overly burdensome fishing expedition into separate financial transactions that occurred **before** the City claimed that no competition existed.

**B.** **An Expansive and Deep Probe of Plaintiffs' Separate Finances Does Not Relate to the Franchise Agreements or Answer Whether "Competition" Exists**

The second category of document requests subject to this appeal seek, *inter alia*, "audited and unaudited financial statements," "annual revenues, expenditures, and costs," including "fuel costs," "analyses or reports regarding [] Return on Equity," "federal, state and local taxes" filed by each Plaintiff, and "parking fees and the amount of revenue associated with those fees." (*See* Ex. C, § II). As discussed in opposition to the City's first motion to compel, Plaintiffs *have* produced relevant financial documents, including 2020-2025 ferry rates (P_1113, P_1134) and ridership figures (P_1135). In its recent production – which the City did *not* review before filing this current motion – Plaintiffs also produced over four hundred pages of documents and communications concerning the capital investment made to restore Arnold Transit's fleet after the Hoffmann acquisition. (*See* P_5957-P_6392).

None of the requests for further financial disclosure are narrowly tailored to obtain relevant discovery. Instead, the City seeks to obtain documents related to their dismissed antitrust claims

and whatever they can get their hands on for their separate "rate case" under their new ROI regulatory scheme. (*See infra* § IV). But – once again – the City fails to establish why Judge Jonker and Magistrate Vermaat were wrong in finding that discovery such as Plaintiffs' financial statements, fuel costs, and tax filings are not needed in *this* case concerning breach of contract issues.

Further, the City's instant appeal continues to seek documents concerning "parking fees and the amount of revenue associated with those fees, on a monthly basis." (*See* Ex. C, Req. No. 27). This request is in direct violation of the preliminary injunction in this action (ECF No. 51), and the Sixth Circuit's recent affirming that injunction with respect to parking. (*See* ECF No. 129, PageID.2364). The City is presently enjoined from regulating parking rates and parking rates have no relevance to the "competition" question at issue in this contract dispute. Therefore, the City's third attempt to compel documents concerning parking rates must once again be denied.

## II.     The Repeated Request for "Shepler Family" Employment Records Should Continue To Be Rejected

The City argues that Shepler family employment documents will "shed light on who controls and manages Plaintiffs and who pays the employees working at both." (ECF No. 132, PageId.2445).

First, the City's fixation on Chris Shepler's employment (and now his entire family's employment) is based on an argument that the City knows is misleading. The City repeatedly argues that "Chris Shepler has simultaneously acted as an officer of both Plaintiffs" to lead the Court (and the public) to believe that Shepler's and Arnold continue to share employees and management. (*Id.* PageID.2444 (citing Shepler Decl., ECF No. 25-4, PageID.317, ¶12).[12] They do

---

[12] The City also claims that Plaintiffs both report to Jenny Gezella based upon a purposefully misleading citation to Ms. Gezella's internet bio, which describes her role at **Hoffmann Marine, not at each of the Plaintiffs**. (*See* ECF 63-10).

not – as Plaintiffs have repeatedly established. As Chris Shepler explained in the same declaration that the City cites: "I acted as MIFC's President **for a short time**. MIFC was in such bad shape that we completely shut down the company before rebranding and reopening it." (ECF 25-4 § 12) (emphasis added). Additionally, while the City has apparently not reviewed the discovery produced to date, Plaintiffs have already produced employee lists, management and organizational charts, and documents and communications reflecting Plaintiffs' separate rate setting process. (*See, e.g.*, P_1114, P_6432, P_6469).

Plaintiffs will stipulate that, as stated in his declaration, Chris Shepler did in fact work for Arnold Transit *for a short time* while it was shut down for repairs, but discovery concerning the entire Shepler family's employment records is unnecessary, overly broad, and irrelevant.

### III.    Plaintiffs Do Not Need To Respond to the City's Request for a Legal Conclusion

The City speciously asserts that it is "remarkabl[e]" that Plaintiff did not produce documents in response to the City's mutant contention document request – "If you contend that competition exists or has existed between you and MIFC/MIFC's since July 1, 2024, please produce all documents supporting that contention." (*See* Exs. A, B, Req. No. 39). What is remarkable is the City's argument that Magistrate Vermaat's Order was "clearly erroneous or contrary to law" in failing to compel Plaintiffs to comply with this half-baked discovery demand.

First and foremost, the City should not be surprised that Plaintiffs' "contention" is that competition continues to exist in the ferry service to and from the City, and that the documents Plaintiffs have produced to date support that contention. The fact that the City has filed yet another motion to compel documents in response to this "contention" document request further supports an award of fees and costs in favor of Plaintiffs.

Second, Request No. 39 is a contention interrogatory disguised as a document demand, which seeks a legal conclusion as to "competition." Plaintiffs are not required to respond. *See*

*BullsEye Telecom, Inc. v. Centurylink Communs., LLC*, 2:19-cv-10812, 2019 U.S. Dist. LEXIS 203926, *11 (E.D. Mich. Nov. 23, 2019) ("Defendants' motion to compel Plaintiff's supplementary response to Interrogatory No. 11 is DENIED, as it requires Plaintiff to provide its interpretation of the law and calls for a legal conclusion notwithstanding Defendants' intertwining of the words 'factual basis' within the question."). This objection was clarified in Plaintiffs' supplemental objections and responses, which the City did not review before filing this appeal. (*See* Exs. A, B, Req. No. 39).

**IV.    The City Improperly Seeks Discovery in Furtherance of an Ordinance That Is Not Effective as to Plaintiffs and Not Part of the Contract Claims in This Action.**

The Court's preliminary injunction in this matter concerned the City's attempt to enforce Ordinance Number 629, which sought to carry out an improper, extra-contractual requirement that ferry boat companies (*i.e.*, Plaintiffs) provide documentation concerning their "Service Rates" and "proposed Return on Equity[.]" (*See* ECF No. 63-16, Ordinance). Emboldened by the Sixth Circuit's reversal, but before the Sixth Circuit issued its mandate, the City went ahead and executed yet another ordinance, Ordinance No. 632 (Ex. D), and yet another resolution (*see* ECF No. 132-2). Pursuant to this new 2026 Ordinance, the City once again seeks to regulate "Service Rates" based upon Plaintiffs' revenues and "proposed Return on Equity," demanding access to, *inter alia*, "audited financials, fuel costs" and tax filings. (ECF No. 132-1).

The City's admission that some of the financial information "needed" in its separate "rate case" is also sought in the Requests at issue on this appeal should instead be worded as: *all* of the documents sought in the Requests and on this appeal are also sought in what the City has deemed the "rate case" (*i.e.*, its attempt to regulate under the new 2026 Ordinance). There are a host of issues with the City's new 2026 Ordinance, including that it violates the Contract Clause of both the U.S. Constitution and the Constitution of the State of Michigan, constitutes *ex post facto*

regulation and illegal retroactive ratemaking, and continues to demand information concerning parking rates, which the Sixth Circuit confirmed is not under the City's authority – meaning those information and document demands violate the portion of this Court's injunction that the Sixth Circuit affirmed. *See* U.S. Const. art. I § 10; Mich. Const. art. 1, § 10; *see also Michigan Ry. Co. v. City of Lansing*, 260 F. 322, 325 (E.D. Mich. 1919); *see* Sixth Circuit Op. at 12-14, 15. Finally, the City's 2026 Ordinance and its continued demand for financial documents from Plaintiffs confirm that all of the documents that are subject to the City's appeal are related to its new (improper) regulatory scheme and its separate "rate case" – not the Franchise Agreements breach claims in this litigation.

**V.      Plaintiffs Should Be Awarded Their Fees and Costs in Opposing the City's Appeal, Which Amounts to The City's Third Request for Judicial Intervention Seeking the Same Relief.**

Where a party is not successful in its motion to compel, the Court may, in consideration of the "circumstances which led to the motion," grant an award of reasonable costs and fees to the opposing party pursuant to Federal Rule 37(a)(5)(B). *See Pemberton v. Bell's Brewery, Inc.*, 1:22-cv-739, 2024 U.S. Dist. LEXIS 99713, *5 (W.D. Mich. June 5, 2024).

Here, this is not the City's first motion to compel, which Judge Jonker denied. Nor is it the City's second motion to compel, which Magistrate Vermaat denied in part. This appeal amounts to the City's third motion for essentially the same relief – the lack of merit of which is underscored by the fact that the City did not even bother to review the additional documents Plaintiffs produced and the supplemental responses and objections Plaintiffs submitted pursuant to Magistrate Vermaat's Order. Plaintiffs should be awarded their reasonable costs and attorneys' fees. Without this sanction, the City will likely continue to use this litigation to enforce its new, unconstitutional regulatory scheme and improperly pursue its "rate case" in this Court.

14

**CONCLUSION**

For the foregoing reasons, the Court should deny the City's appeal. Further, because of the Court's prior Order denying the City's motion to compel discovery from Hoffmann, Magistrate Vermaat's confirmation of that Order, the Court's express restrictions on antitrust-related discovery, and the fact that the City filed the motion before reviewing Plaintiffs' supplemental discovery, Plaintiffs should be awarded their reasonable costs and attorneys' fees incurred in opposing this appeal.

Dated: April 6, 2026

Respectfully submitted,

Mark J. Magyar
Dykema Gossett PLLC
201 Townsend Street, Ste. 900
Lansing, MI
Tel.: (616) 334-4447
mmagyar@dykema.com

- and –

William J. Dorsey
Blank Rome LLP
444 West Lake Street, Ste. 1650
Chicago, IL 60606
Tel.: (312) 776-2512
william.dorsey@blankrome.com

*s/ Gregory P. Cronin*
Deborah A. Skakel
Gregory Cronin
Blank Rome LLP
1271 Avenue of the Americas
New York, NY 10020
Tel.: (212) 885-5156
deborah.skakel@blankrome.com
gregory.cronin@blankrome.com

*Attorneys for Plaintiffs*

15

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Opposition to Defendant's

Appeal was served on April 6, 2026, on all counsel of record via the ECF filing system.

*/s/ Gregory P. Cronin*